DOUGLAS A. WAIN
ELISA WAIN
P.O. Box 7473
Westlake Village, CA 91359
Telephone: (859) 494-3677
Email: douglaswain@gmail.com
Plaintiffs in Pro Per

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re<br><br>Douglas Alan Wain, Elisa Wain,<br><br>Debtors, | **Case No. 1:24-bk-11814-MB**<br><br>**Chapter 13** |
| Douglas Alan Wain and Elisa Wain<br><br>Plaintiffs,<br><br>vs.<br><br>Central Bank & Trust Co.<br><br>Defendant. | **Adv. Proc. No. 1:25-ap-01026-MB**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CENTRAL BANK & TRUST CO.'S MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Hon. Martin R. Barash**<br><br>**Hearing: To Be Set by Court**<br>**Courtroom: 303**<br>**Address: 21041 Burbank Blvd.**<br>**Woodland Hills. CA 91367** |

# TABLE OF CONTENTS

**I. INTRODUCTION** ........ 5
**II. LEGAL STANDARD** ........ 8
**III. THIS COURT HAS SUBJECT MATTER JURISDICTION** ........ 9
A. CBT Concedes Jurisdiction Over the Sixth Claim — the Heart of This Proceeding ..... 9
B. CBT Filed Its Proof of Claim and Submitted Itself to This Court ........ 9
C. At Minimum, Every Count Is "Related To" This Chapter 13 Case ........ 10
D. Stern v. Marshall Does Not Help CBT — and Plaintiffs Consent ........ 10
E. The Section 1441 Point Is Surplusage ........ 11
**IV. ROOKER-FELDMAN DOES NOT APPLY, AND PRECLUSION FAILS** ........ 11
A. This Proceeding Is Not an Appeal From Any Kentucky Judgment ........ 11
B. T.M. Does Not Change the Analysis ........ 12
C. Preclusion Fails on the Face of the Records CBT Noticed ........ 12
D. The Motion's Own Framing Concedes a Factual Dispute ........ 15
**V. CBT IS NOT ENTITLED TO JUDGMENT ON THE MERITS OF ANY CLAIM** .... 16
A. Claims I, VI, and IX–XIII: The Motion Answers One Theory and Ignores Five ........ 16
B. Claim II (Elder Abuse): CBT Misreads the Pleading, and the Claim Is Timely Twice Over ........ 18
C. Claim III (Conversion): Limitations Cannot Be Resolved on the Face of the Complaint 19
D. Claim IV Is Withdrawn ........ 20
E. Claim V (§ 1983): Lugar Cuts Against CBT, Not For It ........ 20
F. Claim VII (CARES Act) ........ 21
**VI. IF ANY CLAIM IS FOUND DEFICIENT, LEAVE TO AMEND MUST BE GRANTED** ........ 22
**VII. THE BURIED REQUEST FOR A PRE-FILING BAR IS PROCEDURALLY AND SUBSTANTIVELY IMPROPER** ........ 23
**VIII. SEQUENCING: THE COURT SHOULD DECIDE THE FULLY BRIEFED RECORD, NOT SUPPLANT IT** ........ 24
**IX. CONCLUSION** ........ 25

## TABLE OF AUTHORITIES

**Cases**

*Chavez v. United States*, 683 F.3d 1102 (9th Cir. 2012) .......... 8
*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005) .......... 11, 12
*Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240 (9th Cir. 2001) .......... 12
*Harvest Homebuilders LLC v. Commonwealth Bank & Tr.* Co., 310 S.W.3d 218 (Ky. App. 2010) .......... 17
*In re Gruntz*, 202 F.3d 1074 (9th Cir. 2000) (en banc) .......... 11
*In re Hawkeye Entertainment, LLC,* ___ B.R. ___, 2025 WL 3522466 (Bankr. C.D. Cal. Dec. 8, 2025) .......... 14
*In re Kalter*, 292 F.3d 1350 (11th Cir. 2002) .......... 11
*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) .......... 22
*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc) .......... 22
*Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982) .......... 20, 21
*Miller v. Admin. Office of Courts*, 361 S.W.3d 867 (Ky. 2011) .......... 12
*Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007) .......... 23
*Owens v. First Com. Bank of Prestonsburg*, 706 S.W.2d 414 (Ky. App. 1985) .......... 17
*Pearman v. West Point Nat'l Bank,* 887 S.W.2d 366 (Ky. Ct. App. 1994) .......... 16
*Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc) .......... 22
*Stern v. Marshall*, 564 U.S. 462 (2011) .......... 10
*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204 (9th Cir. 1995) .......... 8, 19
*T.M. v. University of Maryland Medical Systems*, 608 U.S. ___ (2026) .......... 12
*Yeoman v. Commonwealth*, 983 S.W.2d 459 (Ky. 1998) .......... 12

**Statutes**

11 U.S.C. § 502(b) .......... 9, 11, 18
11 U.S.C. § 108(a) .......... 19, 20
15 U.S.C. § 1692a(6) .......... 22
15 U.S.C. § 9056(c) .......... 21
28 U.S.C. § 157 .......... 6, 9–11
28 U.S.C. § 1334 .......... 6, 11
28 U.S.C. § 1441 .......... 11
28 U.S.C. § 1738 .......... 12
42 U.S.C. § 1983 .......... 20

Cal. Civ. Code § 1788.2(c) (Rosenthal Fair Debt Collection Practices Act) ............................. 22
Cal. Civ. Proc. Code § 338(c)(1) ............................................................................................ 20
Cal. Welf. & Inst. Code § 15657.7 ........................................................................................... 19
Ky. Rev. Stat. § 382.365 ........................................................................................... 14, 16, 17
Ky. Rev. Stat. §§ 426.005, 426.006 ......................................................................................... 16

**Rules and Regulations**

Fed. R. Civ. P. 12(c) ........................................................................... 6, 8, 9, 16–18, 21, 24, 25
Fed. R. Civ. P. 12(d) ................................................................................................................ 8, 24
Fed. R. Civ. P. 15(a)(2) ............................................................................................................ 23
Fed. R. Bankr. P. 7012 ............................................................................................................. 8
12 C.F.R. § 1024.41(f) ............................................................................................................ 21
LBR 9013-1(f) .......................................................................................................................... 9

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE, AND TO DEFENDANT AND ITS COUNSEL OF RECORD:**

Plaintiffs Douglas A. Wain and Elisa Wain ("Plaintiffs"), proceeding pro se, respectfully oppose Defendant Central Bank & Trust Co.'s ("CBT") Motion for Judgment on the Pleadings (the "Motion"), served by email only on August 5, 2026 and filed August 7, 2026 (Adv. Doc. 48), with its hearing "To Be Set by Court." This Opposition is supported by the Memorandum of Points and Authorities below, the pleadings and papers on file — including Plaintiffs' Adversary Complaint (Adv. Doc. 1), Plaintiffs' Supplemental Reply Brief in Opposition to Central Bank's Preclusion Arguments (Adv. Doc. 27), Debtors' Objection to Confirmation as to CBT's Proof of Claim (Bankr. Doc. 66), and Debtors' Rule 3007 Objection to Claim (Bankr. Doc. 38) — and Plaintiffs' concurrently filed Objection to CBT's Request for Judicial Notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

A motion for judgment on the pleadings tests whether, taking every well-pleaded allegation of the Complaint as true and drawing every reasonable inference in Plaintiffs' favor, the movant is entitled to judgment as a matter of law. CBT's Motion does the opposite: it asks this Court to adopt CBT's own contested narrative — that a "final Kentucky state court judgment" supports its claim — while ignoring what the Complaint actually alleges and what the very court records CBT asks this Court to judicially notice actually say.

The Complaint alleges, and the noticed Kentucky records confirm on their face: the property sold at judicial foreclosure on February 8, 2021 for $630,003.00; CBT's January 20, 2021 judgment was $358,412.72; the sale therefore generated a surplus of $271,590.28 over CBT's judgment; no Kentucky court ever entered a deficiency judgment, and CBT never moved for one; the March 7, 2024 Distribution Order awarded CBT $66,884.60 from the "remaining sale proceeds," expressly

"GRANTED IN PART AND DENIED IN PART" CBT's request, and was designated "a final and appealable matter"; and CBT did not appeal. On a Rule 12(c) motion these allegations control. They do not merely survive CBT's Motion — they refute it.

The Motion's jurisdictional theory fares no better. CBT filed Proof of Claim No. 1 in this case for $357,990.91 (referenced in the Complaint as Docket Number 19, Compl. ¶ 7), thereby invoking this Court's claims-allowance jurisdiction and submitting itself to it. Tellingly, the Motion does not — because it cannot — challenge jurisdiction over the Sixth Claim for Relief (Objection to Claim): CBT's own jurisdictional argument is expressly limited to "Counts I through V and VII through XIII." (Mot. at 6.) The claims-allowance core of this adversary proceeding is conceded. The remaining counts arise from, or are inseparably connected to, the same creditor's conduct in generating and prosecuting that claim, and at minimum are "related to" this Chapter 13 case because any recovery augments what these Debtors can pay through their plan. The Complaint pleads jurisdiction under 28 U.S.C. §§ 157 and 1334 and core status under § 157(b)(2)(B), (C), (K) and (O), and expressly alleges that "the Court can and should enter final judgment." (Compl. ¶¶ 3, 5.) And even where a claim is non-core, the statutory remedy is proposed findings and conclusions under 28 U.S.C. § 157(c)(1) — never dismissal.

The Motion's timing tells the Court what its contents cannot. A party holding a winning pleadings argument makes it at the pleadings stage. CBT answered this Complaint on May 21, 2025 (Adv. Doc. 3), pleading in its First Affirmative Defense that the Complaint "should be dismissed . . . under Federal Rule of Civil Procedure 12(b)(6)" — and then litigated for nearly fifteen months without ever moving on that defense: it opposed Plaintiffs' summary judgment motion on the merits (Adv. Docs. 16, 17), which has been fully briefed since August 28, 2025 (Adv. Docs. 8, 9, 16, 17, 18); it filed supplemental preclusion briefing at the Court's direction (Adv. Doc. 28); and it filed its own 156-page "Supplemental evidentiary declaration" in the summary judgment record (Adv. Doc.

31). The September 3, 2026 hearing date itself exists because CBT asked for it: over Plaintiffs' opposition (Adv. Doc. 38), CBT's ex parte application (Adv. Docs. 36, 37) continued the July 2, 2026 hearings, and the Court's June 30, 2026 order (Adv. Doc. 39) reset the fully briefed matters to September 3. Plaintiffs then asked the Court to rule on the submitted record without further hearing (Adv. Doc. 41). CBT's response — served by email on August 5, 2026, three weeks before the discovery cutoff and days before the noticed depositions of its own declarant — was this Motion. Placing it on file took CBT three attempts across two dockets and drew two Clerk's notices of error: CBT first filed the Motion in the main bankruptcy case rather than in this adversary proceeding, self-calendaring it for September 3, 2026 notwithstanding this Court's posted instruction that a motion for judgment on the pleadings “cannot be self-calendared” (Bankr. Doc. 76; Clerk's Notice of Error, Bankr. Doc. 78); it then refiled the Motion in this proceeding under an incorrect docket event (Adv. Doc. 42; Clerk's Notice of Error, Adv. Doc. 44), withdrew it (Adv. Doc. 46), and filed the operative Motion on August 7, 2026, its hearing now “To Be Set by Court.” (Adv. Doc. 48.) The Motion's text nonetheless describes itself as set “for the same date and time as motions that have been brought by the Plaintiffs/Debtors, and have been previously fully briefed” (Mot. at 3) — the very hearing CBT's own continuance application created. The Motion is, in substance, a request that the Court decide this case on CBT's characterizations before it can decide the case on the evidence. The sequencing Plaintiffs propose in Section VIII honors the record instead.

Finally, the Motion closes with a single unnoticed sentence asking the Court to bar Plaintiffs — current on every plan payment and every court-ordered obligation — from filing “additional pleadings without prior permission.” That is a request for a vexatious-litigant pre-filing order without notice, without a motion, without a record, and without any of the findings the Ninth Circuit requires. It should be denied out of hand.

## II. LEGAL STANDARD

"Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (the standard CBT quotes, Mot. at 4, attributing it to *Chavez*). All well-pleaded factual allegations of the non-moving party are accepted as true, and all inferences are drawn in the non-movant's favor. *Id.* Because analysis under Rule 12(c) is "substantially identical" to analysis under Rule 12(b)(6), *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012), a pro se complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). A statute-of-limitations defense supports judgment on the pleadings only when "the running of the statute is apparent on the face of the complaint" and it appears *beyond doubt* that the plaintiff can prove no set of facts — including tolling — that would defeat the defense. *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011). If matters outside the pleadings and judicially noticeable records are presented and not excluded, the motion must be treated as one for summary judgment with a full opportunity to present evidence. Fed. R. Civ. P. 12(d); Fed. R. Bankr. P. 7012.

A Rule 12(c) motion is decided on *all* the pleadings — including CBT's Answer (Adv. Doc. 3), whose admissions bind CBT. The Answer admits every structural fact of Plaintiffs' case: the Gold Line Equity Agreement and CBT's second-position mortgage (Answer ¶¶ 8, 94); the January 20, 2021 judgment of $358,412.72 (¶ 11); the February 8, 2021 Master Commissioner sale (¶¶ 12, 102); the March 12, 2021 Confirmation Order (¶ 15); that the sale proceeds were $605,035.42 and were held by the Master Commissioner (¶¶ 16, 118); that the Judgment and Sale Order did not adjudicate Plaintiffs' counterclaims and stated they "may be pursued separately from Central Bank's claims" (¶¶ 13–14); that CBT filed its proof of claim in this case (¶¶ 7, 58); and that CBT garnished

— in its words, "properly took actions to enforce its Judgment against the Wains, including, but not limited to, seeking garnishments" (¶ 75). What the Answer *denies* — sufficiency of the proceeds, satisfaction (¶¶ 120–122) — merely frames the disputed issues; a defendant's denials are not credited on its own Rule 12(c) motion. The admitted facts, plus the Complaint's well-pleaded allegations taken as true, are the universe. The Motion's hearing has not yet been set (Adv. Doc. 48). This Opposition is filed and served in advance of any opposition deadline under LBR 9013-1(f).

## III. THIS COURT HAS SUBJECT MATTER JURISDICTION

### A. CBT Concedes Jurisdiction Over the Sixth Claim — the Heart of This Proceeding

CBT's jurisdictional argument is self-limited: "the Court lacks core jurisdiction over Counts I through V and VII through XIII." (Mot. at 6.) Count VI — the Objection to CBT's Proof of Claim — is conspicuously excluded, and necessarily so. The allowance or disallowance of claims against the estate is a core proceeding, 28 U.S.C. § 157(b)(2)(B), and 11 U.S.C. § 502(b) directs that upon objection this Court "shall determine" the amount of the claim. Whatever else the Motion accomplishes, the central controversy of this adversary proceeding — whether CBT's $357,990.91 Claim No. 1 is enforceable — remains before this Court.

### B. CBT Filed Its Proof of Claim and Submitted Itself to This Court

A creditor that files a proof of claim submits itself to the bankruptcy court's equitable jurisdiction to resolve that claim and matters bearing on it. *Katchen v. Landy*, 382 U.S. 323, 335–36 (1966); *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (per curiam). Counterclaims by the estate against a person filing a claim are themselves core. 28 U.S.C. § 157(b)(2)(C). Plaintiffs' claims are, in substance, the debtors' response to CBT's decision to prosecute a $357,990.91 claim in this Court: they concern the same loan, the same foreclosure, the same sale proceeds, and the same creditor conduct that produced the claim. CBT cannot demand payment from the estate in this forum while insisting the forum is powerless to examine the conduct behind the demand.

**C. At Minimum, Every Count Is "Related To" This Chapter 13 Case**

A proceeding is "related to" a bankruptcy case if its outcome could "conceivably" have any effect on the estate. *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (adopting *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984)). In a Chapter 13 case, causes of action — including those acquired post-petition — are property of the estate, 11 U.S.C. §§ 541, 1306, and any recovery on Plaintiffs' claims directly affects what these Debtors can pay creditors through their plan. CBT is the only substantially disputed creditor in this case; its claim dwarfs all others; and the litigation over that claim determines the shape of the plan itself. The "conceivable effect" test is not merely satisfied — it is overwhelmed.

CBT's suggestion that non-core status warrants dismissal inverts the statute. Where a proceeding is non-core but related, the bankruptcy judge hears it and submits proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). Non-core status affects *who enters final judgment*, not *whether jurisdiction exists*. Dismissal for lack of subject matter jurisdiction is never the consequence of a core/non-core classification.

**D. Stern v. Marshall Does Not Help CBT — and Plaintiffs Consent**

*Stern v. Marshall*, 564 U.S. 462 (2011), addressed the constitutional authority of a bankruptcy court to *enter final judgment* on certain counterclaims; it did not diminish the bankruptcy court's subject matter jurisdiction, and *Stern* itself observed that § 157's allocation of authority "does not implicate questions of subject matter jurisdiction." 564 U.S. at 480. The Supreme Court has since confirmed that any *Stern* problem is cured by treating the claim as non-core and issuing proposed findings, *Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 36–40 (2014), and that parties may consent — expressly or impliedly — to final adjudication by the bankruptcy court, *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 674–85 (2015). Plaintiffs' consent is not new: the Complaint pleaded from its first page that this is a core proceeding and that "the Court can and

should enter final judgment." (Compl. ¶ 5.) Plaintiffs reaffirm that express consent here as to every claim. CBT, which filed its claim here, answered the Complaint here, and has litigated here ever since, is in no position to withhold its own consent while seeking affirmative relief from this Court.

**E. The Section 1441 Point Is Surplusage**

The Complaint's jurisdictional allegations rest on 28 U.S.C. §§ 157 and 1334. (Compl. ¶ 3.) Section 1441 appears only within the Fourth Claim (Compl. ¶ 50), and a passing citation there does not defeat jurisdiction that exists under §§ 1334 and 157. A pro se pleading is judged by its substance, not its citations, and mislabeling a statutory basis is not a jurisdictional defect where jurisdiction in fact exists. The Fourth Claim — the only count that sought "removal" of Kentucky proceedings — is withdrawn. (See Section V.D below.)

## IV. ROOKER-FELDMAN DOES NOT APPLY, AND PRECLUSION FAILS

**A. This Proceeding Is Not an Appeal From Any Kentucky Judgment**

The Rooker-Feldman doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Ninth Circuit, sitting en banc, has held that Rooker-Feldman does not deprive a bankruptcy court of jurisdiction over a proceeding that is related to — but not a direct appeal from — a state-court judgment, *In re Gruntz*, 202 F.3d 1074, 1079–84 (9th Cir. 2000) (en banc), and the Eleventh Circuit has specifically held that bankruptcy claim-allowance determinations do not implicate Rooker-Feldman at all, *In re Kalter*, 292 F.3d 1350, 1357 (11th Cir. 2002).

With the Fourth Claim withdrawn (Section V.D below), no claim in this proceeding asks this Court to review, reject, or "overrule" any Kentucky judgment. Plaintiffs ask this Court to perform the independent federal function Congress assigned it: to determine, under 11 U.S.C. §

502(b), the allowed amount of the claim *CBT chose to file here* — recognizing that the only Kentucky judgment in existence, the January 20, 2021 in-rem foreclosure judgment for $358,412.72, was satisfied by a $630,003.00 sale, and that no Kentucky deficiency judgment was ever sought or entered. A doctrine that shields state-court judgments from federal appellate review has no application where the federal claim is that the judgment was *satisfied* — a post-judgment event no Kentucky court ever adjudicated — and where there is no deficiency judgment to review.

**B. T.M. Does Not Change the Analysis**

*T.M. v. University of Maryland Medical System Corp.*, No. 25-197, 608 U.S. ___ (2026), extended Rooker-Feldman's reach to certain judgments still subject to state appellate review — a question of *finality*. It did not alter the doctrine's substantive boundary reaffirmed in *Exxon Mobil*: the doctrine bars de facto appeals, and “does not otherwise override or supplant preclusion doctrine.” Plaintiffs' claims do not become an appeal because the parties once litigated in Kentucky; whether Kentucky's orders have binding effect here is a question of *preclusion* law — an affirmative defense with its own elements — not of jurisdiction.

**C. Preclusion Fails on the Face of the Records CBT Noticed**

Under 28 U.S.C. § 1738, Kentucky preclusion law governs. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001). Kentucky claim preclusion requires identity of causes of action and a prior merits resolution, *Yeoman v. Commonwealth*, 983 S.W.2d 459, 464–65 (Ky. 1998), and issue preclusion requires that the issue was “actually litigated” and “actually decided,” *Miller v. Admin. Office of Courts*, 361 S.W.3d 867, 872 (Ky. 2011). Neither standard can be met: (1) the surplus/satisfaction issue could not have been litigated in a foreclosure judgment entered nineteen days *before* the sale existed; (2) the Kentucky Court of Appeals stated on September 23, 2024 — in an order CBT itself asks this Court to notice (RJN Ex. 8) — that “[n]othing contained in this Order should be construed as a ruling on the merits of the allegations”; (3) the

March 7, 2024 Distribution Order (RJN Ex. 6) is a post-judgment distribution ruling that granted CBT's motion only "IN PART," denied the rest, and went unappealed; and (4) the three 2025 Kentucky Supreme Court orders post-date the October 30, 2024 petition and are void as against the estate under 11 U.S.C. § 362. *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992). These points are developed at length in Plaintiffs' Supplemental Reply Brief (Adv. Doc. 27), which Plaintiffs incorporate by reference.

The Motion offers no element-by-element preclusion analysis of its own; it instead incorporates by footnote CBT's earlier Supplemental Brief (Adv. Doc. 28). (Mot. at 7 n.1, 9 n.2.) That six-page brief cites no order adjudicating the surplus or any deficiency; its central assertion — that "[t]he Kentucky courts rejected the Wains' arguments about any 'deficiency judgment' issues" (Doc. 28 at 5 n.3) — carries no citation to any ruling, because none exists; its proof of service page is blank; and its running footer identifies an unrelated matter ("Sheffield's Statement of Genuine Disputes of Material Facts"), reflecting its recycled origins. It is no substitute for the analysis Kentucky law requires.

Finally, CBT's own authority cuts against it. CBT invokes *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 124 (Ky. Ct. App. 2012), for the presumption that a court "considered and rejected" the arguments made to it. (Doc. 28 at 5.) Applied to the one order that actually adjudicated the sale proceeds — the March 7, 2024 Distribution Order, which granted CBT's distribution motion only "IN PART" and denied the remainder — *Sparks* presumes that the Fayette Circuit Court considered and rejected CBT's request for anything beyond the $66,884.60 it received. CBT did not appeal. On CBT's own preclusion theory, that unappealed denial binds CBT here.

CBT's reliance on the September 23, 2024 order's passing observation about U.S. Bank's seniority misreads Plaintiffs' position. Plaintiffs have never disputed that U.S. Bank held the senior lien or that it was entitled to be paid first — it *was* paid first, and in full: $538,150.82 under the

Distribution Order. Plaintiffs' contention is a different one: the order of distribution among lienholders is a separate question from the debtors' personal liability, which under Kentucky law was discharged by the confirmed sale (KRS 382.365; Compl. ¶¶ 116–120) unless CBT obtained the deficiency judgment it admits it never sought — and CBT itself told the Kentucky court in May 2023 that the proceeds should pay its judgment in full (Compl. ¶¶ 84–86). Priority concerns who stands where in the line of distribution; deficiency concerns whether the debtors still owe anyone standing in it. The 2024 order's aside spoke to the first question; this case turns on the second — which that order's own disclaimer states it did not decide.

CBT's Answer forecloses the "could have been litigated" branch of claim preclusion as well: it admits that the Judgment and Sale Order "did not adjudicate" Plaintiffs' counterclaims and expressly stated they "may be pursued separately from Central Bank's claims." (Answer ¶¶ 13–14.) A Kentucky judgment that by its own terms — as CBT admits — preserved the parties' claims for separate pursuit cannot simultaneously have extinguished them under a transactional bar.

This Court's own recent decision confirms the analytical frame. In *In re Hawkeye Entertainment, LLC*, ___ B.R. ___, 2025 WL 3522466 (Bankr. C.D. Cal. Dec. 8, 2025), this Court applied the collateral attack, claim preclusion, and issue preclusion doctrines to bar a party from relitigating issues that had been *actually litigated and decided* in prior proceedings — there, after a multi-day evidentiary hearing, express findings, a final order, and an appellate affirmance. Measured against that standard, CBT's preclusion theory inverts: no Kentucky court ever litigated or decided whether the sale proceeds satisfied CBT's judgment — the Kentucky Court of Appeals said so expressly — while the one proceeds issue that *was* actually litigated and decided, CBT's own motion for distribution of its full judgment, ended in the Distribution Order's partial denial, which CBT did not appeal. Under the framework this Court applied in *Hawkeye*, it is CBT — not Plaintiffs — that is bound by the prior adjudication.

The two post-judgment denials in CBT's noticed set do not supply the missing adjudication. Exhibit 5 — the Kentucky Supreme Court's January 10, 2024 order — denied discretionary review, a ruling that by definition decides nothing on the merits. Exhibit 7 — the Fayette Circuit Court's October 23, 2024 order — is a one-page denial that makes no findings, fixes no amount, and identifies no deficiency: it denies relief "for the reasons stated on the record on October 11, 2024," reasons that appear nowhere in the noticed exhibit. Nor is Exhibit 7 what CBT's Request describes. CBT describes it as "denying the Wains' motion seeking satisfaction of the judgment" (RJN at 3); on its face, the order denies Plaintiffs' "Motion To Vacate Or Stay Orders Dated April 19, 2024 And August 19, 2024 . . ." — a motion directed at two 2024 orders, not a motion for an order of satisfaction. The order also bears its own provenance: it was tendered by CBT's Kentucky counsel, Mr. Wiseman — the same declarant through whom CBT now submits it for judicial notice while refusing his deposition. And it changed nothing: the operative adjudication of the sale proceeds was, and remained, the March 7, 2024 Distribution Order entered seven months earlier — which awarded CBT $66,884.60, denied the remainder of its request, and went unappealed by CBT. And even taken at face value, a denial of Plaintiffs' motion for an order of satisfaction adjudicates no deficiency: declining to declare a judgment satisfied is not a ruling that a deficiency exists, in any amount. The two questions carry different burdens — satisfaction was Plaintiffs' motion; a deficiency was CBT's to create, by the affirmative post-sale motion Kentucky law requires and CBT admits it never made — and issue preclusion demands identity of issues, which these two do not share. Nor, in any event, could a state-court denial extinguish the independent claims-allowance function that CBT itself invoked by filing Proof of Claim No. 1 here.

**D. The Motion's Own Framing Concedes a Factual Dispute**

The Motion argues that the Complaint's quoted excerpts of the August 25, 2023 hearing transcript "show[] the Fayette Circuit Court directly considering" the parties' rights and that "there

was no finding in the Wains' favor." (Mot. at 8.) That is an argument about what a disputed factual record *shows* — the very thing a Rule 12(c) motion cannot resolve. The Complaint alleges the opposite: that no Kentucky court ever adjudicated a deficiency, and that the only adjudication of the proceeds — the Distribution Order — confirmed satisfaction. On this Motion, Plaintiffs' allegations control.

## V. CBT IS NOT ENTITLED TO JUDGMENT ON THE MERITS OF ANY CLAIM

### A. Claims I, VI, and IX–XIII: The Motion Answers One Theory and Ignores Five

CBT's sole merits argument against seven of the thirteen claims is that "the Kentucky court considered the identical 'delay' theory" and that Kentucky's escheat statute cannot extinguish a judgment. (Mot. at 7–8.) That argument addresses, at most, the common-law duty theory of the First Claim (Compl. ¶¶ 31–35). It does not address the independent legal grounds of the others: the Eleventh Claim rests on CBT's failure to obtain a deficiency judgment required by Kentucky law, KRS 426.005 and 426.006 (Compl. ¶¶ 99–106); the Thirteenth Claim rests on satisfaction by operation of KRS 382.365, under which the March 12, 2021 Confirmation Order "released and discharged" the Wains as "payment in full" (Compl. ¶¶ 115–122); the Ninth and Tenth Claims rest on CBT's subordination, release, and misrepresentation of its secured status, including the release CBT itself endorsed in the March 7, 2024 Order (Compl. ¶¶ 81–98); the Twelfth Claim rests on the closure of the foreclosure case and CBT's failure to disclose it (Compl. ¶¶ 107–114); and the Sixth Claim rests on 11 U.S.C. § 502 (Compl. ¶¶ 57–66). None of those grounds was adjudicated in Kentucky, and the Motion does not contend otherwise — it simply never mentions them.

On the substance, the Complaint's core theory is *satisfaction*, pleaded in detail: the foreclosure sale generated $630,003.00 against a $358,412.72 judgment (Compl. ¶¶ 11–12, 15–16); under Kentucky law a deficiency arises only when sale proceeds are insufficient to extinguish the debt, *Pearman v. West Point Nat'l Bank*, 887 S.W.2d 366, 368 (Ky. Ct. App. 1994); a deficiency

must be judicially created by post-sale motion, which CBT never filed, *Owens v. First Com. Bank of Prestonsburg*, 706 S.W.2d 414 (Ky. App. 1985); *Harvest Homebuilders LLC v. Commonwealth Bank & Tr. Co.*, 310 S.W.3d 218, 219 (Ky. App. 2010); confirmation of the sale constituted payment to the extent of proceeds, KRS 382.365 (Compl. ¶¶ 116–120); and the Distribution Order closed the case with CBT paid from the remaining proceeds and its request for more denied (Compl. ¶¶ 27, 83, 87, 108). Whether Kentucky law required a deficiency judgment, and whether the sale satisfied the debt, are the merits of this case. They cannot be resolved against the pleader on a 12(c) motion — particularly where CBT's own interrogatory answer, served the same day as this Motion, states that CBT "is reviewing any impact of the Distribution Order on the Proof of Claim." A party still "reviewing" the effect of a 2024 order on its own claim cannot be entitled to judgment as a matter of law that the claim is valid.

The Complaint also pleads CBT's own prior admissions, which must be taken as true here. In its May 22, 2023 Motion for Distribution, CBT acknowledged that $605,035.42 in sale proceeds was held by the Master Commissioner and asked the Kentucky court to distribute *$358,412.72 of those proceeds* — its entire judgment — to CBT, blaming the senior lienholder's inaction for the delay. (Compl. ¶¶ 26, 84–86.) A creditor that asked a court to pay its judgment in full out of the sale proceeds has admitted the proceeds were sufficient to satisfy that judgment. The Kentucky court's response was the Distribution Order: granted in part, denied in part, $66,884.60, final and appealable, unappealed. CBT's theory in this Motion — that no proceeds-based satisfaction is even possible as a matter of law — is irreconcilable with the relief CBT itself sought in Kentucky, as pleaded in the Complaint.

CBT's own filings in this proceeding confirm that the facts underlying these claims are not in genuine dispute. In its Statement of Genuine Issues responding to Plaintiffs' summary judgment motion (Adv. Doc. 17), CBT stated "UNDISPUTED" to the January 20, 2021 judgment of

$358,412.72 (No. 2), the March 12, 2021 confirmation with $630,000.01 in proceeds held by the Master Commissioner (Nos. 5, 12), and the text of Kentucky's escheat provision (No. 16). And as to the facts at the center of this Motion, CBT disputed nothing *factually*: to Plaintiffs' statements that the sale price exceeded CBT's judgment by 75.64% (No. 3), that CBT never filed a motion for a deficiency judgment and the case closed March 7, 2024 without any deficiency ever being adjudicated (No. 8), and that no document containing the words "deficiency judgment" exists in the Kentucky record (No. 9), CBT responded only that the statements were "not relevant" or "a conclusion of law" — never that they were false. A party that has told this Court the absence of any deficiency judgment is undisputed-but-irrelevant cannot obtain judgment on the pleadings premised on the existence of an enforceable deficiency.

As to Count VI specifically, judgment on the pleadings is unavailable for an independent reason: the count *is* the claims-allowance process. CBT filed Claim No. 1; Plaintiffs objected; § 502(b) commands determination. A Rule 12(c) motion cannot extinguish this Court's statutory duty to determine a claim over which CBT concedes jurisdiction.

**B. Claim II (Elder Abuse): CBT Misreads the Pleading, and the Claim Is Timely Twice Over**

CBT asserts that the elder-abuse claim is "predicated on the February 26, 2021 lockout and removal of personal property. (Compl. ¶¶ 40–44.)" (Mot. at 8.) That citation is to the wrong claim: paragraphs 40 through 44 plead the *Third* Claim (conversion). The Second Claim is pleaded at paragraphs 36 through 38, and its predicate is CBT's conduct "wrongfully depriving the Wains of, and otherwise interfering in, their property interest in the Sale Proceeds" in violation of Cal. Welf. & Inst. Code § 15610.30. (Compl. ¶ 38.) That deprivation was not a single 2021 event: the Sale Proceeds were held by the Master Commissioner until the March 7, 2024 Distribution Order (Compl. ¶¶ 16–18, 27), and the interference continued through CBT's December 20, 2024 proof of

claim against these California elders. Measured from the conduct actually pleaded, the four-year period of Cal. Welf. & Inst. Code § 15657.7 had not remotely run when the Complaint was filed on April 24, 2025.

Even on CBT's own (incorrect) accrual date, the claim is timely under 11 U.S.C. § 108(a). A February 26, 2021 accrual would place expiration at February 26, 2025. Plaintiffs filed their Chapter 13 petition on October 30, 2024 (Compl. ¶ 2) — *before* the period expired. Under § 108(a), the action could be commenced by the later of the period's end or two years after the order for relief — October 30, 2026. The Complaint, filed April 24, 2025, is timely as a matter of law. No tolling needed to be pleaded: § 108(a) operates by statute on the face of the record CBT itself invokes.

CBT's remaining argument — that the California statute "cannot" reach its conduct — is a choice-of-law and merits contention, not a pleadings defect. The Complaint pleads that the Wains have resided in California as their principal domicile since June 2021 and qualify as elders under § 15610.27 (Compl. ¶ 37), and that CBT's depriving conduct — including its 2023–2024 conduct concerning the Sale Proceeds and its proof of claim filed in this California bankruptcy — was directed at California residents. Which state's law applies, and to which conduct, cannot be resolved against the pleader on the pleadings.

**C. Claim III (Conversion): Limitations Cannot Be Resolved on the Face of the Complaint**

A limitations dismissal requires that the defense appear "beyond doubt" on the complaint's face. *Supermail*, 68 F.3d at 1206–07. It does not. First, the Complaint pleads conversion not only by the February 26, 2021 lockout (Compl. ¶ 40) but by continuing wrongful *retention*: "The Wains have made multiple formal demands for the return of their personal property. CBT again was complicit in thwarting the Wain attempts, falsely claiming the property was abandoned." (Compl. ¶ 43.) Conversion by refusal of a demand for return accrues at the demand and refusal — and the dates of those demands and refusals are nowhere established by the pleading, making accrual a fact

question that cannot be resolved on the face of the Complaint. Second, CBT argues in the same breath that California substantive law cannot apply to its Kentucky conduct while invoking California's three-year limitations statute (Cal. Civ. Proc. Code § 338(c)(1)); it cannot have it both ways, and the resulting choice-of-law question is itself unfit for resolution on the pleadings. Third, to the extent the demands and refusals pleaded in paragraph 43 occurred within the limitations period or after the petition, ordinary accrual rules and § 108(a) preserve the claim. A defense this entangled in disputed facts cannot support judgment on the pleadings.

**D. Claim IV Is Withdrawn**

Plaintiffs withdraw the Fourth Claim for Relief. Its factual allegations remain pleaded in support of the remaining claims, and nothing in this withdrawal concedes the preclusive effect of any Kentucky order, which Plaintiffs contest as set forth in Section IV above. The withdrawal moots the Motion as to the Fourth Claim — and with it, the only count to which CBT's Rooker-Feldman argument could even arguably speak: no remaining claim asks this Court to review, reject, or "remove" any Kentucky proceeding.

**E. Claim V (§ 1983): Lugar Cuts Against CBT, Not For It**

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) — CBT's own authority — *held* that a private creditor *is* a state actor when it jointly participates with state officials in a seizure of property through state-created procedures: there, prejudgment attachment executed by a sheriff. Id. at 941–42. The footnote CBT cites (id. at 939 n.21) distinguishes mere resort to the courts — it does not immunize joint participation. The Complaint alleges more than filing lawsuits: it alleges that CBT acted "under color of state law through their use of state court procedures to deprive Plaintiffs of their constitutional rights," that CBT "abused the legal process" and "manipulated court proceedings" (Compl. ¶¶ 54–55), and that CBT seized Mrs. Wain's wages through a state garnishment order issued March 3, 2021 and executed through state machinery against her public-

school employer (Compl. ¶¶ 75–76 & Ex. E). Garnishment — like the attachment in *Lugar* — is a state-created seizure procedure executed by state officers. Whether CBT's use of it amounted to joint participation is fact-intensive and cannot be resolved against the pleader at this stage; at minimum, leave to amend to elaborate the joint-participation facts would be required before judgment could enter.

**F. Claim VII (CARES Act)**

The Seventh Claim pleads that the February 8, 2021 foreclosure sale, conducted during the federal COVID-19 moratorium, violated 15 U.S.C. § 9056(c)(2), 12 C.F.R. § 1024.41(f), and the CFPB's COVID-19 emergency mortgage rules. (Compl. ¶¶ 60, 67–73.) CBT's sole argument is that the Complaint does not allege the Gold Line Equity Agreement was a “federally backed mortgage loan.” (Mot. at 10.) That argument is too narrow in three respects. First, it addresses only the § 9056 prong: Regulation X's protections, 12 C.F.R. § 1024.41, are not limited to “federally backed” loans — they apply to federally related mortgage loans, a category defined by 12 U.S.C. § 2602(1)(B) to include loans secured by residential real property made by lenders whose deposits are federally insured or that are otherwise federally regulated. The Complaint pleads that CBT is “a federally regulated banking company” (Compl. ¶¶ 7, 69), and the foreclosed property was also encumbered by the senior residential mortgage held by U.S. Bank/NewRez (Compl. ¶¶ 15–16). Whether the loans and the sale fell within these federal protections — and which exemptions, if any, apply — turns on the character of the loans, a fact- and document-bound question that cannot be resolved against the pleader on the pleadings. Second, CBT's own Answer confirms the question is factual: it affirmatively asserts that “Central Bank's mortgage is not a federally backed mortgage.” (Answer ¶¶ 60, 68.) A defendant's own factual contention cannot be credited on its own Rule 12(c) motion — and its presence in the Answer concedes that the loans' federal character is an issue of fact, not a defect of pleading. Third, if the Court concludes the count insufficiently pleads the loans' federal

character, the cure is an amendment adding those characteristics — a quintessential curable defect under *Lopez* — not judgment for CBT.

**G. Claim VIII (FDCPA)**

*Henson v. Santander Consumer USA Inc.*, 582 U.S. 79 (2017), decided only that a purchaser of defaulted debt collecting for its own account is not a "debt collector" under the third-party prong of 15 U.S.C. § 1692a(6). It did not hold that an originating creditor can never be liable, and it did not address the statute's false-name provision, under which a creditor is a debt collector where, "in the process of collecting his own debts, [it] uses any name other than his own which would indicate that a third person is collecting or attempting to collect" such debts. 15 U.S.C. § 1692a(6). The Eighth Claim pleads collection of amounts not owed — garnishment of Mrs. Wain's wages beginning March 2021, yielding approximately $4,185, while $605,035.42 in sale proceeds sufficient to satisfy CBT's judgment sat available (Compl. ¶¶ 75–78) — and CBT's collection activity was conducted through outside counsel and, by CBT's own discovery admissions, the loan had been internally charged off. Whether CBT's collection posture brings it within the statute involves facts outside the face of the pleading. And should the Court conclude that *Henson* bars the Eighth Claim as pleaded, amendment would not be futile: California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.2(c), expressly reaches creditors collecting their own debts, and Plaintiffs' allegations of collection conduct directed at them as California residents would state a claim under it. Dismissal with prejudice would therefore be improper in any event. *Lopez*, 203 F.3d at 1130.

**VI. IF ANY CLAIM IS FOUND DEFICIENT, LEAVE TO AMEND MUST BE GRANTED**

CBT asks for dismissal "with prejudice." But "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal." *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir.

2000) (en banc), overruled on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc); Fed. R. Civ. P. 15(a)(2) (leave "freely give[n] when justice so requires"). Discovery in this proceeding is ongoing — indeed, Plaintiffs' motion to compel the depositions of CBT's declarant and others is pending before this Court (Adv. Docs. 45, 47, 49, 51–52) — and any pleading amendment would be informed by that discovery.

## VII. THE BURIED REQUEST FOR A PRE-FILING BAR IS PROCEDURALLY AND SUBSTANTIVELY IMPROPER

In its concluding sentence, CBT asks the Court to bar Plaintiffs "from filing additional pleadings without prior permission." (Mot. at 11.) Pre-filing restrictions against litigants are "an extreme remedy" reserved for extraordinary circumstances, and before entering one a court must (1) give the litigant notice and an opportunity to be heard, (2) compile an adequate record, (3) make substantive findings that the litigant's filings are frivolous or harassing, and (4) narrowly tailor the order. *De Long v. Hennessey*, 912 F.2d 1144, 1147–48 (9th Cir. 1990); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007). CBT's single unnoticed sentence satisfies none of these requirements: there is no motion, no notice, no record, no findings, and no tailoring. Nor could there be. Plaintiffs' filings in this Court have been substantive, evidence-laden, and repeatedly invited by the Court's own directives; Plaintiffs have made every plan payment and paid every court-ordered sanction, while CBT has been sanctioned in this case and failed to appear at seven consecutive hearings. Nor has any court, in any of the litigation CBT cites, found any filing by Plaintiffs frivolous: the one action CBT features (RJN Exs. 9–10) was dismissed on absolute judicial immunity and Eleventh Amendment grounds, without any ruling on the merits, and remains the subject of a pending petition for a writ of certiorari, *Wain v. Bunnell*, No. 25-5722 (U.S.). The request should be denied.

## VIII. SEQUENCING: THE COURT SHOULD DECIDE THE FULLY BRIEFED RECORD, NOT SUPPLANT IT

Already pending before this Court, fully briefed and set for the same September 3 hearing, are Plaintiffs' revised motion for summary judgment (Adv. Doc. 8, filed July 21, 2025; briefing complete August 28, 2025, Adv. Docs. 9–12, 16–18; supplemental briefing Adv. Docs. 27–33) and the claim-objection proceedings (Bankr. Docs. 38, 66) — a record of more than 1,100 pages of Plaintiffs' documentary evidence, against which CBT's response left the dispositive facts factually uncontested (Adv. Doc. 17; see Section V.A above). Plaintiffs have already asked the Court to rule on those submitted matters without further hearing. (Adv. Doc. 41.) Where a Rule 12(c) motion's characterizations collide with an evidentiary record already before the Court, the pleadings motion cannot be used to short-circuit decision on that record — and it would be a peculiar result if CBT, having obtained the continuance that moved the fully briefed matters to September 3 (Adv. Docs. 37, 39), could use the delay it created to interpose a pleadings motion ahead of them. Plaintiffs respectfully request that the Court take up the fully briefed summary judgment motion and claim objection first, or together with this Motion — CBT itself states it "does not oppose a continuance" of its Motion if the Court prefers a different sequence (Mot. at 3) — and that discovery, including the court-ordered depositions of CBT's declarant, be completed before any dispositive ruling that could turn on the facts those depositions will test.

Finally, if the Court looks beyond the pleadings at all, Rule 12(d) requires full conversion — and the existing record forecloses CBT's narrative. Plaintiffs' evidentiary declaration (Adv. Doc. 32) establishes, among other things: that CBT's counsel swore in the March 3, 2021 garnishment affidavit that the amount due was "$358,412.72, plus interest, attorneys' fees and costs *(subject to credit for proceeds from the sale of collateral, which have not yet been received)*" — CBT's own sworn acknowledgment that the sale proceeds were to be credited against the judgment; that CBT

garnished $4,185.00 from Mrs. Wain's teaching salary between May and August 2021 while $605,035.42 sat with the Master Commissioner; and that CBT reported the account to Experian as "Charged off as bad debt" in 2023. A motion that cannot survive the record it invites is not entitled to a pleadings shortcut around that record.

## IX. CONCLUSION

The Motion asks this Court to accept CBT's narrative over the Complaint's allegations, to treat a satisfied judgment as an unpaid one, to find a deficiency no Kentucky court ever adjudicated, and to close the courthouse doors to two elderly debtors who are current on every obligation — all on the pleadings, nearly fifteen months after those pleadings closed and on the eve of decision on a full evidentiary record. Rule 12(c) does not permit any of that. Plaintiffs respectfully request that the Court: (1) deny the Motion in its entirety; (2) deny the request for a pre-filing restriction; (3) in the alternative, grant Plaintiffs leave to amend any claim found deficient; (4) decide the fully briefed summary judgment motion and claim objection on their merits; and (5) grant such other relief as is just and proper.

Dated: August 14, 2026

Respectfully submitted,

Douglas A. Wain
Plaintiff in Pro Per

Elisa Wain
Plaintiff in Pro Per