DOUGLAS A. WAIN
ELISA WAIN
P.O. Box 7473
Westlake Village, CA 91359
Telephone: (859) 494-3677
Email: douglaswain@gmail.com
Plaintiffs in Pro Per

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| **In re**<br><br>**Douglas Alan Wain, Elisa Wain,**<br><br>**Debtors,**<br>______________________________<br><br>**Douglas Alan Wain and Elisa Wain**<br><br>**Plaintiffs,**<br>**vs.**<br><br>**Central Bank & Trust Co.**<br><br>**Defendant.** | **Case No. 1:24-bk-11814-MB**<br><br>**Adv. Proc. No. 1:25-ap-01026-MB**<br><br>**Chapter 13**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDERS COMPELLING FURTHER RESPONSES TO WRITTEN DISCOVERY, COMPELLING PRODUCTION OF DOCUMENTS, DETERMINING THE SUFFICIENCY OF ANSWERS TO REQUESTS FOR ADMISSION, AND FOR EXPENSES UNDER RULE 37(a)(5); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DOUGLAS A. WAIN [LBR 7026-1(c)(4)]**<br><br>**Hon. Martin R. Barash**<br><br>**Hearing:**<br>**Date: September 24, 2026**<br>**Time: 2:30 p.m.**<br>**Courtroom 303**<br>**21041 Burbank Blvd.**<br>**Woodland Hills, CA 91367** |

**TABLE OF CONTENTS**

NOTICE OF MOTION ..... 5
MEMORANDUM OF POINTS AND AUTHORITIES ..... 7
I. INTRODUCTION ..... 7
II. STATEMENT OF FACTS ..... 8
A. The requests ..... 8
B. The August 5 responses: objections and a gesture at a 2019 production ..... 8
C. The meet-and-confer record ..... 9
D. The August 24 supplemental responses ..... 9
E. Sworn testimony establishes that responsive documents exist and are withheld ..... 10
1. Donna Craven (August 18, 2026) ..... 10
2. Steven D. Hall (August 21, 2026) ..... 11
3. Crowe LLP (August 24, 2026) ..... 12
F. The stipulation process ..... 13
G. The stipulation deadline passed in silence ..... 13
H. Timeliness ..... 14
III. ARGUMENT ..... 14
A. The resisting party bears the burden, and boilerplate objections carry none of it ..... 14
B. CBT's Rule 33(d) references are improper: the option requires specificity, equal burden, and records that actually contain the answer ..... 15
C. Production must be compelled: responsive documents demonstrably exist and are withheld ..... 16
D. The Requests for Admission require amended answers or deemed admission ..... 18
E. The privilege log: produce it or waive ..... 20
F. The relevance objections fail on CBT's own record ..... 21
G. Expenses are mandatory ..... 22
IV. RELIEF REQUESTED ..... 22
DECLARATION OF DOUGLAS A. WAIN ..... 23
INDEX OF EXHIBITS ..... 27

## TABLE OF AUTHORITIES

**Cases**

*A. Farber & Partners, Inc. v. Garber,* 234 F.R.D. 186 (C.D. Cal. 2006) .............................. 14
*Alves v. Riverside County,* 339 F.R.D. 556 (C.D. Cal. 2021) .............................................. 15
*Asea, Inc. v. Southern Pacific Transportation Co.,* 669 F.2d 1242 (9th Cir. 1981) ......... 18, 19
*Blankenship v. Hearst Corp.,* 519 F.2d 418 (9th Cir. 1975) ................................................ 14
*Burlington Northern & Santa Fe Railway Co. v. U.S. District Court,* 408 F.3d 1142 (9th Cir. 2005) ........................................................................................................ 20
*Cambridge Electronics Corp. v. MGA Electronics, Inc.,* 227 F.R.D. 313 (C.D. Cal. 2004) .. 15
*Conlon v. United States,* 474 F.3d 616 (9th Cir. 2007) ........................................................ 19
*Duran v. Cisco Systems, Inc.,* 258 F.R.D. 375 (C.D. Cal. 2009) ......................................... 15
*F.T.C. v. AMG Services, Inc.,* 291 F.R.D. 544 (D. Nev. 2013) ............................................ 14
*Friends of Hope Valley v. Frederick Co.,* 268 F.R.D. 643 (E.D. Cal. 2010) ......................... 21
*Hadley v. United States,* 45 F.3d 1345 (9th Cir. 1995) ........................................................ 19
*Loop AI Labs Inc. v. Gatti,* 2016 WL 2908415 (N.D. Cal. May 13, 2016) (Ex. 19) ............. 20
*MarketLinx, Inc. v. Industrial Access, Inc.,* 2013 WL 12133884 (C.D. Cal. Jan. 2, 2013) (Ex. 18) ........................................................................................................ 15
*O'Connor v. Boeing North American, Inc.,* 185 F.R.D. 272 (C.D. Cal. 1999) ...................... 15
*Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Investment Corp.,* 711 F.2d 902 (9th Cir. 1983) ........................................................................................................ 15
*Superior Communications v. Earhugger, Inc.,* 257 F.R.D. 215 (C.D. Cal. 2009) ................. 14
*United States ex rel. Englund v. Los Angeles County,* 235 F.R.D. 675 (E.D. Cal. 2006) ....... 18
*United States ex rel. O'Connell v. Chapman University,* 245 F.R.D. 646 (C.D. Cal. 2007) .. 16

**Rules**

Fed. R. Civ. P. 26(a)(1)(A)(iv) ........................................................................ 5, 9, 17, 22
Fed. R. Civ. P. 26(b)(1) ............................................................................................ 14, 21
Fed. R. Civ. P. 26(b)(5)(A) .............................................................................................. 20
Fed. R. Civ. P. 33(a)(2) ............................................................................................... 5, 16
Fed. R. Civ. P. 33(b)(3), (b)(5) .......................................................................................... 8
Fed. R. Civ. P. 33(d) ....................................................................................... 5, 8, 9, 15, 22

Fed. R. Civ. P. 34(b)(2)(B)–(C) & advisory committee's note (2015) ........................ 6, 17, 23
Fed. R. Civ. P. 36(a)(4) ........................................................................................ 18
Fed. R. Civ. P. 36(a)(6) ........................................................................................ 6, 18
Fed. R. Civ. P. 36(b)........................................................................................... 19
Fed. R. Civ. P. 37(a)(4) ........................................................................................ 16
Fed. R. Civ. P. 37(a)(5)(A) ................................................................................ 6, 22, 23
Fed. R. Bankr. P. 7026, 7033, 7034, 7036, 7037 .................................................... 5
Local Bankruptcy Rule 7026-1(c)(3) ................................................................. 6, 13
Local Bankruptcy Rule 7026-1(c)(4) ....................................................... 6, 14, 22, 23
Local Bankruptcy Rule 9013-1(d), (f), (h) ............................................................ 6, 15

**NOTICE OF MOTION**

TO THE COURT, DEFENDANT, AND ITS COUNSEL OF RECORD: PLEASE TAKE NOTICE that on September 24, 2026 at 2:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 303 of the above-entitled Court, located at 21041 Burbank Boulevard, Woodland Hills, California 91367, Plaintiffs Douglas A. Wain and Elisa Wain will and hereby do move the Court, pursuant to Federal Rules of Civil Procedure 26, 33, 34, 36, and 37, made applicable by Federal Rules of Bankruptcy Procedure 7026, 7033, 7034, 7036, and 7037, and Local Bankruptcy Rule 7026-1, for the orders described below. The Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Douglas A. Wain and the exhibits thereto, the pleadings and records on file in this adversary proceeding and the underlying bankruptcy case, and such further evidence and argument as the Court may receive.

Plaintiffs seek orders: (1) compelling Defendant Central Bank & Trust Co. ("CBT") to serve further, complete, verified answers to Interrogatories Nos. 1, 2, 5, 6, 7, 10, 11, and 25 — without resort to Rule 33(d) as to Nos. 1, 2, 6, 7, 10, and 11, and without deferral of the contention answers to Nos. 5, 6, and 25, as to which no order under Rule 33(a)(2) exists — and substantive answers, notwithstanding CBT's relevance objections, to Interrogatories Nos. 8, 9, and 15; (2) compelling CBT to produce all documents responsive to Plaintiffs' Requests for Production that post-date its 2019 Kentucky state-court production, including without limitation the calculation of its Proof of Claim, all records of the application of sale proceeds and garnished funds, the Watch Loan Committee minutes, agendas, and related records concerning Plaintiffs' accounts, CBT's credit-reporting and dispute-handling records concerning Plaintiffs, the subordination-agreement documents sought by Request for Production No. 13, the insurance policies CBT has acknowledged it must identify under Rule 26(a)(1)(A)(iv), and the audited financial statements CBT's Interrogatory Answer No. 18 promised to produce; (3) compelling CBT to serve the statements required by Rule

34(b)(2)(B)–(C) stating, for each Request, whether responsive materials are being withheld and on what basis, and whether production is complete; (4) determining the sufficiency of CBT's answers to Requests for Admission Nos. 2, 3, 4, 10, 11, 14, 15, 18, 19, and 20 and ordering that amended answers be served or the matters be deemed admitted, pursuant to Rule 36(a)(6); (5) ordering CBT to produce a privilege log identifying every document withheld on a claim of privilege, or a verified written statement that nothing has been withheld, on pain of waiver; (6) extending the August 31, 2026 discovery cutoff to the extent necessary for the limited purpose of completing the responses, log, and production ordered, so that CBT's deficient responses do not run out the clock they created; and (7) awarding Plaintiffs their reasonable expenses incurred in making this Motion under Rule 37(a)(5)(A).

This Motion is accompanied by the Declaration of Douglas A. Wain, which establishes, pursuant to Local Bankruptcy Rule 7026-1(c)(4), counsel's failure to cooperate in the preparation of the Joint Stipulation required by LBR 7026-1(c)(3): Plaintiffs served their portion of the Joint Stipulation on CBT's counsel on August 21, 2026, with CBT's insertions due within seven days, by August 28, 2026, and CBT served nothing by the deadline or in the six days since. Pursuant to LBR 9013-1(f), any opposition must be filed and served not later than fourteen (14) days before the hearing. This Motion is filed twenty-one (21) days before the hearing, in compliance with LBR 9013-1(d).

Dated: September 3, 2026

Respectfully submitted,

Douglas A. Wain
Plaintiff, Pro Per

Elisa Wain
Plaintiff, Pro Per

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Twenty months after filing a Proof of Claim for $357,990.91, CBT has not produced, identified, or served a single document or interrogatory answer stating how that number was calculated. Its counsel admitted in writing on August 13, 2026 that the claim contains a "clerical error" CBT "will amend" — no amendment has been filed. Its supplemental interrogatory responses, verified August 24, 2026, answer the central question by swearing that CBT "is reviewing any impact of the Distribution Order on the Proof of Claim." And its entire document production consists of re-transmitting the production it made in the 2019 Kentucky foreclosure action — records that predate the Proof of Claim by five years and cannot, as a matter of chronology, contain its calculation — which counsel nonetheless described in writing as "the complete responsive documents." Meanwhile, CBT's own admissions establish that it received $71,069.60 — $66,884.60 from the sale distribution and $4,185.00 in garnished wages (Ex. 7, RFA Nos. 5–7, admitted) — while no sworn answer states how those receipts were applied or whether the claim was ever reduced by them.

Certified deposition testimony from two of CBT's own officers — one current, one the manager who ran Plaintiffs' accounts for CBT until April 2024 — has now established that responsive documents exist which have never been produced: a twelve-to-fifteen-member Watch Loan Committee, documented in CBT's written policies, met monthly, discussed the Wain accounts every month, and kept minutes; a transaction ledger records how payments and credits were applied; credit-reporting records sit in a named department under a named employee; and no Wain record

has been lost or destroyed. The same testimony establishes that no deficiency judgment against Plaintiffs was ever sought, discussed, or advised — the fact that Requests for Admission Nos. 10 and 11 asked CBT to admit, and that CBT answered with an evasion. This Motion asks the Court to order what the Federal Rules have required since July: real answers, real documents, and a real accounting of what is being withheld.

## II. STATEMENT OF FACTS

### A. The requests.

Plaintiffs served their First Set of Interrogatories, First Set of Requests for Production, and First Set of Requests for Admission on July 5–6, 2026. (Wain Decl. ¶ 2; Exs. 1–4.) The interrogatories seek, among other things, the complete mathematical basis of the Proof of Claim (No. 1); each credit, payment, offset, or recovery applied to the account (No. 2); the effect of the March 7, 2024 Distribution Order on the claim (No. 5); whether a deficiency exists and its calculation (No. 6); the application of the $66,884.60 in surplus proceeds and $4,185.00 in garnished wages (No. 7); each accounting entry concerning the account (No. 10); and all collection activities (No. 11). The Requests for Production seek the documents underlying each of those subjects, and the Requests for Admission put to CBT the elemental facts of its own claim: the sale price, the judgment amount, the amounts received, the absence of any deficiency judgment, and the accuracy of the filed claim. (Exs. 2–4.)

### B. The August 5 responses: objections and a gesture at a 2019 production.

CBT's August 5, 2026 responses answered the core interrogatories by objection and by invoking Rule 33(d) to refer Plaintiffs to "the documents attached to its Proof of Claim and the documents previously produced to the Plaintiffs marked as CB-WAIN 0001 to 0738." (Ex. 5.) No documents accompanied the responses, and the answers were signed by counsel alone — the verification Rule 33(b)(3) and (5) required did not arrive until August 24, 2026, nineteen days later.

(Wain Decl. ¶ 3.) The responses to the Requests for Admission did admit the elemental amounts: the $630,003 sale price (No. 1), receipt of $66,884.60 from surplus proceeds (No. 5), receipt of $4,185.00 from garnishments (No. 6), and a total received of $71,069.60 (No. 7). (Ex. 7.) The remainder was deflected, as Part III.D details.

**C. The meet-and-confer record.**

Plaintiffs sent a detailed meet-and-confer letter on August 10, 2026. (Ex. 8.) CBT's counsel responded by letter dated August 13, 2026, which: (a) admitted that "[d]ue to a clerical error, the Proof of Claim filed in this case stated the amount as $357,990.91. CBT will amend its claim to correct the difference"; (b) indexed CB0001–CB0738 as account statements from 2012–2019, account-opening documents, documents from a prior foreclosure case, and communications — i.e., records predating the Proof of Claim by five or more years; and (c) refused a privilege log outright: "there is no need to create a privilege log at all." (Ex. 9.) On August 14, 2026, counsel wrote that the requested documents "were provided to you in your Kentucky litigation," transmitted a link to "those same documents," and described them as "the complete responsive documents." (Ex. 11.) Plaintiffs' August 14 letter set a final compliance deadline of August 19, 2026 and itemized what remained outstanding. (Ex. 10.) The deadline passed without production.

**D. The August 24 supplemental responses.**

On August 24, 2026, CBT served Supplemental Responses to the First Set of Interrogatories. (Ex. 13.) The supplements repeat the Rule 33(d) gesture at the 2019 production (Responses 1, 2, 6, 7, 10, 11); refuse Responses 19 and 20 outright (legal fees; auditor communications); promise but do not provide the insurance identification required by Rule 26(a)(1)(A)(iv) (Response 21); refuse Response 22 (related-party lending); and answer the central question — the Distribution Order's effect on the claim — by stating that CBT "is reviewing any impact of the Distribution Order on the Proof of Claim and will supplement if necessary" (Response 5), a sworn answer less definite than

counsel's own letter of eleven days earlier, which had quantified that effect at $66,884.60. (Ex. 9 at 2–3.) Supplemental Response No. 1 refers to "the documents produced with these responses"; the transmitting email contained two PDF attachments — the responses themselves and a motion — and no documents. (Ex. 13; Wain Decl. ¶ 9.) No supplemental responses to the Requests for Production or Requests for Admission were served at all. The supplement also rewrote Response No. 18: on August 5, CBT stated that its audited financial statements "are business records that speak for themselves, and CBT will produce those statements in response to the corresponding document request" (Ex. 5); the sworn supplement deletes the promise, and the same statements are now "business records not relevant to this proceeding" (Ex. 13). The only intervening event was Plaintiffs' August 10 letter, which had pointed out that the promise contradicted CBT's refusal to produce the statements under Request for Production No. 14. (Ex. 8 at 3–4.) The supplemental answers are verified by Becky Mullins "to the best of my present memory, knowledge and belief," notarized in Fayette County, Kentucky on August 24, 2026. (Ex. 13.)

**E. Sworn testimony establishes that responsive documents exist and are withheld.**

*1. Donna Craven (August 18, 2026).* Ms. Craven, CBT's Senior Vice President and Compliance Officer, identified Becky Mullins — Defendant's Senior Vice President for Special Assets, and the declarant who verified the supplemental answers — as the officer who handles the Wain matters for CBT and the source of CBT's knowledge concerning them. (Craven Tr. 67:4–8, 69:7–70:16, 71:4–74:21, 132:1–5 (Ex. 15); certified transcript received August 26, 2026.) Her transcript adds three facts that decide this Motion's document questions. First, Ms. Craven — the officer who maintains CBT's consumer-complaint file — has never been asked to gather records for this lawsuit. (Id. 123:22–24.) Second, the records exist: CBT keeps a transaction ledger of how payments and credits are applied (id. 67:10–13); its credit-reporting records are maintained in its loan-services department under Tim Austin (id. 109:13–23, 120:6–16, 122:3–10); charge-off

decisions are documented in Special Assets (id. 119:8–19); and no category of Wain records has been destroyed, deleted, or lost (id. 124:1–3). Third, asked where the claim's figures live and who could swear to them, her answer — given more than twenty times — was Becky Mullins. (E.g., id. 71:4–74:21, 121:4–22, 125:5–23.) The records, and the person who keeps them, are identified; only the production is missing.

*2. Steven D. Hall (August 21, 2026).* Mr. Hall — CBT's Vice President and Manager of Special Assets, who personally handled Plaintiffs' accounts until his retirement on April 30, 2024, and who was tendered by CBT's own counsel as the best source of knowledge on the Wain accounts — testified from a certified transcript received September 2, 2026 (Ex. 16) as follows:

> (a) *The Watch Loan Committee.* CBT maintained a "watch loan committee" of twelve to fifteen executives, compliance personnel, and loan-review personnel, including Paul Thornsberry, Greg Shewmaker, Donna Craven, David Ross, and Becky Mullins. (Hall Dep. 44:8–45:7.) The committee "is documented" in "Central Bank's policies and records." (Id. 45:3–7.) It met once a month, and "[t]he Wain accounts . . . were discussed every month." (Id. 47:1–8.) Minutes were kept — by Ms. Mullins after Mr. Hall became chair, and before that by Ms. Craven and Ellen Sharp. (Id. 47:25–48:8.) Mr. Hall was the final decision-maker on the Wain accounts, and he "advised them of [his] legal actions" at the committee. (Id. 49:3–22.)
>
> (b) *No deficiency judgment.* A deficiency judgment against Plaintiffs was never sought, never discussed, and never advised: "we did not have any need to seek a deficiency judgment"; "it was not discussed"; and no one "even discussed with [him] that [CBT] might need a deficiency judgment to continue collection." (Id. 31:1–3; 33:14–24; 34:5–8.)

(c) *The surplus.* CBT alone initiated the foreclosure and alone requested the order of sale, knowing it was the second lienholder (id. 66:10–13; 67:17–19; 69:22–70:1), and Mr. Hall agreed that on February 6, 2021 the Master Commissioner held "several hundred thousand dollars" over CBT's approximately $358,000 judgment. (Id. 69:6–15.)

(d) *Records CBT has not searched.* Mr. Hall testified that CBT's attorneys "implored" the Master Commissioner "several times" for permission to file the motion for distribution and that the Commissioner "contacted our attorneys"; asked whether CBT's records reflect those communications, he answered, "I wouldn't know that." (Id. 50:2–51:10.)

No committee minutes, agendas, policies, or related records — for a committee that discussed Plaintiffs' accounts every month, with minutes kept by the very officer who verified CBT's supplemental answers — have ever been produced, identified, or logged, in a production counsel calls "complete." Those records are responsive to Request for Production No. 9, which seeks "[a]ll board minutes, audit-committee minutes, and other committee minutes referring or relating to the Wain Account or any of the Wain Matters," and to Request No. 8, which seeks all documents from CBT's Special Assets unit relating to the account, including internal correspondence. (Ex. 3.) CBT's response to each pointed Plaintiffs to the 2019 production, and produced nothing. (Ex. 6.)

*3. Crowe LLP (August 24, 2026).* Plaintiffs subpoenaed CBT's outside auditor, Crowe LLP, for deposition on August 24, 2026; the subpoena was served July 15, 2026. (Wain Decl. ¶ 12.) Mr. Hall confirmed that Crowe (formerly Crowe Chizek) was CBT's external auditor. Crowe served objections but sought no protective order and no order quashing the subpoena; on August 21 its counsel wrote, “We will not be producing the witness,” and on August 24 no witness, designee, or counsel appeared. (Id.; Ex. 17.) The consequence for this Motion is direct: the audit-related

discovery served on CBT — Interrogatories Nos. 19 and 20 (auditor communications), Request for Production No. 14 and Requests for Admission Nos. 18–20 (audited financial statements), and the audit-inquiry and management-representation communications withheld without a log — is now the only avenue by which the audit record of CBT's treatment of the Wain accounts can be obtained within this proceeding. CBT's refusal of each of those items, and its retraction of its own promise to produce the financial statements, must be measured against that fact.

**F. The stipulation process.**

On August 21, 2026 at 2:11 p.m., Plaintiffs served their portion of the Joint Stipulation required by LBR 7026-1(c)(3), with CBT's insertions due within seven days, by August 28, 2026. (Ex. 12.) Within two hours, CBT's counsel responded that he would be out of the office August 24 through September 1, 2026 and would respond "when I have returned"; advised that the deadline is fixed by rule and that another attorney at his firm could respond, counsel replied, "I am not available as was set out in my email below." (Ex. 12.) A true and correct copy of the Joint Stipulation as served — setting out each of the ten disputed issues presented by this Motion, with CBT's contention sections left open for its insertions — is attached as Exhibit 14. Counsel's unavailability proved selective: on August 24, 2026 — the first day of the stated absence — counsel filed a motion to quash (Doc 76) and served the verified supplemental responses described above. (Ex. 13.)

**G. The stipulation deadline passed in silence.**

CBT served no insertions and no response of any kind to the Joint Stipulation by the August 28, 2026 deadline — or in the six days since, including the two business days following counsel's stated return on September 1. (Wain Decl. ¶ 10.) The pattern is complete: deadlines set by rule or by Plaintiffs' letters — August 5, August 14, August 19, and August 28 among them — and CBT met none. This Motion accordingly proceeds on the accompanying declaration of non-cooperation

under LBR 7026-1(c)(4), with Plaintiffs' portion of the Joint Stipulation, as served, attached as Exhibit 14.

**H. Timeliness.**

The discovery cutoff was August 31, 2026. Plaintiffs served their meet-and-confer letter on August 10, their final-deadline letter on August 14, and their portion of the Joint Stipulation on August 21 — each before the cutoff — and CBT's stipulation deadline fell on August 28, also before the cutoff. This Motion is filed on the first practicable date after that deadline passed and twenty-one days before the hearing already set on Plaintiffs' related Motion for Orders Compelling Depositions (Doc 47). The delay between the deadline and this filing is CBT's, not Plaintiffs'.

**III. ARGUMENT**

**A. The resisting party bears the burden, and boilerplate objections carry none of it.**

The party resisting discovery bears the burden of showing why discovery should not be allowed, and of clarifying, explaining, and supporting its objections. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); accord *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009) ("The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."). Boilerplate, generalized objections — overbreadth, burden, relevance recited without factual support — are improper. *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006). Discovery under Rule 26(b)(1) reaches any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case. Both requirements are satisfied on the face of these requests: they track the elements of CBT's own Proof of Claim and Plaintiffs' pleaded causes of action, in a proceeding whose central dispute is the validity and amount of that claim. A resisting party "must specifically detail the reasons why each request is irrelevant" and "may not rely on boilerplate, generalized, conclusory, or speculative arguments." *F.T.C. v. AMG Servs., Inc.*,

291 F.R.D. 544, 553 (D. Nev. 2013); accord *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009) (unexplained and unsupported boilerplate objections are improper). The movant's threshold burden is only to show relevance, *Alves v. Riverside County*, 339 F.R.D. 556, 559 (C.D. Cal. 2021); once that showing is made, the burden shifts to the resisting party. And an objection asserted in a discovery response but not defended in the Joint Stipulation is waived. *MarketLinx, Inc. v. Indus. Access, Inc.*, 2013 WL 12133884, at *2 (C.D. Cal. Jan. 2, 2013). CBT tendered no contentions in the Joint Stipulation at all. See also LBR 9013-1(h) (failure to timely oppose a motion may be deemed consent to granting it).

**B. CBT's Rule 33(d) references are improper: the option requires specificity, equal burden, and records that actually contain the answer.**

Rule 33(d) permits a business-records answer only where the answer "may be determined by" the records and the responding party specifies them "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). A general reference to a mass of documents does not comply; a response that fails to specify where in the records the answers can be found does not satisfy the rule. *Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir. 1983); *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 322–23 (C.D. Cal. 2004). In this district, voluminous records tendered under Rule 33(d) must be accompanied by indices designed to guide the searcher to the responsive documents. *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 277–78 (C.D. Cal. 1999). CBT's references fail every requirement. They point to 738 pages without page citations. The burden is not equal: CBT created the claim and knows where (if anywhere) its arithmetic lives. And most fundamentally, the referenced records cannot contain the answers: by CBT's own August 13 index, CB0001–CB0738 consists of statements and case documents from 2012–2019 (Ex. 9) — while the Proof of Claim was calculated "through December 19, 2024." A production that predates

the claim by five years cannot state its mathematical basis. Ms. Craven's testimony that CBT keeps a transaction ledger showing how payments and credits are applied (Ex. 15, 67:10–13) confirms that the actual source of the answer to Interrogatories Nos. 2, 7, and 10 exists — and is not in CB0001–0738. An evasive or incomplete answer "must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

CBT's deferral of the contention interrogatories (Nos. 5, 6, and 25) fails for a parallel reason: the rule does not say what CBT needs it to say. Rule 33(a)(2) provides that the court "may order" that a contention interrogatory need not be answered until designated discovery is complete. No such order exists, and CBT never sought one; it announced its own deferral. Contention interrogatories are a permissible and ordinary discovery tool, and a party must answer them. *U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 649 (C.D. Cal. 2007). The discovery cutoff has now passed. Twenty months after the claim was filed, on the central disputed issue in this proceeding — the effect of the March 7, 2024 Distribution Order on the Proof of Claim — CBT's sworn answer remains that it "is reviewing any impact of the Distribution Order on the Proof of Claim and will supplement if necessary." (Ex. 13, Response No. 5.) Eleven days earlier, its counsel had answered the same question in a letter: the Order reduced the amount owed by $66,884.60, and the claim as filed misstates the balance. (Ex. 9.) A party that can answer an interrogatory in correspondence can answer it under oath. And as to Interrogatory No. 6 — whether CBT contends a deficiency exists — the manager who ran the account has now testified under oath that no deficiency judgment was ever sought or discussed. (Ex. 16, 31:1–3; 33:14–24; 34:5–8.) There is nothing left to defer.

**C. Production must be compelled: responsive documents demonstrably exist and are withheld.**

CBT has produced no document in this adversary proceeding beyond re-transmitting its 2019 production — which its counsel has called "the complete responsive documents." (Ex. 11.) The

record now proves that description false in at least seven particulars: (1) the calculation of the claim — a document CBT's own declarant swore exists, citing "calculations attached as Exhibit C" to a declaration filed August 24, 2026 with no Exhibit C attached (Doc 76 at 12–13); (2) the records of the application of the $66,884.60 distribution and $4,185.00 in garnishments, which CBT's custodian swears occurred (Doc 76, Mullins Decl. ¶ 7) and which Ms. Craven testified are kept in a transaction ledger (Ex. 15, 67:10–13); (3) the Watch Loan Committee minutes, agendas, policies, and related records identified in Mr. Hall's sworn testimony — a monthly record of CBT's own deliberations on the Wain accounts, kept by Ms. Mullins, Ms. Craven, and Ms. Sharp (Ex. 16, 44:8–45:7, 47:1–8, 47:25–48:8); (4) CBT's credit-reporting and dispute-handling records concerning Plaintiffs — records whose existence is confirmed by CBT's own index (CB0332–0337, "documents evidencing compliance with Fair Credit Reporting Act" (Ex. 9)), by its supplemental response that "any furnishing or dispute handling was conducted in accordance with its then-existing procedures" (Ex. 13, Response No. 8), and by Ms. Craven's identification of the department and employee who keep them (Ex. 15, 109:13–23, 120:6–16, 122:3–10); (5) the communications between CBT's attorneys and the Master Commissioner concerning the motion for distribution, which Mr. Hall described but could not say whether CBT had searched for (Ex. 16, 50:2–51:10); (6) the insurance policies CBT concedes it must identify under Rule 26(a)(1)(A)(iv) (Ex. 13, Response No. 21); and (7) the audited financial statements that CBT's own Interrogatory Answer No. 18 promised to produce — before the sworn supplement retracted the promise. (Exs. 5, 13.) The Court should order production of each category, together with the Rule 34(b)(2)(B)–(C) statements — request by request — of what is withheld, on what ground, and whether production is complete. Since the 2015 amendments, a Rule 34 objection that does not state whether responsive materials are being withheld on its basis is deficient on its face. Fed. R. Civ. P. 34(b)(2)(C) & advisory committee’s note to 2015 amendment. Every one of CBT’s twenty-two responses shares that defect.

**D. The Requests for Admission require amended answers or deemed admission.**

On a motion under Rule 36(a)(6), the Court determines the sufficiency of answers to requests for admission and may order either that an amended answer be served or that the matter be deemed admitted. An answer must fairly respond to the substance of the matter; qualification is permitted only in good faith. Evasive answers — including denials "as phrased" that do not fairly meet the substance — do not comply, and a responding party may not avoid admission by professing inability where the means of knowledge are its own records. *Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1245–47 (9th Cir. 1981). CBT's answers fail these standards in every register.

Requests Nos. 10 and 11 ask whether a deficiency judgment was entered against Plaintiffs — a binary fact of public record. CBT's entire answer to each is that it "denies any implication regarding the existence, validity, or enforceability of any indebtedness asserted in this bankruptcy proceeding." (Ex. 7.) That is neither an admission nor a denial of the fact asked, and a denial that does not respond to the matter actually requested is improper and requires amended responses. *U.S. ex rel. Englund v. Los Angeles County*, 235 F.R.D. 675, 684–85 (E.D. Cal. 2006). The evasion is now exposed by CBT's own witness: Mr. Hall — the officer who would have sought a deficiency judgment had CBT wanted one — testified that none was sought, none was discussed, and no one ever advised that one was needed. (Ex. 16, 31:1–3; 33:14–24; 34:5–8.) CBT cannot decline to admit under Rule 36 what its own Special Assets manager has admitted under oath.

Requests Nos. 2, 14, and 15 — the amount of the agreed judgment, and whether the Proof of Claim was reduced by the $66,884.60 and $4,185.00 receipts — are answered "Denied as phrased," full stop, specifying nothing, although Rule 36(a)(4) requires the answer to "specify the part admitted and qualify or deny the rest." Request No. 3 denies that the $630,003 sale price exceeded the $358,412.72 judgment — a proposition of arithmetic — while volunteering that net proceeds after the Master Commissioner's costs and fees were $605,035.42, a figure that also

exceeds the judgment, by $246,622.70. (Ex. 7.) Request No. 4's denial that the sale "generated surplus proceeds" sits two answers above CBT's admission that it "received $66,884.60 from surplus proceeds following the foreclosure sale" (id., Nos. 4–5), and is contradicted by Mr. Hall's agreement that the Master Commissioner held "several hundred thousand dollars" over CBT's judgment after the sale. (Ex. 16, 69:6–15.) Request No. 9 draws an objection and a denial "as phrased" on whether the March 7, 2024 Distribution Order governs the distribution of the sale proceeds — while CBT's own Interrogatory Answer No. 4 refers Plaintiffs to that very Order "as the most complete and accurate statement of the distribution." (Ex. 5.) Request No. 12 is likewise denied "as phrased." And Requests Nos. 18 through 20, addressed to CBT's audited consolidated financial statements, are refused on the ground that they do "not concern 'Central Bank,' the party to this action" (Ex. 7) — the same statements CBT's Interrogatory Answer No. 18 promised to produce. Counsel's August 13 letter defends the No. 4/No. 5 contradiction as resting on "distinct terminology and legal concepts," and offers as to Nos. 10 and 11 only that CBT "will review the responses and determine whether clarification is appropriate." (Ex. 9.) No amended answers have ever been served.

The Court should determine the answers to Requests Nos. 2, 3, 4, 10, 11, 14, 15, 18, 19, and 20 — each pressed in Plaintiffs' August 10 letter and presented in the Joint Stipulation — to be insufficient and order amended answers, failing which the matters should be deemed admitted; once deemed admitted, a matter is "conclusively established" unless the Court permits withdrawal or amendment under Rule 36(b). *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007); *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995). Consistent with *Asea*, which contemplates that a court will ordinarily order an amended answer first and deem the matter admitted only if a compliant answer is not timely served, 669 F.2d at 1247, Plaintiffs ask for amended answers in the first instance and deemed admission only on default. (Requests Nos. 9 and 12, answered in the same defective form, complete the pattern.)

**E. The privilege log: produce it or waive.**

A party withholding materials on privilege grounds must expressly claim the privilege and describe the withheld materials. Fed. R. Civ. P. 26(b)(5)(A). The Ninth Circuit holds that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request are insufficient to assert a privilege, and that a boilerplate assertion unaccompanied by a timely privilege log may, under the court's holistic analysis, work a waiver of the privilege. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005). Courts applying that analysis have found waiver where, as here, no log was served before the close of discovery. *See, e.g., Loop AI Labs Inc. v. Gatti*, 2016 WL 2908415 (N.D. Cal. May 13, 2016). CBT has asserted privilege across its responses — attorney-client, work product, "joint defense," auditor communications, litigation holds — while refusing in writing to log anything: "there is no need to create a privilege log at all." (Ex. 9.) Three weeks later it was "evaluating whether a privilege log is warranted." (Id.)

Deposition testimony has made the log's necessity concrete in three respects. First, Ms. Craven testified that CBT's September 27, 2023 response to Plaintiffs' consumer complaint — a letter she signed — was written entirely by Nancy Presnell of Frost Brown Todd; she changed not one word. (Craven Tr. 79:14–80:11, 82:14–15 (Ex. 15).) Yet CBT's sworn supplemental answer to Interrogatory No. 12 states that "[t]he only other counsel engaged for the 'Wain Matters' was Fowler Bell PLLC" (Ex. 13, Response No. 12), and CBT refused Request for Production No. 11 — which asks for the Frost Brown Todd engagement documents by name — on a blanket claim of privilege, with no log. (Ex. 6.) A privilege objection that conceals an engagement the deponent freely described is precisely what Rule 26(b)(5)(A) exists to test. Second, Mr. Hall testified that no attorneys attended the Watch Loan Committee (Ex. 16, 49:3–8) — so no privilege can attach to its minutes, and the committee records CBT has neither produced nor logged are withheld on no cognizable ground at all. Third, the auditor communications refused under Interrogatories Nos. 19

and 20: disclosure of attorney-client communications to an outside auditor waives the privilege as to the matters disclosed, audit-inquiry responses and management-representation letters are ordinary-course business records, and — with Crowe's non-appearance at its subpoenaed deposition — CBT's own files are the only place in this proceeding those records can be obtained. (Wain Decl. ¶ 12.) The Court should order a complete log within seven days, or a verified statement that nothing responsive is withheld on privilege grounds, and should hold that continued refusal waives the objections. A compliant log identifies, for each item withheld, a description of the material, the author and his or her position, the date, every recipient and his or her position, the material's present location, and the specific privilege invoked and the grounds for it. *Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. 643, 650–51 (E.D. Cal. 2010).

**F. The relevance objections fail on CBT's own record.**

CBT refuses the credit-reporting discovery (Interrogatories Nos. 8 and 9; Requests Nos. 6 and 7) on the ground that no stand-alone credit-reporting claim is pleaded. The Complaint pleads unlawful collection activity, and CBT's furnishing and dispute-handling concerning the account during its collection efforts is discoverable under Rule 26(b)(1) whether or not a separate statutory claim is pleaded — particularly where CBT has admitted that it furnished information about Plaintiffs to consumer reporting agencies and received consumer disputes (Ex. 7, Nos. 16–17), where its own production index designates CB0332–0337 as "documents evidencing compliance with Fair Credit Reporting Act" (Ex. 9), and where its Compliance Officer has identified the department and custodian who hold the records (Ex. 15, 109:13–23, 120:6–16). A party cannot index documents as responsive to a subject while objecting that the subject is beyond the case. As to the subordination discovery (Interrogatory No. 15; Request No. 13), lien priority is at the center of Plaintiffs' claims concerning the distribution of the sale proceeds — CBT's own witness testified that CBT foreclosed and forced the sale knowing it was the second lienholder (Ex. 16, 66:10–13)

— and the objection that priority "is not relevant" is not tenable. Substantive responses should be ordered.

**G. Expenses are mandatory.**

If a motion to compel is granted — or if the requested discovery is provided only after the motion is filed — the Court "must" require the party whose conduct necessitated the motion, or its counsel, to pay the movant's reasonable expenses, unless the opposition was substantially justified. Fed. R. Civ. P. 37(a)(5)(A); LBR 7026-1(c)(4). Nothing here was substantially justified: the chronology objection (2019 documents for a 2024 claim) is arithmetic; the privilege-log refusal was categorical; the deficiency-judgment evasion has been contradicted by CBT's own manager under oath; and the stipulation process failed because counsel declared himself unavailable during a week in which he filed a motion and served a verified set of supplemental responses. Plaintiffs are pro per and claim their out-of-pocket expenses of this Motion, including the reporter and transcript costs incurred to obtain the certified testimony on which it relies.

**IV. RELIEF REQUESTED**

Plaintiffs respectfully request an order: (1) compelling CBT to serve further, complete, verified narrative answers to Interrogatories Nos. 1, 2, 5, 6, 7, 10, 11, and 25 within fourteen (14) days — without reliance on Rule 33(d) as to Nos. 1, 2, 6, 7, 10, and 11, and without deferral of the contention answers to Nos. 5, 6, and 25 — together with substantive answers to Interrogatories Nos. 8, 9, and 15; (2) compelling CBT to produce, within fourteen (14) days, all responsive documents post-dating its 2019 production, including the claim calculation, application-of-proceeds records and transaction ledger, Watch Loan Committee minutes, agendas, policies, and related records concerning Plaintiffs' accounts, credit-reporting and dispute records concerning Plaintiffs, communications with the Master Commissioner concerning distribution of the sale proceeds, the subordination-agreement documents sought by Request No. 13, the Rule 26(a)(1)(A)(iv) insurance

identification and policies, and the audited financial statements promised by Interrogatory Answer No. 18; (3) compelling service of the Rule 34(b)(2)(B)–(C) withholding and completeness statements, request by request; (4) determining CBT's answers to Requests for Admission Nos. 2, 3, 4, 10, 11, 14, 15, 18, 19, and 20 to be insufficient and ordering amended answers within fourteen (14) days, failing which the matters shall be deemed admitted; (5) compelling a complete privilege log within seven (7) days or a verified statement that nothing is withheld, with continued refusal deemed a waiver; (6) extending the August 31, 2026 discovery cutoff to the extent necessary for the limited purpose of completing the responses, log, and production ordered; and (7) awarding Plaintiffs their reasonable expenses under Rule 37(a)(5)(A) and LBR 7026-1(c)(4).

Dated: September 3, 2026

Respectfully submitted,



Douglas A. Wain
Plaintiff, Pro Per



Elisa Wain
Plaintiff, Pro Per

**DECLARATION OF DOUGLAS A. WAIN**

I, Douglas A. Wain, declare:

1. I am a Plaintiff in this adversary proceeding, appearing pro per with my wife, Elisa Wain. I have personal knowledge of the facts below and could testify competently to them. I make this declaration in support of the foregoing Motion and, as applicable, pursuant to Local Bankruptcy Rule 7026-1(c)(4).

2. On July 5–6, 2026, I served Plaintiffs' First Set of Interrogatories, First Set of Requests for Production, and First Set of Requests for Admission on Defendant's counsel by email, with proofs of service. True and correct copies of the cover letter and the three sets are attached as Exhibits 1, 2, 3, and 4.

3. On August 5, 2026, Defendant served its responses to all three sets. True and correct copies are attached as Exhibits 5, 6, and 7. No documents accompanied the responses, and the interrogatory answers were signed by counsel alone, without the verification required by Rule 33(b)(3) and (5).

4. On August 10, 2026, I sent Defendant's counsel a meet-and-confer letter itemizing the deficiencies. A true and correct copy is attached as Exhibit 8.

5. On August 13, 2026, I received the letter attached as Exhibit 9 from Mr. Ireland, which among other things states: "Due to a clerical error, the Proof of Claim filed in this case stated the amount as $357,990.91. CBT will amend its claim to correct the difference"; indexes CB0001–CB0738 as records from 2012–2019; and states "there is no need to create a privilege log at all." As of the date of this declaration, no amended Proof of Claim has been filed and no privilege log has been served.

6. On August 14, 2026, Mr. Ireland wrote that the requested documents "were provided to you in your Kentucky litigation," transmitted a link to "those same documents," and later that day described them as "the complete responsive documents." A true and correct copy of the chain is attached as Exhibit 11. The same day, I served the letter attached as Exhibit 10, setting a final compliance deadline of August 19, 2026. The deadline passed with no production, no verification, no amended admission responses, and no privilege log.

7. On August 21, 2026 at 2:11 p.m., I served Plaintiffs' portion of a Joint Stipulation under LBR 7026-1(c)(3), with Defendant's insertions due August 28, 2026. Mr. Ireland responded at 4:20

p.m. that he would be out of the office August 24 through September 1, 2026 and would respond upon his return; when I replied that the deadline is set by rule and another attorney at his firm could respond, he wrote: "I am not available as was set out in my email below." True and correct copies of the emails are attached as Exhibit 12, and a true and correct copy of the Joint Stipulation as served is attached as Exhibit 14.

8. On August 24, 2026, Mr. Ireland filed Defendant's Motion to Quash (Doc 76) and at 4:20 p.m. served, by an email stating in its entirety "Mr. Wain: Please see attached documents," two PDF attachments: that motion and Defendant's Supplemental Responses to the First Set of Interrogatories. True and correct copies of the supplemental responses and the transmitting email are attached as Exhibit 13. No other document accompanied the email, although Supplemental Response No. 1 refers to "the documents produced with these responses." The supplemental responses conclude with a verification of Becky Mullins, notarized in Fayette County, Kentucky the same day.

9. No supplemental responses to the Requests for Production or the Requests for Admission have been served. No privilege log has been served. No document post-dating the 2019 Kentucky production has been produced.

10. Defendant served no insertions and no response to the Joint Stipulation by the August 28, 2026 deadline. As of the date of this declaration — six days after the deadline and two business days after counsel's stated return date of September 1, 2026 — none has been received. I therefore submit this declaration pursuant to LBR 7026-1(c)(4).

11. On August 18, 2026, Plaintiffs deposed Donna Craven, Defendant's Senior Vice President and Compliance Officer. On August 21, 2026, Plaintiffs deposed Steven D. Hall, Defendant's former Vice President and Manager of Special Assets, who personally handled Plaintiffs' accounts until his retirement on April 30, 2024; Mr. Hall was represented at his deposition

by Defendant's Kentucky counsel, Timothy Wiseman, who on direct examination established Mr. Hall as the best source of knowledge concerning the Wain accounts. I attended and examined both witnesses. Ms. Craven testified that Becky Mullins, Defendant's Senior Vice President for Special Assets, handles the Wain matters for Defendant and is the source of Defendant's knowledge concerning them. Mr. Hall testified that a Watch Loan Committee of twelve to fifteen members, documented in Defendant's written policies, met monthly, discussed the Wain accounts every month, and kept minutes, and that no deficiency judgment against Plaintiffs was ever sought, discussed, or advised. Both depositions were reported by April L. Crites, RPR, RMR, CRR, CSR, CCR. I received the certified transcript of Ms. Craven's deposition on August 26, 2026; true and correct excerpts are attached as Exhibit 15. I received the certified 97-page transcript of Mr. Hall's deposition on September 2, 2026; true and correct designated excerpts, reproduced verbatim with the reporter's certificate, are attached as Exhibit 16.

12. On July 9, 2026, Plaintiffs issued a Rule 45 subpoena to Crowe LLP, Defendant's outside auditor, commanding production of documents by August 10, 2026 and its appearance for a Rule 30(b)(6) deposition on August 24, 2026; the subpoena was delivered to Crowe's Louisville, Kentucky office on July 15, 2026, with the witness fee. On August 10, 2026, Crowe served written objections through counsel but sought no relief from any court. The parties met and conferred on August 19, 2026 without resolution. On August 21, 2026, Crowe's counsel, Thomas Falkenberg, stated in writing: "We will not be producing the witness." Crowe filed no motion to quash or modify the subpoena, sought no protective order, and obtained no order excusing its appearance. On August 24, 2026, I appeared at the noticed time with the court reporter, Ms. Crites; no witness, designee, or counsel for Crowe LLP appeared. A true and correct copy of the Reporter's Transcript of Proceedings re Nonappearance of Crowe LLP, with the Certificate of Reporter and the seven

exhibits marked at the session (including the subpoena and proof of service, Crowe's objections, and the Falkenberg correspondence), is attached as Exhibit 17.

13. I make this declaration without waiver of any of Plaintiffs' rights, positions, or privileges.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 3, 2026, at Calabasas, California.

Respectfully submitted,

Douglas A. Wain
Plaintiff, Pro Per

**INDEX OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Plaintiffs' cover letter serving the First Sets of Written Discovery, July 6, 2026 |
| 2 | Plaintiffs' First Set of Interrogatories, with proof of service (served July 6, 2026) |
| 3 | Plaintiffs' First Set of Requests for Production of Documents, with proof of service (served July 6, 2026) |
| 4 | Plaintiffs' First Set of Requests for Admission, with proof of service (served July 6, 2026) |
| 5 | Defendant's Responses and Objections to Plaintiffs' First Set of Interrogatories, served August 5, 2026 (unverified) |
| 6 | Defendant's Responses and Objections to Plaintiffs' First Set of Requests for Production, served August 5, 2026 |
| 7 | Defendant's Responses and Objections to Plaintiffs' First Set of Requests for Admission, served August 5, 2026 |
| 8 | Plaintiffs' meet-and-confer letter of August 10, 2026 (LBR 7026-1(c)) |
| 9 | Letter, W. Ireland to Plaintiffs, August 13, 2026 (clerical-error admission; CB0001–CB0738 index of 2012–2019 records; "no need to create a privilege log at all") |
| 10 | Plaintiffs' letter of August 14, 2026 (final compliance deadline of August 19, 2026) |
| 11 | Email chain of August 14, 2026 (Ireland: documents "were provided to you in your Kentucky litigation"; "the complete responsive documents") |
| 12 | Joint Stipulation service email of August 21, 2026, 2:11 p.m., with counsel's out-of-office responses and Plaintiffs' replies |
| 13 | Defendant's Supplemental Responses and Objections to Plaintiffs' First Set of Interrogatories, served August 24, 2026, with verification and transmitting email (two PDF attachments only) |

| | |
|---|---|
| 14 | Joint Stipulation Regarding Written Discovery Disputes (LBR 7026-1(c)(3)), Plaintiffs' portion as served August 21, 2026 (no insertions or response received from CBT by the August 28, 2026 deadline or thereafter) |
| 15 | Certified excerpts, deposition of Donna Craven (August 18, 2026; certified transcript received August 26, 2026) |
| 16 | Plaintiffs' Designated Excerpts from the Certified Deposition Transcript of Steven Dennis Hall (August 21, 2026; certified 97-page transcript received September 2, 2026), with transcript cover page and reporter's certificate |
| 17 | Reporter's Transcript of Proceedings re Nonappearance of Crowe LLP, August 24, 2026 (Rule 30(b)(6) deposition; subpoena served July 15, 2026), with Certificate of Reporter and Exhibits 1–7 |
| 18 | MarketLinx, Inc. v. Industrial Access, Inc., 2013 WL 12133884 (C.D. Cal. Jan. 2, 2013) (unpublished opinion filed pursuant to LBR 9013-2(b)(4)) |
| 19 | Loop AI Labs Inc. v. Gatti, 2016 WL 2908415 (N.D. Cal. May 13, 2016) (unpublished opinion filed pursuant to LBR 9013-2(b)(4)) |

# EXHIBIT 1

Douglas Wain and Elisa Wain
Plaintiffs, Pro Per
P.O. Box 7473
Westlake Village, CA 91359
douglaswain@gmail.com

July 6, 2026

**VIA EMAIL AND U.S. MAIL**

William E. Ireland, Esq.
Haight Brown & Bonesteel LLP
555 South Flower Street, 45th Floor
Los Angeles, CA 90071
wireland@hbblaw.com

Re: Wain v. Central Bank & Trust Co., et al.
Adversary Proceeding No. 1:25-ap-01026-MB
United States Bankruptcy Court, Central District of California
Hon. Martin R. Barash
**Service of Plaintiffs' First Sets of Written Discovery; Deposition Scheduling**

Dear Mr. Ireland:

**Service of written discovery.** Consistent with Plaintiffs' June 5, 2026 letter, the parties' conference of counsel under Federal Rule of Civil Procedure 26(f), and the Court's March 5, 2026 scheduling order setting an August 31, 2026 discovery cutoff, Plaintiffs today serve on Defendant Central Bank & Trust Co. ("CBT") the following written discovery:

1. Plaintiffs' First Set of Interrogatories to Defendant Central Bank & Trust Co.;
2. Plaintiffs' First Set of Requests for Production of Documents to Defendant Central Bank & Trust Co.; and
3. Plaintiffs' First Set of Requests for Admission to Defendant Central Bank & Trust Co.

Service is made by electronic mail to your address of record, with courtesy copies by U.S. Mail, in accordance with Section 8 of the Proposed Joint Discovery Plan transmitted with Plaintiffs' June 5, 2026 letter. Responses are due within thirty (30) days of service pursuant to Federal Rules of Civil Procedure 33(b)(2), 34(b)(2)(A), and 36(a)(3), as incorporated by Federal Rules of Bankruptcy Procedure 7033, 7034, and 7036 — that is, on or before Wednesday, August 5, 2026. Please note that under Rule 36(a)(3), each matter set forth in the Requests for Admission will be deemed admitted unless a timely written answer or objection is served.

**Deposition scheduling.** Plaintiffs intend to conduct depositions after CBT serves its written responses to the discovery served herewith, so that the depositions may be informed by those responses and by the documents produced. Given the Court's August 31, 2026 discovery cutoff, however, the scheduling of those depositions must begin now. Plaintiffs anticipate noticing: (a) a deposition of CBT itself under Federal Rule of Civil Procedure 30(b)(6), directed to the subjects identified in Section 2 of the Proposed Joint Discovery Plan; and (b) depositions of individual witnesses drawn from those identified in Section 2(j) of that Plan, within the presumptive limits of Rule 30(a)(2)(A)(i) and Rule 30(d)(1). Plaintiffs propose that all depositions proceed by remote videoconference, which accommodates the geographic limits of Rule 45(c) for Kentucky-based witnesses and reduces cost and burden for all parties. Please provide, within fourteen (14) days of the date of this letter, proposed deposition dates during the period from August 6 through August 31, 2026 for the witnesses within CBT's control, and advise whether CBT objects to depositions proceeding by remote videoconference. Plaintiffs anticipate serving deposition notices no later than August 1, 2026, consistent with the internal milestones in Section 3(f) of the Proposed Joint Discovery Plan.

**Current CBT officers and employees.** Please confirm in writing whether CBT will produce its current officers, directors, managing agents, and employees for deposition upon service of a notice of deposition under Rule 30(b)(1), without the necessity of subpoenas under Rule 45 and Federal Rule of Bankruptcy Procedure 9016. Absent such confirmation, Plaintiffs will serve Rule 45 subpoenas on any current CBT personnel who are not officers, directors, or managing agents, and reserve all rights with respect to the resulting time and expense.

**Former CBT employees.** Plaintiffs intend to seek deposition testimony from certain former CBT employees, including without limitation Steve Hall (formerly Vice President, Special Assets) and Ellen Sharp (formerly Senior Vice President, Special Assets). Please advise, within fourteen (14) days of the date of this letter: (a) whether you, your firm, or other counsel engaged by CBT represent Mr. Hall or Ms. Sharp for purposes of this proceeding; and (b) if so, whether you will accept service of Rule 45 deposition subpoenas on their behalf. If neither you nor CBT's other counsel represents these individuals, please provide their last-known addresses and contact information so that Plaintiffs may effect personal service of Rule 45 subpoenas; this information is also called for by Plaintiffs' First Set of Interrogatories served herewith.

Plaintiffs remain committed to completing discovery efficiently and in good faith within the Court's schedule, and to using the meet-and-confer process to resolve any disputes before involving the Court. We look forward to your prompt response.

Very truly yours,

Douglas Wain
Plaintiff, Pro Per

Elisa Wain
Plaintiff, Pro Per

**Enclosures:** (1) Plaintiffs' First Set of Interrogatories; (2) Plaintiffs' First Set of Requests for Production of Documents; (3) Plaintiffs' First Set of Requests for Admission

# EXHIBIT 2

Douglas Wain
Elisa Wain
Plaintiffs, Pro Se
P.O. Box 7473
Westlake Village, CA 91359
Telephone: (859) 494-3677
Email: douglaswain@gmail.com

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>**DOUGLAS WAIN and ELISA WAIN,**<br><br>Debtors.<br>______________________________<br><br>**DOUGLAS WAIN and ELISA WAIN,**<br><br>Plaintiffs,<br><br>v.<br><br>**CENTRAL BANK & TRUST CO., et al.,**<br><br>Defendants. | Bankruptcy Case No. 1:24-bk-11814-MB<br><br>Chapter 13<br><br>Adversary Proceeding<br>No. 1:25-ap-01026-MB<br><br>Hon. Martin R. Barash<br><br>**PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT CENTRAL BANK & TRUST CO.** |

**PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT CENTRAL BANK & TRUST CO.**

**PROPOUNDING PARTIES:** Plaintiffs DOUGLAS WAIN and ELISA WAIN

**RESPONDING PARTY:** Defendant CENTRAL BANK & TRUST CO.

**SET NO.:** One (1)

Pursuant to Rules 33 and 26 of the Federal Rules of Civil Procedure, as incorporated by Rules 7033 and 7026 of the Federal Rules of Bankruptcy Procedure, Plaintiffs Douglas Wain and Elisa Wain (“Plaintiffs”) hereby propound the following interrogatories on Defendant Central Bank & Trust Co. (“CBT” or “Defendant”), to be answered separately and fully, in writing and under oath, within thirty (30) days after service.

**I. DEFINITIONS**

1. **"CBT," "Defendant," "you," or "your"** means Central Bank & Trust Co. and, where applicable, its parent Central Bancshares, Inc., and each of their present and former officers, directors, employees, agents, attorneys, and representatives acting on their behalf.
2. **"The Wain Account"** means the home equity line of credit, loan, or other indebtedness asserted by CBT against Plaintiffs and arising from or related to the property that was the subject of Fayette Circuit Court Case No. 19-CI-00812.
3. **"The Foreclosure Proceeding"** means the action styled Central Bank & Trust Co. v. Wain, et al., Fayette Circuit Court (Kentucky) Case No. 19-CI-00812, including the foreclosure sale, the Master Commissioner's accounting, and the March 7, 2024 Distribution Order.
4. **"The Proof of Claim"** means the proof of claim filed by CBT in Bankruptcy Case No. 1:24-bk-11814-MB in the asserted amount of $357,990.91, including all attachments and supporting materials.
5. **"The Wain Matters"** means, collectively, the Foreclosure Proceeding, this adversary proceeding, the Plaintiffs' bankruptcy case, the action styled Wain v. Central Bank & Trust Co. et al., Civil Action No. 5:23-cv-00139-REW-MAS (E.D. Ky.), and any other litigation or collection activity involving CBT and the Plaintiffs.
6. **"Document" and "communication"** have the broadest meaning permitted under Rule 34, and include electronically stored information ("ESI") in any form.
7. **"Identify," when used with respect to a person** means to state the person's full name, last known business and residential address, telephone number, and, where applicable, job title and dates of employment.
8. **"Identify," when used with respect to a document** means to state the type of document, its date, author, recipient(s), present custodian, and Bates number (if any), or in lieu thereof to produce the document.
9. **"Relating to" or "regarding"** means concerning, referring to, describing, evidencing, constituting, or in any way logically or factually connected with the matter discussed.
10. **"Relevant period"** means January 1, 2019 through the date of your response, unless otherwise specified.

## II. INSTRUCTIONS

1. Each interrogatory is to be answered separately, fully, and under oath. If you object to any part of an interrogatory, state the objection and answer the remaining portion.
2. If you cannot answer an interrogatory in full, answer to the extent possible, specify the reason for your inability to answer the remainder, and state whatever information or knowledge you have concerning the unanswered portion.

3. These interrogatories are continuing in nature. If, after responding, you obtain or become aware of further information responsive to any interrogatory, you must supplement your answers in accordance with Rule 26(e).
4. If you withhold any information on a claim of privilege or protection, identify the privilege or protection claimed and provide a privilege log in accordance with the parties' discovery plan and Rule 26(b)(5).
5. Where an interrogatory asks you to "identify" or "state the basis," you may, in lieu of a narrative answer, specify and produce business records under Rule 33(d) only where the burden of deriving the answer is substantially the same for Plaintiffs as for CBT.

## III. INTERROGATORIES

**INTERROGATORY NO. 1:**

State in complete detail the mathematical basis for the Proof of Claim in the amount of $357,990.91, including each component of principal, interest, fees, costs, and charges comprising that figure, the date and amount of each such component, and the method of calculation used to arrive at the total.

**INTERROGATORY NO. 2:**

Identify each and every credit, payment, offset, or recovery applied by CBT against the Wain Account from January 1, 2019 to the present, including without limitation the $66,884.60 received from surplus proceeds following the foreclosure sale and the $4,185 received from wage garnishments, stating for each the date received, the amount, the source, and the manner in which it was applied.

**INTERROGATORY NO. 3:**

Identify each person who prepared, reviewed, approved, or verified the Proof of Claim, and for each person state the role he or she played and the information he or she relied upon.

**INTERROGATORY NO. 4:**

State CBT's understanding of the disposition of the proceeds of the foreclosure sale of the subject property for $630,003 in the Foreclosure Proceeding, including the amount distributed to each lienholder and the amount, if any, of surplus proceeds generated by that sale.

**INTERROGATORY NO. 5:**

Describe in detail CBT's position as to the effect, if any, of the March 7, 2024 Distribution Order entered in the Foreclosure Proceeding upon the amount asserted in the Proof of Claim, and state all facts supporting that position.

**INTERROGATORY NO. 6:**

State whether CBT contends that a deficiency exists on the Wain Account following the foreclosure sale and, if so, state the amount of the asserted deficiency, the date as of which it was calculated, and each fact and document supporting the existence and amount of that deficiency.

**INTERROGATORY NO. 7:**

Describe how CBT applied the $66,884.60 received from surplus proceeds and the $4,185 received from wage garnishments against any indebtedness asserted against Plaintiffs, including the date of each application, the account or ledger to which each amount was posted, and the resulting balance after each application.

**INTERROGATORY NO. 8:**

Identify each instance in which CBT furnished, deleted, modified, or responded to a dispute concerning information about Plaintiffs to any consumer reporting agency, including Experian, Equifax, and TransUnion, from 2019 to the present, stating for each the date, the agency, the nature of the furnishing or response, and the person responsible.

**INTERROGATORY NO. 9:**

Describe CBT's policies and procedures, in effect at any time during the relevant period, governing the furnishing of consumer account information to consumer reporting agencies and the investigation of consumer disputes under the Fair Credit Reporting Act.

**INTERROGATORY NO. 10:**

Describe each charge-off, write-down, reserve, recovery, or other accounting entry made by CBT with respect to the Wain Account from 2019 to the present, stating for each the date, the amount, the general-ledger account affected, and the person who authorized the entry.

**INTERROGATORY NO. 11:**

Identify all collection activities undertaken by CBT or on its behalf against Plaintiffs from 2019 to the present, including the date, nature, and result of each activity, and the identity of each person or entity who conducted it.

**INTERROGATORY NO. 12:**

Identify each law firm and attorney engaged by CBT in connection with any of the Wain Matters, and for each state the matter involved, the date and scope of engagement, and whether any conflict-of-interest analysis was performed at the time of engagement.

**INTERROGATORY NO. 13:**

State whether CBT performed any conflict-of-interest analysis prior to or during its engagement of Stoll Keenon Ogden PLLC, Fowler Bell PLLC, Dentons Bingham Greenebaum LLP, Frost Brown Todd LLC, or Haight Brown & Bonesteel LLP in connection with any of the Wain Matters, and if so, describe the analysis performed and identify each person who performed it.

**INTERROGATORY NO. 14:**

Identify each CBT officer, employee, or agent responsible for retaining, supervising, or directing outside counsel or third-party agents in connection with collection or litigation activities against Plaintiffs, and describe the authority delegated to such counsel or agents.

**INTERROGATORY NO. 15:**

Identify and describe each subordination agreement affecting CBT's lien position with respect to the subject property, including the subordination agreement identified in Plaintiffs' February 26, 2026 Unilateral Status Report, stating the parties to each agreement, its date, and its effect on CBT's lien priority.

**INTERROGATORY NO. 16:**

Identify each present or former CBT officer, employee, agent, or director with knowledge of the Wain Account, the Proof of Claim, or any of the Wain Matters, and for each state the subject(s) on which that person has knowledge.

**INTERROGATORY NO. 17:**

State the role of Timothy R. Wiseman with respect to the Proof of Claim and his Evidentiary Declaration filed in this adversary proceeding on February 12, 2026, and identify the source of the information set forth in that declaration.

**INTERROGATORY NO. 18:**

State whether CBT's audited consolidated financial statements for fiscal years 2019 through 2025 disclosed, accounted for, or reserved against any loss contingency arising from the Wain Matters, and if so, describe the disclosure, accounting treatment, or reserve for each such year.

**INTERROGATORY NO. 19:**

For each fiscal year from 2019 through 2025, state the legal-fee component of the "Professional services" line item reported in CBT's audited consolidated statements of income, identify each law firm or vendor to which professional-services payments were made, and state the amount allocated to the Wain Matters.

**INTERROGATORY NO. 20:**

Describe all communications between CBT and Crowe LLP regarding the Wain Matters during fiscal years 2019 through 2025, including any audit-inquiry response, management representation letter, or assessment of loss contingencies relating to the Wain Matters, and identify each person who participated in those communications.

**INTERROGATORY NO. 21:**

Identify each insurance policy, including any directors-and-officers, errors-and-omissions, or banker's blanket bond policy, under which coverage has been or may be asserted in connection

with the claims in this proceeding, and for each state the insurer, policy number, policy limits, and whether any notice of claim or reservation of rights has been issued.

**INTERROGATORY NO. 22:**

State the basis for the reported increase in aggregate loans to related parties from $367,000 at year-end 2019 to $16,352,000 at year-end 2020, as disclosed in Notes 3 and 7 of CBT's annual reports, including any change in the definition of "related party" applied between those years.

**INTERROGATORY NO. 23:**

Describe the corporate governance structure of Central Bancshares, Inc. and Central Bank & Trust Co. during the relevant period, including the concurrent service of Luther Deaton, Jr. as Chairman, President, and Chief Executive Officer of both entities, and identify any audit, risk, compliance, or litigation-oversight committee with responsibility over the matters at issue.

**INTERROGATORY NO. 24:**

State whether CBT issued any litigation hold, document-preservation directive, or similar instruction in connection with Plaintiffs, the Foreclosure Proceeding, the Plaintiffs' bankruptcy case, or this adversary proceeding, and if so, state the date of issuance, the persons to whom it was directed, and its scope.

**INTERROGATORY NO. 25:**

Identify all facts and documents on which CBT relies in support of each affirmative defense it has asserted or intends to assert in response to Plaintiffs' thirteen causes of action in this adversary proceeding, including without limitation any defense based on the doctrines of res judicata, collateral estoppel, or the Rooker-Feldman doctrine.

Dated: July 6, 2026

Respectfully submitted,

Douglas Wain
Plaintiff, Pro Per

Elisa Wain
Plaintiff, Pro Per

**PROOF OF SERVICE**

I, the undersigned, declare that I am over the age of eighteen years and am a party to this adversary proceeding. My address is P.O. Box 7473, Westlake Village, CA 91359.

On July 6, 2026, I served the foregoing document entitled Plaintiffs' First Set of Interrogatories to Defendant Central Bank & Trust Co. on the interested party in this proceeding as follows:

William E. Ireland, Esq.
Haight Brown & Bonesteel LLP
555 South Flower Street, 45th Floor
Los Angeles, CA 90071
Email: wireland@hbblaw.com

[ X ] BY ELECTRONIC MAIL: Pursuant to the parties' agreement to accept service by electronic mail as set forth in the Proposed Joint Discovery Plan, I caused the document to be transmitted to the electronic mail address set forth above.

[ X ] BY U.S. MAIL: I placed a true and correct copy in a sealed envelope addressed as set forth above, with postage fully prepaid, in the United States mail at Westlake Village, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 6, 2026, at Calabasas, California.

Douglas Wain
Plaintiff, Pro Per

# EXHIBIT 3

Douglas Wain
Elisa Wain
Plaintiffs, Pro Se
P.O. Box 7473
Westlake Village, CA 91359
Telephone: (859) 494-3677
Email: douglaswain@gmail.com

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>**DOUGLAS WAIN and ELISA WAIN,**<br><br>Debtors.<br>______________________________<br><br>**DOUGLAS WAIN and ELISA WAIN,**<br><br>Plaintiffs,<br><br>v.<br><br>**CENTRAL BANK & TRUST CO., et al.,**<br><br>Defendants. | Bankruptcy Case No. 1:24-bk-11814-MB<br><br>Chapter 13<br><br>Adversary Proceeding<br>No. 1:25-ap-01026-MB<br><br>Hon. Martin R. Barash<br><br>**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CENTRAL BANK & TRUST CO.** |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CENTRAL BANK & TRUST CO.**

**PROPOUNDING PARTIES:** Plaintiffs DOUGLAS WAIN and ELISA WAIN

**RESPONDING PARTY:** Defendant CENTRAL BANK & TRUST CO.

**SET NO.:** One (1)

Pursuant to Rules 34 and 26 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 7026 of the Federal Rules of Bankruptcy Procedure, Plaintiffs Douglas Wain and Elisa Wain (“Plaintiffs”) request that Defendant Central Bank & Trust Co. (“CBT” or “Defendant”) produce for inspection and copying the documents and electronically stored information described below within thirty (30) days after service. Production shall be made in accordance with the form-of-production terms of the parties’ Proposed Joint Discovery Plan, that is, in native electronic format where reasonably practicable, or as text-searchable PDFs with associated metadata (custodian, date, file type, and Bates numbers).

## I. DEFINITIONS

1. **"CBT," "Defendant," "you," or "your"** means Central Bank & Trust Co. and, where applicable, its parent Central Bancshares, Inc., and each of their present and former officers, directors, employees, agents, attorneys, and representatives.
2. **"Document"** means any writing or recorded information of any kind within the broadest scope of Rule 34, including electronically stored information ("ESI"), drafts, metadata, and non-identical copies.
3. **"The Wain Account," "The Foreclosure Proceeding," "The Proof of Claim," and "The Wain Matters"** have the same meanings set forth in Plaintiffs' First Set of Interrogatories served concurrently herewith.
4. **"Relating to" or "regarding"** means concerning, referring to, describing, evidencing, constituting, or in any way logically or factually connected with the matter discussed.
5. **"Relevant period"** means January 1, 2019 through the date of production, unless otherwise specified.

## II. INSTRUCTIONS

1. Produce all responsive documents in your possession, custody, or control, including documents held by your agents, attorneys, or other representatives.
2. If any responsive document is withheld on a claim of privilege or protection, identify it on a privilege log in accordance with the parties' discovery plan and Rule 26(b)(5), stating the date, author, recipient(s), general subject matter, and privilege asserted.
3. If any responsive document once existed but has been lost, destroyed, or is otherwise no longer in your possession, identify the document, describe its contents, and state the circumstances and date of its loss or destruction.
4. These requests are continuing. You must supplement your production in accordance with Rule 26(e) if additional responsive documents are later located.
5. Documents shall be produced as they are kept in the ordinary course of business or organized and labeled to correspond to the categories in these requests, in accordance with Rule 34(b)(2)(E).

## III. REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All documents constituting, supporting, or relating to the Proof of Claim in the amount of $357,990.91, including all accounting records, internal workpapers, ledgers, payment histories, and calculations underlying that amount.

### REQUEST FOR PRODUCTION NO. 2:

All documents identifying each person who prepared, reviewed, or approved the Proof of Claim, and all communications relating to its preparation.

**REQUEST FOR PRODUCTION NO. 3:**

All documents relating to the Foreclosure Proceeding (Fayette Circuit Court Case No. 19-CI-00812), including the Master Commissioner's accounting, the report of sale, the order confirming the sale, and the March 7, 2024 Distribution Order.

**REQUEST FOR PRODUCTION NO. 4:**

All documents relating to the sale of the subject property for $630,003 and the distribution of the proceeds of that sale among lienholders, including any calculation of surplus or deficiency.

**REQUEST FOR PRODUCTION NO. 5:**

All documents relating to CBT's receipt of $66,884.60 from surplus proceeds and $4,185 from wage garnishments, and the application of those amounts against any indebtedness asserted against Plaintiffs.

**REQUEST FOR PRODUCTION NO. 6:**

All documents relating to CBT's furnishing of information about Plaintiffs to any consumer reporting agency, including Experian, Equifax, and TransUnion, and all dispute notices, automated consumer dispute verifications (ACDVs), and responses thereto from 2019 to the present.

**REQUEST FOR PRODUCTION NO. 7:**

All policies, procedures, and training materials in effect during the relevant period governing CBT's furnishing of consumer information to consumer reporting agencies and its handling of consumer disputes.

**REQUEST FOR PRODUCTION NO. 8:**

All documents from CBT's Special Assets unit relating to the Wain Account, including collection notes, account histories, charge-off and recovery records, and internal correspondence.

**REQUEST FOR PRODUCTION NO. 9:**

All board minutes, audit-committee minutes, and other committee minutes referring or relating to the Wain Account or any of the Wain Matters.

**REQUEST FOR PRODUCTION NO. 10:**

All documents reflecting any charge-off, write-down, reserve, recovery, or other accounting entry made by CBT with respect to the Wain Account.

**REQUEST FOR PRODUCTION NO. 11:**

All engagement letters, retention agreements, and conflict-of-interest waivers or analyses relating to CBT's engagement of Stoll Keenon Ogden PLLC, Fowler Bell PLLC, Dentons Bingham Greenebaum LLP, Frost Brown Todd LLC, and Haight Brown & Bonesteel LLP in connection with any of the Wain Matters.

**REQUEST FOR PRODUCTION NO. 12:**

All non-privileged communications between CBT and its outside counsel of record relating to the scope of engagement, conflict-of-interest analysis, and supervision of counsel in connection with the Wain Matters.

**REQUEST FOR PRODUCTION NO. 13:**

All documents relating to any subordination agreement affecting CBT's lien position with respect to the subject property, including the agreement identified in Plaintiffs' February 26, 2026 Unilateral Status Report.

**REQUEST FOR PRODUCTION NO. 14:**

CBT's audited consolidated financial statements, including all notes thereto, for fiscal years 2019 through 2025.

**REQUEST FOR PRODUCTION NO. 15:**

All documents relating to the composition of the "Professional services" line item in CBT's audited consolidated statements of income for fiscal years 2019 through 2025, including invoices, fee statements, and the matter-by-matter allocation of legal fees among the Wain Matters and other matters.

**REQUEST FOR PRODUCTION NO. 16:**

All communications between CBT and Crowe LLP relating to the Wain Matters during fiscal years 2019 through 2025, including management representation letters, attorney audit-inquiry responses, subsequent-events review materials, and assessments of loss contingencies.

**REQUEST FOR PRODUCTION NO. 17:**

All insurance policies, including directors-and-officers, errors-and-omissions, and banker's blanket bond policies, under which coverage has been or may be asserted in connection with the claims in this proceeding, together with all notices of claim and reservation-of-rights correspondence relating to Plaintiffs.

**REQUEST FOR PRODUCTION NO. 18:**

All documents relating to loans, lines of credit, and deposits between CBT and its directors, executive officers, and entities in which they hold beneficial ownership for fiscal years 2019 through 2025, including documents reflecting the basis for the increase in aggregate related-party loans from $367,000 at year-end 2019 to $16,352,000 at year-end 2020.

**REQUEST FOR PRODUCTION NO. 19:**

All documents relating to the corporate governance structure of Central Bancshares, Inc. and Central Bank & Trust Co. during the relevant period, including organizational charts, board and committee charters, and documents reflecting the concurrent service of Luther Deaton, Jr. as Chairman, President, and Chief Executive Officer of both entities.

**REQUEST FOR PRODUCTION NO. 20:**

All litigation holds, document-preservation directives, or similar instructions issued by CBT in connection with Plaintiffs, the Foreclosure Proceeding, the Plaintiffs' bankruptcy case, or this adversary proceeding.

**REQUEST FOR PRODUCTION NO. 21:**

All documents reviewed, relied upon, or referenced in connection with the Evidentiary Declaration of Timothy R. Wiseman filed in this adversary proceeding on February 12, 2026, and the sworn declaration submitted in support of the Proof of Claim filed December 20, 2024.

**REQUEST FOR PRODUCTION NO. 22:**

All documents on which CBT relies in support of any affirmative defense it has asserted or intends to assert in response to Plaintiffs' thirteen causes of action, including any defense based on res judicata, collateral estoppel, or the Rooker-Feldman doctrine.

Dated: July 6, 2026

Respectfully submitted,

Douglas Wain
Plaintiff, Pro Per

Elisa Wain
Elisa Wain
Plaintiff, Pro Per

**PROOF OF SERVICE**

I, the undersigned, declare that I am over the age of eighteen years and am a party to this adversary proceeding. My address is P.O. Box 7473, Westlake Village, CA 91359.

On July 6, 2026, I served the foregoing document entitled Plaintiffs' First Set of Requests for Production of Documents to Defendant Central Bank & Trust Co. on the interested party in this proceeding as follows:

William E. Ireland, Esq.
Haight Brown & Bonesteel LLP
555 South Flower Street, 45th Floor
Los Angeles, CA 90071
Email: wireland@hbblaw.com

[ X ] BY ELECTRONIC MAIL: Pursuant to the parties' agreement to accept service by electronic mail as set forth in the Proposed Joint Discovery Plan, I caused the document to be transmitted to the electronic mail address set forth above.

[ X ] BY U.S. MAIL: I placed a true and correct copy in a sealed envelope addressed as set forth above, with postage fully prepaid, in the United States mail at Westlake Village, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 6, 2026, at Calabasas, California.

Douglas Wain
Plaintiff, Pro Per

# EXHIBIT 4

Douglas Wain
Elisa Wain
Plaintiffs, Pro Se
P.O. Box 7473
Westlake Village, CA 91359
Telephone: (859) 494-3677
Email: douglaswain@gmail.com

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>**DOUGLAS WAIN and ELISA WAIN,**<br><br>Debtors.<br>__________________________________<br><br>**DOUGLAS WAIN and ELISA WAIN,**<br><br>Plaintiffs,<br><br>v.<br><br>**CENTRAL BANK & TRUST CO., et al.,**<br><br>Defendants. | Bankruptcy Case No. 1:24-bk-11814-MB<br><br>Chapter 13<br><br>Adversary Proceeding<br>No. 1:25-ap-01026-MB<br><br>Hon. Martin R. Barash<br><br>**PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT CENTRAL BANK & TRUST CO.** |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT CENTRAL BANK & TRUST CO.**

**PROPOUNDING PARTIES:** Plaintiffs DOUGLAS WAIN and ELISA WAIN

**RESPONDING PARTY:** Defendant CENTRAL BANK & TRUST CO.

**SET NO.:** One (1)

Pursuant to Rules 36 and 26 of the Federal Rules of Civil Procedure, as incorporated by Rules 7036 and 7026 of the Federal Rules of Bankruptcy Procedure, Plaintiffs Douglas Wain and Elisa Wain (“Plaintiffs”) request that Defendant Central Bank & Trust Co. (“CBT” or “Defendant”) admit the truth of the following matters within thirty (30) days after service. Each matter is deemed admitted unless, within that period, CBT serves a written answer or objection addressed to the matter, signed by CBT or its attorney, in accordance with Rule 36(a).

**I. DEFINITIONS AND INSTRUCTIONS**

The terms "CBT," "Defendant," "you," "your," "The Wain Account," "The Foreclosure Proceeding," "The Proof of Claim," and "The Wain Matters" have the same meanings set forth in Plaintiffs' First Set of Interrogatories served concurrently herewith.

1. If you fail to admit any matter, and Plaintiffs thereafter prove the truth of that matter, Plaintiffs may move for the reasonable expenses, including attorney's fees, incurred in making that proof, in accordance with Rule 37(c)(2).
2. If you cannot truthfully admit or deny a matter, you must specifically set forth in detail the reasons why, and you may assert lack of knowledge or information as a reason only if you state that you have made reasonable inquiry and that the information known or readily obtainable is insufficient to enable you to admit or deny.
3. A denial must fairly respond to the substance of the matter; when good faith requires that you qualify an answer or deny only a part of a matter, you must admit the part that is true and qualify or deny the rest.
4. These requests are continuing in nature, and you are under a duty to supplement or amend your responses in accordance with Rule 26(e).

## II. REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that the subject property that was the subject of the Foreclosure Proceeding sold at the foreclosure sale for $630,003.

**REQUEST FOR ADMISSION NO. 2:**

Admit that the agreed judgment entered in favor of CBT in the Foreclosure Proceeding was in the amount of $358,412.72.

**REQUEST FOR ADMISSION NO. 3:**

Admit that the foreclosure sale price of $630,003 exceeded the amount of CBT's judgment of $358,412.72.

**REQUEST FOR ADMISSION NO. 4:**

Admit that the Foreclosure Proceeding generated surplus proceeds following the satisfaction of the liens against the subject property.

**REQUEST FOR ADMISSION NO. 5:**

Admit that CBT received $66,884.60 from surplus proceeds following the foreclosure sale.

**REQUEST FOR ADMISSION NO. 6:**

Admit that CBT received $4,185 from wage garnishments in connection with the Wain Account.

**REQUEST FOR ADMISSION NO. 7:**

Admit that the total amount CBT received in connection with the Wain Account from surplus proceeds and wage garnishments was $71,069.60.

**REQUEST FOR ADMISSION NO. 8:**

Admit that the March 7, 2024 Distribution Order was entered in the Foreclosure Proceeding.

**REQUEST FOR ADMISSION NO. 9:**

Admit that the March 7, 2024 Distribution Order is the controlling document governing the distribution of the proceeds of the foreclosure sale.

**REQUEST FOR ADMISSION NO. 10:**

Admit that no deficiency judgment was entered against Plaintiffs in the Foreclosure Proceeding.

**REQUEST FOR ADMISSION NO. 11:**

Admit that CBT did not obtain a deficiency judgment against Plaintiffs in connection with the Wain Account.

**REQUEST FOR ADMISSION NO. 12:**

Admit that a surplus and a deficiency cannot mathematically coexist with respect to the same foreclosure sale.

**REQUEST FOR ADMISSION NO. 13:**

Admit that CBT filed the Proof of Claim in the asserted amount of $357,990.91 in Bankruptcy Case No. 1:24-bk-11814-MB.

**REQUEST FOR ADMISSION NO. 14:**

Admit that CBT did not reduce the amount of the Proof of Claim to reflect its receipt of $66,884.60 from surplus proceeds.

**REQUEST FOR ADMISSION NO. 15:**

Admit that CBT did not reduce the amount of the Proof of Claim to reflect its receipt of $4,185 from wage garnishments.

**REQUEST FOR ADMISSION NO. 16:**

Admit that CBT furnished information about Plaintiffs to one or more consumer reporting agencies between 2019 and the present.

**REQUEST FOR ADMISSION NO. 17:**

Admit that CBT received one or more consumer disputes from Plaintiffs or from a consumer reporting agency concerning the Wain Account.

**REQUEST FOR ADMISSION NO. 18:**

Admit that CBT's audited consolidated financial statements for fiscal years 2019 through 2025 are genuine business records of CBT.

**REQUEST FOR ADMISSION NO. 19:**

Admit that the "Professional services" line item in CBT's audited consolidated statements of income for fiscal years 2019 through 2025 includes legal fees paid to outside counsel.

**REQUEST FOR ADMISSION NO. 20:**

Admit that CBT's audited consolidated financial statements for fiscal years 2019 through 2025 did not separately disclose a loss contingency arising from the Wain Matters.

**REQUEST FOR ADMISSION NO. 21:**

Admit that CBT engaged Stoll Keenon Ogden PLLC to represent it in one or more of the Wain Matters.

**REQUEST FOR ADMISSION NO. 22:**

Admit that Timothy R. Wiseman is an attorney with Stoll Keenon Ogden PLLC.

**REQUEST FOR ADMISSION NO. 23:**

Admit that Timothy R. Wiseman signed each Joint Status Report filed on behalf of CBT in the action styled Wain v. Central Bank & Trust Co. et al., Civil Action No. 5:23-cv-00139-REW-MAS (E.D. Ky.).

**REQUEST FOR ADMISSION NO. 24:**

Admit that CBT engaged Haight Brown & Bonesteel LLP to represent it in this adversary proceeding.

**REQUEST FOR ADMISSION NO. 25:**

Admit that Luther Deaton, Jr. served as Chairman, President, and Chief Executive Officer of both Central Bank & Trust Co. and Central Bancshares, Inc. throughout the relevant period.

Dated: July 6, 2026
Respectfully submitted,

Douglas Wain
Plaintiff, Pro Per

Elisa Wain
Plaintiff, Pro Per

**PROOF OF SERVICE**

I, the undersigned, declare that I am over the age of eighteen years and am a party to this adversary proceeding. My address is P.O. Box 7473, Westlake Village, CA 91359.

On July 6, 2026, I served the foregoing document entitled Plaintiffs' First Set of Requests for Admission to Defendant Central Bank & Trust Co. on the interested party in this proceeding as follows:

William E. Ireland, Esq.
Haight Brown & Bonesteel LLP
555 South Flower Street, 45th Floor
Los Angeles, CA 90071
Email: wireland@hbblaw.com

[ X ] BY ELECTRONIC MAIL: Pursuant to the parties' agreement to accept service by electronic mail as set forth in the Proposed Joint Discovery Plan, I caused the document to be transmitted to the electronic mail address set forth above.

[ X ] BY U.S. MAIL: I placed a true and correct copy in a sealed envelope addressed as set forth above, with postage fully prepaid, in the United States mail at Westlake Village, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 6, 2026, at Calabasas, California.

Douglas Wain
Plaintiff, Pro Per

# EXHIBIT 5

William E. Ireland (Bar No. 115600)
*wireland@hbblaw.com*
HAIGHT BROWN & BONESTEEL LLP
555 South Flower Street, Forty-Fifth Floor
Los Angeles, California 90071
Telephone: 213.542.8000
Facsimile: 213.542.8100

Attorneys for Defendant
Central Bank & Trust Co.

Haight

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>Douglas Alan Wain, Elisa Wain,<br><br>Debtors<br>______________________________<br><br>DOUGLAS ALAN WAIN and ELISA WAIN<br><br>Plaintiffs<br>v.<br><br>CENTRAL BANK & TRUST CO.<br><br>Defendant | CASE NO. 1:24-bk-11814-MB<br><br>CHAPTER 13<br><br>JUDGE Martin R. Barash<br><br>Adv. Proc. No. 1:25-ap-01026-MB<br><br>**DEFENDANT CENTRAL BANK & TRUST, CO.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTEROGATORRIES** |

Defendant Central Bank & Trust Co. ("Central Bank" or "Defendant") hereby responds to Plaintiffs Douglas Wain and Elisa Wain's ("Plaintiffs") First Set of Interrogatories as follows. These responses are made solely for the purposes of this adversary proceeding, without waiving, and expressly reserving, all objections as to competency, relevance, materiality, privilege, and admissibility of the information provided

herein as evidence for any purpose in any further proceeding, including the trial of this or any other action.

## **GENERAL OBJECTIONS**

1. Central Bank objects to the Definitions and Instructions to the extent they purport to impose obligations broader than, or inconsistent with, the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure, including the definitions of "Central Bank," "you," or "your" to the extent they purport to include entities, persons, or agents outside Central Bank's possession, custody, or control.

2. Central Bank objects to the definition of "Relating to" or "regarding" as overbroad, vague, and unduly burdensome to the extent it is construed to mean "in any way logically or factually connected with the matter discussed," which imposes no meaningful limitation and would require Central Bank to speculate as to remote or attenuated connections.

3. Central Bank objects to the "relevant period" of January 1, 2019 to the present as overbroad and not proportional to the needs of the case as to certain requests herein, where narrower time periods tied to the actual dispute (2019 loan origination and 2024 foreclosure sale/distribution) are more appropriate; Central Bank's specific time-period objections are noted request-by-request below.

4. Central Bank objects to each request to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, the work-product doctrine, the joint-defense/common-interest privilege, or any other applicable privilege or protection. Any inadvertent disclosure of privileged or protected information shall not constitute a waiver of any privilege or protection, and Central Bank reserves the right to demand the return or destruction of any such information pursuant to Fed. R. Evid. 502 and the parties' discovery plan. Central Bank further objects to each request to the extent each seeks information regarding attorney retention, conflict analyses, litigation strategy, affirmative-defense development, auditor communications, litigation holds, or insurance communications protected from discovery

Haight

5. Central Bank objects to each request to the extent it seeks information neither relevant to any party's claim or defense in this adversary proceeding nor proportional to the needs of the case, considering the importance of the issues, the amount in controversy, the parties' relative access to the information, and the burden or expense of the proposed discovery, as required by Rule 26(b)(1).

6. Central Bank objects to each request to the extent it seeks confidential, proprietary, or commercially sensitive business information of Central Bank, or confidential personal or financial information of non-party officers, directors, or employees, without an appropriate protective order in place.

7. Central Bank objects to each request to the extent it seeks information equally available to Plaintiffs from public records, including the dockets and orders of the Fayette Circuit Court and this Court, on the ground that the burden of deriving such information is not substantially greater for Plaintiffs than for Central Bank.

8. Central Bank objects to each request to the extent it calls for legal conclusions or interpretations of court orders, statutes, or legal doctrines.

9. These General Objections are incorporated by reference into each specific response below, whether or not separately restated.

## RESPONSES

**INTERROGATORY NO. 1:**

*State in complete detail the mathematical basis for the Proof of Claim in the amount of $357,990.91, including each component of principal, interest, fees, costs, and charges comprising that figure, the date and amount of each such component, and the method of calculation used to arrive at the total.*

**RESPONSE:**

Subject to and without waiving the General Objections, Central Bank objects that this Interrogatory, properly read, contains multiple discrete subparts (principal, interest, fees, costs, and charges, each with date, amount, and method of calculation) that should be counted separately for purposes of the twenty-five-interrogatory limit of Rule 33(a)(1).

Haight

Subject to that objection, and pursuant to Rule 33(d), Central Bank refers Plaintiffs to the documents attached to its Proof of Claim and the documents previously produced to the Plaintiffs marked as CB-WAIN 0001 to 0738.

**INTERROGATORY NO. 2:**

*Identify each and every credit, payment, offset, or recovery applied by CBT against the Wain Account from January 1, 2019 to the present, including without limitation the $66,884.60 received from surplus proceeds following the foreclosure sale and the $4,185 received from wage garnishments, stating for each the date received, the amount, the source, and the manner in which it was applied.*

**RESPONSE:**

Subject to and without waiving the General Objections, Central Bank objects that this Interrogatory contains discrete subparts as to each credit, payment, offset, or recovery. Subject to that objection, and pursuant to Rule 33(d), Central Bank refers Plaintiffs to the documents attached to its Proof of Claim and the documents previously produced to the Plaintiffs marked as CB-WAIN 0001 to 0738.

**INTERROGATORY NO. 3:**

*Identify each person who prepared, reviewed, approved, or verified the Proof of Claim, and for each person state the role he or she played and the information he or she relied upon.*

**RESPONSE:**

Subject to and without waiving the General Objections, Central Bank objects to the phrase "the information he or she relied upon" to the extent it calls for disclosure of attorney-client privileged communications or attorney work product concerning the preparation of the Proof of Claim, and Central Bank withholds any such information on that basis. Subject to and without waiving these objections, Central Bank's Becky Mullins and Central Bank's counsel worked on the Proof of Claim.

**INTERROGATORY NO. 4:**

*State CBT's understanding of the disposition of the proceeds of the foreclosure sale of the subject property for $630,003 in the Foreclosure Proceeding, including the amount*

*distributed to each lienholder and the amount, if any, of surplus proceeds generated by that sale.*

**RESPONSE:**

Subject to and without waiving the General Objections, Central Bank states that the disposition of the sale proceeds is set forth in the March 7, 2024 Distribution Order entered in the Foreclosure Proceeding, a public record of the Fayette Circuit Court equally available to Plaintiffs, and Central Bank refers Plaintiffs to that Order as the most complete and accurate statement of the distribution.

**INTERROGATORY NO. 5:**

*Describe in detail CBT's position as to the effect, if any, of the March 7, 2024 Distribution Order entered in the Foreclosure Proceeding upon the amount asserted in the Proof of Claim, and state all facts supporting that position.*

**RESPONSE:**

Subject to and without waiving the General Objections, Central Bank objects that this is a contention interrogatory calling for legal analysis and application of law to fact in advance of the completion of fact discovery, and that Central Bank is not obligated under Rule 33(a)(2) to provide a full and final narrative response until discovery is substantially complete. Subject to and without waiving these objections, Central Bank is reviewing any impact of the Distribution Order on the Proof of Claim and will supplement if necessary.

**INTERROGATORY NO. 6:**

*State whether CBT contends that a deficiency exists on the Wain Account following the foreclosure sale and, if so, state the amount of the asserted deficiency, the date as of which it was calculated, and each fact and document supporting the existence and amount of that deficiency.*

**RESPONSE:**

Subject to and without waiving the General Objections, Central Bank objects that this is a contention interrogatory as to which Central Bank is not obligated to provide a final response



Haight

until discovery is substantially complete under Rule 33(a)(2). Subject to and without waiving these objections, Central Bank denies any implication regarding the existence, validity, or enforceability of any indebtedness asserted in the bankruptcy proceeding. By way of further response, Central Bank refers Plaintiffs to the documents attached to its Proof of Claim and the documents previously produced to the Plaintiffs marked as CB-WAIN 0001 to 0738.

**INTERROGATORY NO. 7:**

*Describe how CBT applied the $66,884.60 received from surplus proceeds and the $4,185 received from wage garnishments against any indebtedness asserted against Plaintiffs, including the date of each application, the account or ledger to which each amount was posted, and the resulting balance after each application.*

**RESPONSE:**

Subject to and without waiving the General Objections, Central Bank objects that this Interrogatory contains discrete subparts. Subject to that objection, pursuant to Rule 33(d), Central Bank refers Plaintiffs to the documents attached to its Proof of Claim and the documents previously produced to the Plaintiffs marked as CB-WAIN 0001 to 0738.

**INTERROGATORY NO. 8:**

*Identify each instance in which CBT furnished, deleted, modified, or responded to a dispute concerning information about Plaintiffs to any consumer reporting agency, including Experian, Equifax, and TransUnion, from 2019 to the present, stating for each the date, the agency, the nature of the furnishing or response, and the person responsible.*

**RESPONSE:**

Subject to and without waiving the General Objections, Central Bank objects that this Interrogatory is not relevant to any claim or defense in this adversary proceeding to the extent Plaintiffs' operative complaint does not plead a claim under the Fair Credit Reporting Act or any analogous credit-reporting theory, and is overbroad in scope and time. Central Bank further states that any furnishing or dispute handling was conducted in accordance with its then-existing procedures and applicable law.

Haight