What records does Central Bank have about those proceeds between 2021 and 2024?

A I don't know.

Q And would we -- who would know that, please?

A I'm assuming Becky Mullins.

Q On March 7, 2024, the Court entered a distribution order. What did Central Bank receive?

MR. WISEMAN: Objection. This, again, is her personal knowledge; she's not the bank.

MR. WAIN: If she doesn't know, she can say she doesn't know.

THE WITNESS: I don't know.

BY MRS. WAIN:

Q Where would that be recorded?

A Ask the -- ask the first question again, please.

Q Where would the information about a distribution that Central Bank received be -- a distribution order, where would that information be recorded?

A I don't know.

MR. WAIN: Who would know?

THE WITNESS: I'm sorry?

BY MRS. WAIN:
Q Who would know?
A I'm assuming Becky Mullins.
Q Central Bank has said the amount owed was reduced by $66,884.60 from that distribution.
Who calculated that application?
A I don't know.
Q Would you know how -- who would know?
A I'm assuming Becky Mullins.
Q Would you walk me through how that amount was applied: Principal, interest, fees, et cetera?
A I don't know.
Q And who would know?
A I'm assuming Becky Mullins.
Q Central Bank also received wage garnishment payments, about $4,185.
Where was that information recorded, those garnishments?
A I don't know.
Q And who would know?
A I'm assuming Becky Mullins.
Q So as of April 8, 2024, Central Bank said the Wains owed $357,944.91. Who calculated this figure?

A I don't know.
Q And who would know?
A I'm assuming Becky Mullins.
Q Would you know what documents she would use, or -- to calculate this?
A I do not.
Q Would there be a -- where would a calculation record exist?
A I don't know.
Q Who would know?
A I'm assuming Becky Mullins.
Q Do you know what is the balance Central Bank claims today?
A No.
Q Who would calculate such a balance?
A I'm assuming Becky Mullins.
Q How long would it take to produce that calculation?
A I don't know.
Q Who would know?
A I'm assuming Becky Mullins.
Q Have you seen Central Bank's proof of claim in the Wain bankruptcy?
A No.
Q You have not.

(Plaintiffs' Exhibit 1, Plaintiffs' Notice of Deposition of Donna Craven, was marked and presented for purposes of identification.)

MR. WISEMAN: Okay.

MR. WAIN: I just want to make sure that Ms. Craven has seen it. Is she familiar with it?

THE WITNESS: I haven't seen it. I -- this is the first time I have seen it.

BY MR. WAIN:

Q Okay. So this is the first time you've seen it?

A Yes.

Q Okay.

(Plaintiffs' Exhibit 2, September 27, 2023, letter to Douglas Wain, from Donna Craven, Senior Vice President and Compliance Officer, was marked and presented for purposes of identification.)

BY MR. WAIN:

Q This Exhibit 2, which is the letter you wrote on September 27, 2023, those are going to be my next questions.

Did you write this letter?

A No.

Q Is that your signature?

A Yes.
Q Who wrote the letter?
A Legal counsel.
Q Which legal counsel?
A Legal counsel that assists me with regulatory items.
Q And whom may they be?
A Frost Brown Todd.
Q Frost Brown Todd.
Who at Frost Brown Todd wrote this letter?
A Nancy Presnell.
Q Did -- some members of the board of Central Bank that are from Frost Brown Todd; is that correct?
A I'm sorry. Ask that question again, please.
Q The board members of Central Bank -- I think you named six -- did any of them used to work or currently work at Frost Brown Todd?
Don't look at --
A Yes.
Q Do you know which ones?
A Bart Rogers.
Q Did you discuss any of the Wain matters with him, Mr. Rogers?

A No.

Q Was Frost Brown Todd the other attorney who helped you prep for this deposition?

A I don't believe so. I don't remember the firm name. But, no, I don't believe so.

Q Was it William Ireland?

A I don't know.

MR. WISEMAN: We don't have to hide the ball on this, Mr. Wain. It was. We can -- we can represent that she spoke to Mr. Ireland and myself to prepare for this. We don't have to go round and round. I'm happy to make that clear.

MR. WAIN: Well, that's not what she said.

MR. WISEMAN: She said she couldn't remember his name. I'm just -- I'm representing that to you.

MR. WAIN: All right. So I'm going to have to ask her.

BY MR. WAIN:

Q Was William Ireland the other person that helped prepare you for this deposition?

A If Mr. Wiseman says so, yes.

Q What do you say?

A Yes.

Q Yes?

A (No response.)
Q If you did not write the letter, why did you sign it?
A I signed it in my capacity as compliance officer.
Q Who else knew that you were signing a document that was not your words?
MR. WISEMAN: Objection. Misstates her testimony. "Not her words" seems strong.
BY MR. WAIN:
Q The text was from Frost Brown & Todd, I believe you said, correct?
A Yes.
Q Did you change any of the words?
A No.
Q Who else was aware that Frost Brown Todd created these words for you to sign?
A Are you looking for individuals' --
Q Yes.
A -- names?
Q Correct. An individual name and their titles, if you know.
MR. WISEMAN: I'll object as to when did these people know.
This is a letter dated September 27, 2023.

Q Does Central Bank have credit-reporting records?

A I'm sorry. I -- it -- it cut out there for a minute.

Q Does Central Bank have credit-reporting records? Reports to credit agencies.

MR. WISEMAN: I think he's saying credit-reporting records. Bay maybe you would repeat that one more time, Mr. Wain. I think it's -- sorry. She's just having a hard time hearing you there.

BY MR. WAIN:

Q Does Central Bank & Trust keep records of any and all of their credit reporting?

A Oh, I understand now. Thank you.

Central Bank maintains the required reporting records.

BY MR. WAIN:

Q Who maintains those records?

A Loan services department.

Q And who is in charge of loan services department?

A Tim Austin.

Q To the best of your knowledge, does any outside -- I mean, does any entity outside of

Q Okay. Let me take it piece by piece.
Within the last five years, has Central Bank made any donation to anybody running in an election?
A I don't know.
Q Who would know?
A Who would --
MR. WISEMAN: Objection. She's here in her personal capacity.
BY MR. WAIN:
Q You may answer the question.
A Luther Deaton Jr.
Q Are you aware of any campaign donations to any person running for office or who has run for office or might run for office made by Luther Deaton on behalf of Central Bank?
MR. WISEMAN: Objection. Form.
THE WITNESS: I don't know who might run for office.
BY MR. WAIN:
Q Hmm?
A I don't know who might run for office. The question was too broad.
Q You said Luther Deaton would know if there was any campaign donations on behalf of Central

Bank or someone on behalf of Central Bank; is that correct?

A Any -- to clarify, the question is about any political campaign contributions? Is that the question?

Q Let's start --

A Or is it a different question?

Q Let's start with political campaigns. Yes. Political campaigns.

A Okay. Please ask the full question again.

Q I'm sorry, this is somewhat reminiscent of the word "audit." I can only explain it so many time -- so many ways.

Luther Deaton Jr. would know if there was any donations to any political campaign, individual or group, on behalf of Central Bank or someone on behalf of -- or on behalf of Central Bank?

A I would assume so.

Q Do you know of any specific ones he donated to?

A No.

Q Is it someone other than Luther Deaton Jr. that would make the donation to a political campaign?

A I don't know.
Q Okay. And the person who would know would be Luther Deaton Jr.; is that --
MR. WISEMAN: I also object that this is publicly available information more readily accessible by you, Mr. Wain, that we don't have to spend time on this.
MR. WAIN: Thank you.
BY MR. WAIN:
Q But Luther Deaton Jr. would know if there are any contributions on behalf of Central Bank to any political campaign?
A I would assume so.
MRS. WAIN: Okay.
MRS. WAIN: Okay. I'm going to give Douglas a break.
FURTHER RECROSS-EXAMINATION
BY MRS. WAIN:
Q In 20 -- in 2023, the account -- our -- the Wain account -- was reported to Experian as charged off.
What does charged off mean at Central Bank?
A I don't deal with that on a day-to-day basis.

Q Well, what would it mean in your -- your estimation? What does charged off mean in your department?

A I work on the consumer regulatory compliance side and not on a safety and soundness side.

Q Who would know that definition?

A Becky Mullins.

Q So who made the decision to report the account as charged off? Would that also be Becky Mullins?

A Ask the question again, please.

Q Who would make that decision as a -- as an account being charged off?

A I assume Becky Mullins.

Q And are decisions like those documented?

A Yes.

Q Where? What department?

A I'm assuming special assets.

Q Thank you.

If the account was charged off in 2023, how does Central Bank reconcile that with claiming $357,944.91 in the bankruptcy?

MR. WISEMAN: Objection. Calls for a legal conclusion.

MR. WAIN: Objection noted.
Please answer.
THE WITNESS: I don't work on the safety and soundness or the bankruptcy. I do not know.
BY MRS. WAIN:
Q What records does Central Bank keep of what it reports to credit bureaus each month?
A Central Bank maintains the required reporting documents.
Q And what are those?
A I do not deal with that on a daily basis and cannot answer.
Q Where are they kept?
A At Central Bank.
Q Which departments?
A Loan services.
Q Were they collected for this case?
MR. WISEMAN: Objection. Privileged information and calls for a legal conclusion. She's -- it's beyond her scope.
MRS. WAIN: Okay.
BY MRS. WAIN:
Q Does Central Bank have records showing how the proof of claim amount was calculated?
A I don't have personal knowledge of that

information.
Q Who would keep those? Who would have that knowledge?
A I'm assuming Becky Mullins.
Q Does Central Bank have records of the application of the sale proceeds?
A I --
MR. WISEMAN: Again, objection. Form.
We're not sure what sale proceeds we're talking about. But she can answer if she --
BY MRS. WAIN:
Q Proceeds of 2711 Barbados Lane.
MR. WISEMAN: Okay.
A I'm sorry. Ask the question again, please.
Q Yeah. Does Central Bank have records of the application of the sale proceeds of the auction?
A I would assume so. I do not have personal knowledge.
Q Who would have that knowledge?
A I'm assuming Becky Mullins.
Q And of each garnishment?
A I don't have personal knowledge.
Q Who would, please?

A I thought I answered that earlier: I'm assuming Becky Mullins.

Q Does Central Bank have its credit-reporting records for the -- for this account, the Wain account?

A Central Bank maintains the required regulatory records.

Q And in what department, please, would that be?

A Loan services.

Q Does Central Bank have the records concerning the master commissioner proceeds from 2021 through 2024?

MR. WISEMAN: Yeah, objection. Asked and answered.

We covered this earlier today and, again, we -- she's not here as a designated --

(Overlapping speakers.)

MR. WAIN: There hasn't been a question about the master commissioner.

MR. WISEMAN: We talked about the master commissioner and the application of proceeds earlier, but we can ask these questions again.

MR. WAIN: But she has not been questioned about the master commissioner.

MR. WISEMAN: I have a different recollection. But we -- you can ask these questions about records again. But Ms. Craven is not here as a record custodian to testify about records. She's here about her personal knowledge. So if you want to spend your time this way, you can --

MR. WAIN: Thank you.

MR. WISEMAN: -- but --

MR. WAIN: Go ahead, Elisa.

MRS. WAIN: Okay.

MR. WAIN: Same question.

MRS. WAIN: Yeah.

BY MRS. WAIN:

Q So, again, does Central Bank have records concerning the master commissioner's proceeds from 2021 through 2024?

A I do not deal directly with that. I do not know.

Q And who would know that?

A I'm assuming Becky Mullins.

Q Have you ever been asked to gather any of these records for this lawsuit?

A No.

Q Is there any category of records about the

Wain accounts that has been, to your knowledge, destroyed, deleted, or lost?
A No.
MRS. WAIN: Mm-hmm.

FURTHER RECROSS-EXAMINATION

BY MR. WAIN:
Q To the best of your knowledge, has anyone at Central Bank discussed plaintiffs' subpoena to Crowe attorneys -- I mean, accounts?
A I'm sorry. Ask that question again, please.
Q To the best of your knowledge, has anybody at Central Bank discussed the plaintiffs' subpoena to Crowe, accountants, with Crowe?
Has anyone discussed the subpoena we gave to Crowe with Crowe?
Has anybody discussed it with Crowe?
A I don't know.
Q Who would know?
A I don't know.
Q Do you review financial statements that Crowe provides to Central Bank?
A No.
Q Who reviews financial statements that are created by pro -- or Crowe?

A Financial -- financial planning personnel.
Q Who is the financial planning personnel?
A Edward Barnes and Mark Hampton.
Q Thank you.
And just to be clear, the only person who signed a sworn statement about this claim is -- the proof of claim in this case in California was Tim Wiseman, who says he didn't calculate it.
Is there anybody at Central Bank who has sworn to these figures?
MR. WISEMAN: Objection. Assumes facts not before her.
But go on.
THE WITNESS: So ask the question again, please.
BY MR. WAIN:
Q Has anybody at Central Bank sworn to the figures in the proof of claim that Central Bank has filed in this case that we're in in California?
A I don't know.
Q Who would know?
A I'm assuming Becky Mullins.
MR. WAIN: First, this is important, I reserve the right to reopen this deposition if

Central Bank?
A That question is too broad. I don't -- I know my position, and I don't know Mr. Deaton's positions.
Q Well, you've seen activities by Luther Deaton Jr. with Central Bank, correct?
A I have seen my interactions with Mr. Deaton, yes.
Q Would you say he is very active in the operations of Central Bank & Trust on a daily basis?
MR. WISEMAN: Objection. Form.
THE WITNESS: Operations is overly broad, and I can only comment on my interactions with Mr. Deaton.
BY MR. WAIN:
Q Okay. Let's start there.
How much interaction do you have with Luther Deaton Jr. over the last five years?
A As-needed basis.
Q How often is that? Can you quantify it, please?
A I cannot quantify it, because it is an as-needed basis.
Q Okay. Let me try to narrow it down.

What -- is once-a-year a fair assessment with your interaction with Luther Deaton Jr.?

A That is a minimum.

Q Would a maximum be ten times a year with Luther Deaton Jr., your interaction with him?

MR. WISEMAN: Objection. Define "interaction."

MR. WAIN: On a professional basis.

MR. WISEMAN: I mean, vague. This is an e-mail? Like, an hour conversation?

MR. WAIN: Well, she said she --

MR. WISEMAN: Is this a walk-by in the hall? It's one big building where everybody works.

MR. WAIN: She said that she has interactions with Luther Deaton Jr.

MR. WISEMAN: We're having an interaction right now. What -- what are -- how are you defining "interaction"?

MR. WAIN: Well, let me ask her to define it.

BY MR. WAIN:

Q What is your interactions with Luther Deaton Jr.? How would you describe them?

A Professional.

Q Professional.
Would you have a professional interaction with him more than ten times a year?
A Possibly.
Q Is it possible you would have professional interactions more than 20 times a year?
A Possible.
Q Is it possible that you would have interactions on a professional basis with Luther Deaton Jr. more than 30 times in a year?
A Sir, it is possible based on the needed circumstances. I cannot quantify the number.
Q Well, you said it was more than 20. Is it more than 30?
A Sir, it depends on the required interactions.
Q In the last 12 months.
A It has not been more than 30 times in the past six months.
Q Twelve months?
A I do not count individually. I do not know.
Q Is it possible that you've had professional interactions with Luther Deaton Jr. 30 times within the last 12 months?

A It's possible.
Q Is it possible that the number might be 40?
A Sir, I do not know.
Q I'm just asking if it's possible.
A And, sir, I'm saying I do not know.
Q You don't know if it's possible?
A It's possible. I don't know if it happened.
Q Do you know if it's possible you've met -- interacted with him professionally, Luther Deaton Jr., 50 times within the last 12 months?
A It is not possible.
Q It is not possible. Okay.
So 40 is possible, 50 is not possible. I understand.
In these 40 interactions, which, I guess, would be in any of his positions, not just as a board member, was the subject of the Wains ever discussed with him?
A No, sir.
Q Thank you.
MR. WAIN: Excuse me while I review my notes, please.
BY MR. WAIN:

Q So who would you say at Central Bank knows more than you about the Wains' accounts with Central Bank, litigation there?
Who knows more than you do?
A I'm assuming Becky Mullins.
Q Okay. Anybody else who knows more than you do?
A I don't know.
Q But it's possible?
A Yes.
Q Okay. Certainly, the people -- the person you discussed the letter with, they know about the Wain accounts, the September 23, 2023, letter, they know about the Wain accounts.
So, again -- so Becky Mullins knows more about the Wains' interaction with CBT more than you would?
You don't know if anybody else knows more than you. So you would be the second source of information on CBT's relationship with the Wains? You would be number two?
A No, sir, I did not say that.
Q I didn't say you did. I'm asking you a question.
Would you be number two in the --

Again, this is Tim Wiseman of Stoll Keenon Ogden.

DIRECT EXAMINATION

BY MR. WISEMAN:

Q Ms. Craven, your role is in the compliance department, correct?

A Yes.

Q You're not involved with the collection of special assets or foreclosures at all, correct?

A Correct.

Q So it's not surprising that you know almost nothing about Mr. and Mrs. Wain and their distressed loan, correct?

A Correct.

Q And you wouldn't talk about them at all for the last four years since you've been in this role, correct?

A Correct.

Q And you don't handle proofs of claims or anything involving bankruptcy matters at the bank, correct?

A Correct.

Q So when you're asked about calculations of proofs of claims, you don't have information about that, correct?

A Correct.
MR. WISEMAN: That's all the questions I have at this time.
MR. WAIN: I do have one follow-up.

FURTHER RECROSS-EXAMINATION

BY MR. WAIN:
Q You just said you have no information or no contact or interaction regarding the Wains in the last four years?
MR. WISEMAN: Me? Oh, she can clarify that.
I think -- I think I might have been talking about litigation matters.
MR. WAIN: Anything. It wasn't clear. That's why I'm asking her.
BY MR. WAIN:
Q Have you had any -- well, obviously, it's '23 -- that obviously can't be right.
So I just want to clarify. You've had some interaction regarding the matters with the Wains and Central Bank within the last four years?
A Correct.
Q Okay.
MR. WAIN: I am done. If you --
MR. WISEMAN: Yeah, I'll just -- I'll just

C E R T I F I C A T E

COMMONWEALTH OF KENTUCKY )
) SS:
COUNTY OF KENTON )

I, April L. Crites, RPR, RMR, CRR, CSR, CCR, and a Notary Public within and for the Commonwealth of Kentucky, duly commissioned and qualified, DO HEREBY CERTIFY:

That the above-named DONNA JEAN CRAVEN was by me first duly sworn to testify the truth, the whole truth, and nothing but the truth;

That said testimony was reduced to writing by me stenographically in the presence of the witness and thereafter reduced to typewriting, and;

I FURTHER CERTIFY that I am not a relative or attorney of either party, in any manner interested in the event of this action, nor am I, or the court reporting firm with which I am affiliated, under a contract as defined in Civil Rule 28(D).

IN WITNESS WHEREOF, I hereunto set my hand and official seal of office at Covington, Kentucky, this 26th day of August, 2026.

I, April L. Crites, a Kentucky Notary Public - State at Large - No. KYNP13794, for acts performed in or outside Kentucky for recordation in Kentucky; my commission expires: August 25, 2028.

__________________________________________

April L. Crites, RPR, RMR, CRR, CSR, CCR

* * *

# EXHIBIT 16

Douglas Alan Wain
Elisa Wain
Plaintiffs, pro se
P.O. Box 7473
Westlake Village, California 91359
Telephone: (859) 494-3677
Email: douglaswain@gmail.com

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>DOUGLAS ALAN WAIN and ELISA WAIN,<br><br>Debtors.<br><br>DOUGLAS ALAN WAIN and ELISA WAIN,<br><br>Plaintiffs,<br><br>v.<br><br>CENTRAL BANK & TRUST CO., et al.,<br><br>Defendants. | Case No. 1:24-bk-11814-MB<br><br>Chapter 13<br><br>Adversary Proceeding<br>No. 1:25-ap-01026-MB |

**PLAINTIFFS' DESIGNATED EXCERPTS FROM THE CERTIFIED DEPOSITION TRANSCRIPT OF STEVEN DENNIS HALL**
(Taken August 21, 2026)

Plaintiffs Douglas Alan Wain and Elisa Wain, appearing pro se, respectfully submit the following designated excerpts from the deposition of Steven Dennis Hall, former Vice President and Manager of the Special Assets Department of Central Bank & Trust Co., taken by videoconference (Zoom) on Friday, August 21, 2026, in the above-captioned adversary proceeding. The deposition was reported stenographically by April L. Crites, RPR, RMR, CRR, CSR, CCR, Notary Public in and for the Commonwealth of Kentucky. The certified transcript consists of 97 pages; the court reporter's certificate appears at pages 96–97 of the transcript. The excerpts below are reproduced verbatim from the certified transcript. Citations are to page and line (page:line). Asterisks (* * *) indicate intervening material omitted. The complete certified transcript is available and will be furnished to the Court upon request.

## INDEX OF EXCERPTS

**Excerpt 1.** No Deficiency Judgment Was Sought, Discussed, or Advised — *Hall Dep. 31:1–3; 33:14–24; 34:5–8*

**Excerpt 2.** Central Bank Alone Initiated the Foreclosure and the Order of Sale, Knowing It Was the Second Lienholder; the Master Commissioner Held Several Hundred Thousand Dollars Over Central Bank's Judgment — *Hall Dep. 66:10–13; 67:17–19; 69:6–70:1*

**Excerpt 3.** Central Bank Pursued the Auction Because It Believed the Sale Was the Only Way It Would Get Any Money — *Hall Dep. 65:4–18; 65:19–23; 66:5–9*

**Excerpt 4.** Hall's Claim That Central Bank Needed, and Received, the Master Commissioner's "Permission" to File the Motion for Distribution — *Hall Dep. 50:2–51:10*

**Excerpt 5.** The "Watch Loan Committee": Composition, Written Policy, Monthly Discussion of the Wain Accounts, Minutes, and Decision-Making — *Hall Dep. 44:8–45:7; 45:20–25; 47:1–8; 47:25–48:8; 49:3–22*

## EXCERPT 1: NO DEFICIENCY JUDGMENT WAS SOUGHT, DISCUSSED, OR ADVISED

**Hall Dep. 31:1–3**

**Q.** Was that discussed while --

**A.** No, sir. We already had a judgment for the full amount owed on the account.

**Hall Dep. 33:14–24**

**A.** So we did not have any need to seek a deficiency judgment; we had already obtained judgment for the entire amount owed on the debt.

**Q.** Just to repeat what you said -- I don't want to put words in your mouth. You said the topic of deficiency -- getting a deficiency judgment was not discussed when continuing collection on the Wains?

**A.** No, it was not discussed. We were already granted our judgment for the entire amount of the debt.

**Hall Dep. 34:5–8**

**Q.** So nobody advised you that -- or even discussed with you that you might need a deficiency judgment to continue collection?

**A.** No.

## EXCERPT 2: CENTRAL BANK ALONE INITIATED THE FORECLOSURE AND THE ORDER OF SALE, KNOWING IT WAS THE SECOND LIENHOLDER; THE MASTER COMMISSIONER HELD SEVERAL HUNDRED THOUSAND DOLLARS OVER CENTRAL BANK'S JUDGMENT

**Hall Dep. 66:10–13**

**Q.** So you knowingly, based on these reasons, requested an order of sale knowing you were the second lienholder?

**A.** Yes.

**Hall Dep. 67:17–19**

**Q.** It was Central Bank & Loan [sic] that initiated this -- this order of sale, correct?

**A.** Yes.

**Hall Dep. 69:6–70:1**

**Q.** I'm just repeating what you said. It was $630,000 received by the master commissioner on February 6th. The judgment was approximately 358,000 on 1/19/2021. There was several hundred thousand dollars in addition that the master commissioner was holding, February 6, 2021, over the judgment of Central Bank; is that correct?

**A.** That sounds correct, I suppose.

**Q.** Okay. Just to state again for the record: Central Bank initiated the foreclosure; Central Bank initiated the request for the auction -- for a sale. I want that in there for the record.

MR. WISEMAN: Objection. Is that a question? You can't make statements.

**Q.** Would you say that was -- those statements were fair? That Central Bank alone initiated their own foreclosure on their own behalf, and Central Bank alone requested the order of sale?

**A.** Yes.

## EXCERPT 3: CENTRAL BANK PURSUED THE AUCTION BECAUSE IT BELIEVED THE SALE WAS THE ONLY WAY IT WOULD GET ANY MONEY

**Hall Dep. 65:4–18**

**A.** * * * In the case of the Wains' account, I was trying to implore you to make the payments and reduce the deficiency balance, so I let it go more than 120 days past due. I don't remember exactly how far past due it was when foreclosure was -- was initiated. But it was well more than 120 days past due. Banking regulations tell us that loans that are more than 120 days past due can no longer be kept on the bank's books as an asset. At that point, when it becomes so far past due, it became obvious that the bank was not going to receive their payments, the only way we were going to get any of the money that was due us was to file for foreclosure.

**Hall Dep. 65:19–23**

**Q.** Okay. I'm speaking of the -- your auction order with the master commissioner. It was Central Bank who initiated the auction order?

**A.** Yes. We needed -- we needed to recover as much of the debt as we could at the time. * * *

**Hall Dep. 66:5–9**

**Q.** Well, again, I'm talking about the auction order, the order of sale.

**A.** Okay. Same thing. If we had not ordered the sale of the property, we did not feel like we were ever going to get paid anything.

## EXCERPT 4: HALL'S CLAIM THAT CENTRAL BANK NEEDED, AND RECEIVED, THE MASTER COMMISSIONER'S "PERMISSION" TO FILE THE MOTION FOR DISTRIBUTION

### Hall Dep. 50:2–51:10

**Q.** Okay. Again, my question is: Why did you wait until after the -- the foreclosure auction was February 6, 2021. Why did you wait two and a half years -- or two years?

**A.** Again, because it was the responsibility of the senior lienholder to file that order of distribution. When Newrez took no action, the master commissioner informed the bank that he would allow us to file the order of distribution so he did not have to escheat the money to the State. And it -- it explains it in that document that you last showed me.

**Q.** So do you think you needed the master commissioner's permission to file that motion for distribution?

**A.** Oh, yes.

**Q.** Did not need his permission?

**A.** No, we did need his permission. We implored him -- our attorneys implored him several times to allow us to do that, and due to rules of order, we were not allowed to do that.

**Q.** So you couldn't file the motion for distribution without the master commissioner's permission?

**A.** Correct.

**Q.** And how did you know he gave this permission?

**A.** He contact -- I believe he contacted our attorneys.

**Q.** And his attorneys contacted you?

**A.** Yes.

**Q.** In Central Bank's records, do you have records of this?

**A.** I wouldn't know that.

## EXCERPT 5: THE "WATCH LOAN COMMITTEE": COMPOSITION, WRITTEN POLICY, MONTHLY DISCUSSION OF THE WAIN ACCOUNTS, MINUTES, AND DECISION-MAKING

### Hall Dep. 44:8–45:7

**Q.** So there were regular meetings of these topics where the Wain accounts were discussed?

**A.** Yes.

**Q.** Who was at these meetings?

**A.** There were several people. The group usually consisted from 12 to 15 individuals. They were executives of the bank.

They were people from the compliance department. The financial accounting department. Certainly Paul Thornsberry, Greg Shewmaker. Compliance people were -- Donna Craven was always there. David Ross, who was the director of commercial mortgage lending. Becky Mullins was always in the meeting. Representatives of the loan review department were in the meetings. It was a representation of the bank employees who were in charge of oversight of loans and compliance.

**Q.** This group have a name?

**A.** It was the watch loan committee.

**Q.** The watch loan committee?

**A.** Yes.

**Q.** Is that documented somewhere in Central Bank's policies and records?

**A.** Yes, it is.

**Hall Dep. 45:20–25**

**Q.** Were there any votes on the Wain accounts?

**A.** No.

**Q.** Who was the chairperson of this committee?

**A.** Ellen Sharp until she left the bank, and then I became the chairperson when I assumed her position.

**Hall Dep. 47:1–8**

**Q.** How often does the watch loan committee meet?

**A.** Once a month.

**Q.** How often were the Wain accounts discussed at this once-a-month meeting?

**A.** They were discussed every month.

**Q.** The Wain accounts was discussed every month?

**A.** Yes * * *

**Hall Dep. 47:25–48:8**

**Q.** Were minutes kept at this meeting, a secretary?

**A.** Yes.

**Q.** Do you recall who the secretary was?

**A.** Once I became the chair of the committee, Becky Mullins kept the minutes. And I believe before that, I know Donna Craven's kept minutes, and Ellen Sharp kept minutes, and that's about all I recall.

**Hall Dep. 49:3–22**

**Q.** Were attorneys present at this watch loan committee?

**A.** Were -- I'm sorry, who?

**Q.** Were there any attorneys?

**A.** No.

**Q.** What I'm trying to understand is the decision-making process regarding the Wain accounts, if you were the final decision, or Thornsberry was the final decision, or the watch loan committee was the final decisions. Which of --
**A.** I was the final decision, but I never had any objections to any actions taken.
**Q.** By Paul Thornsberry or by the watch --
**A.** By anyone --
**Q.** -- loan committee?
**A.** By anyone employed at the bank.
**Q.** So you advised them of your legal actions, and there was no objection?
**A.** Correct.

## DECLARATION REGARDING EXCERPTS

I, Douglas Alan Wain, declare as follows: I am a Plaintiff in the above-captioned adversary proceeding, appearing pro se. The foregoing excerpts are true and accurate verbatim excerpts from the certified transcript of the deposition of Steven Dennis Hall taken on August 21, 2026, as prepared and certified by April L. Crites, RPR, RMR, CRR, CSR, CCR, Notary Public, Commonwealth of Kentucky. A true and correct copy of the transcript cover page and the court reporter's certificate (Transcript pp. 1, 96–97) is attached hereto as Exhibit A.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 3, 2026, at Calabasas, California.

Douglas Alan Wain
Plaintiff, pro per

C E R T I F I C A T E

COMMONWEALTH OF KENTUCKY )
) SS:
COUNTY OF KENTON )

I, April L. Crites, RPR, RMR, CRR, CSR, CCR, and a Notary Public within and for the Commonwealth of Kentucky, duly commissioned and qualified, DO HEREBY CERTIFY:

That the above-named STEVEN DENNIS HALL was by me first duly sworn to testify the truth, the whole truth, and nothing but the truth;

That said testimony was reduced to writing by me stenographically in the presence of the witness and thereafter reduced to typewriting, and;

I FURTHER CERTIFY that I am not a relative or attorney of either party, in any manner interested in the event of this action, nor am I, or the court reporting firm with which I am affiliated, under a contract as defined in Civil Rule 28(D).

IN WITNESS WHEREOF, I hereunto set my hand and official seal of office at Covington, Kentucky, this 31st of August, 2026.

I, April L. Crites, a Kentucky Notary Public - State at Large - No. KYNP13794, for acts performed in or outside Kentucky for recordation in Kentucky; my commission expires: August 25, 2028.



__________________________________________

April L. Crites, RPR, RMR, CRR, CSR, CCR

* * *

# EXHIBIT 17

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SAN FERNANDO VALLEY DIVISION

- - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Civil Action No. 1:24-bk-11814-MB |
| DOUGLAS ALAN WAIN and ELISA WAIN, | : | Chapter 13 |
| | : | |
| Debtors. | : | |
| DOUGLAS ALAN WAIN and ELISA WAIN, | : | Adversary Proceeding No. |
| | : | 1:25-ap-01026-MB |
| Plaintiffs, | : | |
| v. | : | |
| CENTRAL BANK & TRUST CO., et al., | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - x

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RE: NONAPPEARANCE OF

CROWE LLP

4801 OLYMPIA PARK PLAZA

SUITE 4000

LOUISVILLE, KENTUCKY 40241-2098

Monday, August 24, 2026

9:40 a.m. PDT

Pages: 1 - 12

Reported By: April L. Crites, RMR, CRR, CSR, CCR

Notary Public, Commonwealth of Kentucky

* * *

Pursuant to subpoena, and pursuant to the
Federal Rules of Civil Procedure,
before April L. Crites, RMR, CRR, CSR, CCR,
and Notary Public in and for the
Commonwealth of Kentucky.

* * *

# I N D E X

## EXHIBITS



| MARKED | DESCRIPTION | PAGE |
| --- | --- | --- |
| Exhibit 1 | Subpoena to Testify at a Deposition in a Bankruptcy Case (or Adversary Proceedings), with Attachment A, to Crowe LLP | 7 |
| Exhibit 2 | Crowe letter dated August 10, 2026, Re: Crowe LLP's Objections to Subpoena to Testify at a Deposition and to Produce Documents | 7 |
| Exhibit 3 | Wains' August 11, 2026, letter to John C. Doyle, Esq., Re: Crowe LLP's August 10, 2026, Objections to Plaintiffs' Rule 45 Subpoena | 7 |
| Exhibit 4 | August 21, 2026, e-mail from Tom Falkenberg, FW: Wain v. Central Bank Subpoena to Crowe, to douglaswain@gmail.com | 8 |
| Exhibit 5 | E-mail chain, Subject: FW: Wain v. Central Bank Subpoena to Crowe, dated August 21, 2026 | 8 |
| Exhibit 6 | E-mail chain, Subject: FW: Wain v. Central Bank Subpoena to Crowe, last dated August 22, 2026, from Tom Falkenberg to douglaswain@gmail.com | 8 |

| | | |
|---|---|---|
| Exhibit 7 | E-mail chain, Subject: FW: Wain v. Central Bank Subpoena to Crowe, last dated August 22, 2026, from douglaswain@gmail.com to Tom Falkenberg | 9 |

* * *

# A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFFS, DOUGLAS A. WAIN and ELISA WAIN (pro per):

Douglas Alan Wain
Post Office Box 7473
Westlake Village, California 91359
859-494-3677
douglaswain@gmail.com

* * *

MR. WAIN: Good morning. Today is Monday, August 24, 2026. The time is 9:40 a.m. Pacific.

This is a properly noticed Rule 30(b)(6) deposition of Crowe LLP in *Wain v. Central Bank & Trust,* adversary proceeding number 1:25-ap-01026-MB in the United States Bankruptcy Court, Central District of California.

I am Douglas A. Wain, plaintiff, appearing pro per.

The court reporter, April L. Crites, a notary public authorized to administer oaths, is present.

The Zoom session opened at 9:00 a.m., as noticed, and has remained open and functional.

For the record, on July 9, 2026, plaintiffs issued a subpoena to Crowe LLP to testify at a Rule 30(b)(6) deposition, and to produce documents. The subpoena was delivered to Crowe's Louisville, Kentucky, office on July 15, 2026, with the statutory witness. It commanded production of documents by August 10, 2026, and designated today, August 24, 2026, at 9:00 a.m. Pacific, for the remote deposition.

I have marked as Exhibit 1 the subpoena with its Attachment A, which includes the proof of

service.

(Plaintiffs' Exhibit 1, Subpoena to Testify at a Deposition in a Bankruptcy Case (or Adversary Proceedings), with Attachment A, to Crowe LLP, was marked and presented for purposes of identification.)

MR. WAIN: On August 10, 2026, Crowe served written objections through counsel but sought no relief from any court.

I have seven exhibits total, which I will now detail:

Exhibit 1 is, again, the subpoena to Crowe with Attachment A and proof of service.

Exhibit 2 is Crowe's objections of August 10, 2026, to Wains' subpoena.

(Plaintiffs' Exhibit 2, Crowe letter dated August 10, 2026, Re: Crowe LLP's Objections to Subpoena to Testify at a Deposition and to Produce Documents, was marked and presented for purposes of identification.)

MR. WAIN: Exhibit 3 is plaintiffs' response to Crowe LLP objections to plaintiffs' Rule 45 subpoena. That was on August 11, 2026.

(Plaintiffs' Exhibit 3, Wains' August 11, 2026, letter to John C. Doyle, Esq., Re: Crowe

LLP's August 10, 2026, Objections to Plaintiffs' Rule 45 Subpoena, was marked and presented for purposes of identification.)

MR. WAIN: Exhibit 4 is Crowe/Falkenberg's e-mail to Wains on August 21, 2026.

(Plaintiffs' Exhibit 4, August 21, 2026, e-mail from Tom Falkenberg, FW: Wain v. Central Bank Subpoena to Crowe, to douglaswain@gmail.com, was marked and presented for purposes of identification.)

MR. WAIN: Exhibit 5 is the Wains' e-mails to Crowe/Falkenberg, also on August 21, 2026.

(Plaintiffs' Exhibit 5, E-mail chain, Subject: FW: Wain v. Central Bank Subpoena to Crowe, dated August 21, 2026, was marked and presented for purposes of identification.)

MR. WAIN: Exhibit 6 is Crowe's/ Falkengerg's e-mail to Wains on August 22, 2026.

(Plaintiffs' Exhibit 6, E-mail chain, Subject: FW: Wain v. Central Bank Subpoena to Crowe, last dated August 22, 2026, from Tom Falkenberg to douglaswain@gmail.com, was marked and presented for purposes of identification.)

MR. WAIN: And Exhibit 7, the final exhibit, is Wains' e-mail to Falkenberg/Crowe,

also on August 22, 2026.

(Plaintiffs' Exhibit 7, E-mail chain, Subject: FW: Wain v. Central Bank Subpoena to Crowe, last dated August 22, 2026, from douglaswain@gmail.com to Tom Falkenberg, was marked and presented for purposes of identification.)

MR. WAIN: So on August 11, 2026, plaintiffs responded in writing that the objections do not excuse attendance and that a deposition stands absent a court order or written agreement.

The parties met and conferred on August 19, 2026, without resolution.

On August 21, 2026, Attorney Thomas Falkenberg appeared as counsel for Crowe, stated in writing, quote, We will not be producing the witness, unquote.

The plaintiffs, same day, advised that the deposition would proceed as noticed.

As of 8:46 a.m. Pacific time, no witness, designee, or counsel for Crowe LLP has appeared. Crowe has filed no motion to quash or modify the subpoena and has sought no protective order and has obtained no order excusing its appearance from

any court.

The record will reflect Crowe LLP's failure to appear for its properly noticed deposition. Plaintiffs reserve all rights and remedies, including contempt under Rule 45(g), and/or cover the expenses of this session.

Madam Reporter, please prepare a certificate of nonappearance and attach Exhibits 1 through 7.

We are adjourned.

The time is 9:47 a.m. Pacific time., and we are going off the record.

(The deposition was concluded at 12:47 p.m.)

* * *

C E R T I F I C A T E OF R E P O R T E R

I, April L. Crites, a Notary Public in and for the Commonwealth of Kentucky, do hereby declare:

That pursuant to the notice of Douglas Alan Wain and Elisa Wain, appearing pro per, I did appear remotely by teleconference (Zoom), on the 24th day of August, 2026, for the purpose of placing under oath and reporting the deposition of Crowe LLP;

That there were present: Douglas Alan Wain;

That the above person, including the reporter, remained at the location indicated above until 9:47 a.m. Pacific time, by which time the aforementioned witness had not appeared for the purpose of having their deposition taken.

I do further certify that I am a disinterested person and am in no way interested in the outcome of this action or connected with or related to any of the parties in this action or to their respective counsel.

In witness whereof, I have subscribed my name on 24th day of August, 2026.

______________________________________________

April L. Crites, RMR, CRR, CSR, CCR
Kentucky Notary Public No. KYNP13794
My commission expires: August 25, 2028

* * *

EXHIBIT
1
8/24/26 ALC

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Central District of California

In re Douglas Alan Wain and Elisa Wain
Debtor

Case No. 1:24-bk-11814-MB

*(Complete if issued in an adversary proceeding)*

Chapter 13

Douglas Alan Wain and Elisa Wain,
Plaintiff
v.
Central Bank and Trust, Co.
Defendant

Adv. Proc. No. 1:25-ap-01026-MB

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Crowe LLP, 4801 Olympia Park Plaza, Suite 4000, Louisville, Kentucky 40241-2098
*(Name of person to whom the subpoena is directed)*

☑ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE | DATE AND TIME |
|---|---|
| Remote deposition by videoconference (Zoom). Log-in credentials to be provided by Plaintiffs to the witness in advance of the deposition. | August 24, 2026, at 9:00 a.m. Pacific Time |

The deposition will be recorded by this method: Stenographic (by a certified court reporter).

☒ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See attached Attachment A (Matters for Examination and Documents).

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: July 9, 2026

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

OR

N/A
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Douglas Alan Wain and Elisa Wain, who issues or requests this subpoena, are:
N/A; Plaintiffs are self-represented.

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**ATTACHMENT A TO SUBPOENA TO TESTIFY AT A DEPOSITION AND TO PRODUCE DOCUMENTS**

(Fed. R. Civ. P. 45 and 30(b)(6); Fed. R. Bankr. P. 9016)

Case: Wain v. Central Bank & Trust Co., et al., Adv. Proc. No. 1:25-ap-01026-MB
Court: United States Bankruptcy Court, Central District of California (San Fernando Valley Division)
Related Bankruptcy Case: In re Wain, No. 1:24-bk-11814-MB (Chapter 13)
Judge: Hon. Martin R. Barash

**Entity Commanded:** Crowe LLP, by and through its Louisville, Kentucky office or its registered agent for service of process in Kentucky.

**Definitions.** "CBT" means Central Bank & Trust Co. and its parent Central Bancshares, Inc. "The Wain Matters" means, collectively: (a) the foreclosure action styled Central Bank & Trust Co. v. Wain, et al., Fayette Circuit Court (Kentucky) Case No. 19-CI-00812; (b) the action styled Wain v. Central Bank & Trust Co. et al., Civil Action No. 5:23-cv-00139-REW-MAS (E.D. Ky.); (c) In re Wain, Bankruptcy Case No. 1:24-bk-11814-MB (Bankr. C.D. Cal.), including CBT's Proof of Claim No. 19 in the asserted amount of $357,990.91; (d) the above-captioned adversary proceeding; and (e) any other litigation, claim, or collection activity involving CBT and Douglas Wain or Elisa Wain. "Document" has the broadest meaning permitted under Fed. R. Civ. P. 34 and includes electronically stored information.

## I. DEPOSITION TESTIMONY (Fed. R. Civ. P. 30(b)(6))

**Date and Time:** Monday, August 24, 2026, commencing at 9:00 a.m. Pacific Time / 12:00 p.m. Eastern Time, and continuing until completed, subject to the seven-hour limit of Fed. R. Civ. P. 30(d)(1).

**Place:** By remote videoconference (Zoom or comparable platform) pursuant to Fed. R. Civ. P. 30(b)(4). The designee(s) may appear from any location convenient to the witness, including Crowe LLP's offices in or near Louisville, Kentucky. Connection information will be provided by the court reporter in advance. This arrangement complies with Fed. R. Civ. P. 45(c)(1), as no travel is required.

**Method of Recording:** Stenographic means before an officer authorized to administer oaths; the deposition may additionally be recorded by audio and audiovisual means pursuant to Fed. R. Civ. P. 30(b)(3).

**Designation:** Pursuant to Fed. R. Civ. P. 30(b)(6), Crowe LLP must designate one or more officers, partners, managing agents, or other persons who consent to testify on its behalf, and must prepare each designee to testify about information known or reasonably available to the organization concerning the following matters for examination. Plaintiffs request that Crowe LLP

identify each designee, and the matters on which each will testify, at least seven (7) days before the deposition, and Plaintiffs are prepared to confer in good faith regarding the matters for examination.

**Matters for Examination:**

**1.** Crowe LLP's engagements to audit the consolidated financial statements of Central Bancshares, Inc. and Central Bank & Trust Co. (collectively, "CBT") for fiscal years 2019 through 2025, including the scope of each engagement and the identity of engagement partners and managers.

**2.** Audit procedures performed in each such fiscal year with respect to loss contingencies, litigation, claims, and assessments concerning the Wain Matters (defined below), including procedures under AU-C Section 501 and related standards.

**3.** Attorney audit-inquiry letters (including letters requested under the American Bar Association Statement of Policy) sent in connection with each such audit, and the responses received from CBT's counsel, to the extent they concern the Wain Matters.

**4.** Management representation letters provided by CBT to Crowe LLP for fiscal years 2019 through 2025, to the extent they address litigation, claims, assessments, or loss contingencies concerning the Wain Matters.

**5.** Subsequent-events review procedures under AU-C Section 560 for each such fiscal year, to the extent they concern the Wain Matters.

**6.** The basis for, and Crowe LLP's evaluation of, the disclosure appearing in the notes to CBT's audited consolidated financial statements for fiscal years 2019 through 2025 concerning legal proceedings and loss contingencies, including any statement that pending or threatened litigation would have no material effect on CBT's financial statements, as that disclosure relates to the Wain Matters.

**7.** Communications between Crowe LLP and CBT (including CBT's officers, directors, employees, and counsel) concerning the Wain Matters during fiscal years 2019 through 2025.

**8.** Crowe LLP's workpaper retention policies applicable to the CBT engagements, and the existence, location, and custodians of workpapers responsive to the document requests below.

**9.** The identity of Crowe LLP personnel with knowledge of the foregoing subjects.

**II. DOCUMENTS TO BE PRODUCED (Fed. R. Civ. P. 45(a)(1)(A)(iii))**

**Production Date and Method:** On or before Monday, August 10, 2026, by electronic delivery (email or secure file-transfer link) to douglaswain@gmail.com, or by mail to Douglas Wain and Elisa Wain, P.O. Box 7473, Westlake Village, CA 91359. Electronic or mailed production is expressly permitted and requires no travel or personal appearance. Fed. R. Civ. P. 45(d)(2)(A).

**Documents Requested (limited in each instance to the CBT engagements and, where indicated, to the Wain Matters):**

**1.** Engagement letters between Crowe LLP and Central Bancshares, Inc. or Central Bank & Trust Co. for the audits of fiscal years 2019 through 2025.

**2.** Audit workpapers for fiscal years 2019 through 2025 concerning loss contingencies, litigation, claims, or assessments relating to the Wain Matters, including risk assessments, litigation summaries, and related analyses.

**3.** Attorney audit-inquiry letters and all responses thereto (including responses from Stoll Keenon Ogden PLLC, Fowler Bell PLLC, Dentons Bingham Greenebaum LLP, Frost Brown Todd LLC, Haight Brown & Bonesteel LLP, or any other counsel for CBT) for fiscal years 2019 through 2025, to the extent they refer or relate to the Wain Matters.

**4.** Management representation letters provided by CBT to Crowe LLP for fiscal years 2019 through 2025, to the extent they address litigation, claims, assessments, or loss contingencies.

**5.** Workpapers and memoranda reflecting subsequent-events review under AU-C Section 560 for fiscal years 2019 through 2025, to the extent they refer or relate to the Wain Matters.

**6.** Communications (including correspondence, email, and meeting notes) between Crowe LLP and CBT, or between Crowe LLP personnel internally, referring or relating to the Wain Matters, for the period January 1, 2019 through the present.

**7.** Drafts and final versions of the notes to CBT's audited consolidated financial statements for fiscal years 2019 through 2025 concerning commitments, contingencies, or legal proceedings, together with workpapers supporting those disclosures, to the extent they refer or relate to the Wain Matters.

**8.** Documents sufficient to identify the Crowe LLP engagement team (partners, managers, and staff) for each of the fiscal year 2019 through 2025 CBT audits.

## III. PRIVILEGE, CONFIDENTIALITY, AND SCOPE

If any responsive document is withheld under a claim of privilege or protection, Crowe LLP is requested to expressly make the claim and describe the nature of the withheld documents in a manner that will enable the parties to assess the claim, in accordance with Fed. R. Civ. P. 45(e)(2)(A).

This subpoena is limited to Crowe LLP's engagements for CBT and does not seek information concerning any other Crowe LLP client. Plaintiffs will cooperate in good faith regarding reasonable confidentiality protections, including a stipulated protective order if requested, and will take reasonable steps to avoid imposing undue burden or expense in accordance with Fed. R. Civ. P. 45(d)(1).

Witness Protections. The witness's attention is directed to Fed. R. Civ. P. 45(d) and (e), reproduced on the subpoena form, regarding protections available to persons subject to subpoenas and the duties in responding. The statutory witness fee and mileage allowance under 28 U.S.C. § 1821 are tendered with service of this subpoena.

Issued at the request of:
Douglas Wain and Elisa Wain, Plaintiffs, Pro Per
P.O. Box 7473, Westlake Village, CA 91359
Telephone: (859) 494-3677 | Email: douglaswain@gmail.com

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: Crowe LLP
on *(date)* 07/14/2026 .

☒ I served the subpoena by delivering a copy to the named person as follows: Reed Campana, Manager, authorized to accept, by delivery at 4801 Olympia Park Plaza, Suite 4000, Louisville, KY 40241
on *(date)* 07/15/2026 ; or

☐ I returned the subpoena unexecuted because: ____________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ ________ .

My fees are $ ________ for travel and $________ for services, for a total of $________ .

I declare under penalty of perjury that this information is true and correct.

Date: 07/15/2026

*Server's signature*

Jonathan Hessig, Process Server
*Printed name and title*

17001 Epson Ct. #1, Louisville, KY 40245
*Server's address*

Additional information concerning attempted service, etc.:

Crowe

**Crowe LLP**
Independent Member Crowe Global

One Mid America Plaza, Suite 600
Oakbrook Terrace, Illinois 60181-4705
Tel +1 630 574 7878
Fax +1 630 574 1608
www.crowe.com

EXHIBIT
2
8/24/26 ALC

August 10, 2026

**BY E-MAIL**

Douglas Wain and Elisa Wain (douglaswain@gmail.com)
P.O. Box 7473
Westlake Village, CA 91359
859-494-3677

**Re:** ***Wain v. Central Bank & Trust Co., et al.,*** Adv. Proc. No. 1:25-ap-01026-MB
(U.S. Bankr. Ct., C.D. Cal.)
**Crowe LLP's Objections to Subpoena to Testify at a Deposition and to Produce Documents**

Dear Mr. Wain and Ms. Wain:

I represent Crowe LLP ("Crowe"). This letter states Crowe's objections to the Subpoena to Testify at a Deposition in a Bankruptcy Case (or Adversary Proceeding) issued on July 9, 2026 (the "Subpoena") in the above-referenced adversary proceeding (the "Proceeding"). A copy of the Subpoena was delivered to Crowe's Louisville, Kentucky office on July 15, 2026. Crowe does not concede that delivery constituted valid service, and Crowe does not waive any objection to service, jurisdiction, enforceability, place of compliance, or any other procedural requirement. The Subpoena commanded document production on August 10, 2026 and purports to require a remote Rule 30(b)(6) deposition on August 24, 2026 at 9:00 a.m. Pacific Time. These objections apply to both the document demands and every proposed matter for examination.

Crowe is a nonparty independent accounting firm. Its role for Central Bancshares, Inc. and Central Bank & Trust Co. (collectively, and solely for convenience, "CBT") was that of an independent financial-statement auditor. Crowe did not participate in the lending, foreclosure, collection, bankruptcy, or litigation events involving you; did not serve as a forensic accountant, litigation consultant, investigator, or expert concerning those events; and has no first-hand knowledge of their merits. Audit procedures concerning litigation and loss contingencies are performed for the limited purpose of supporting an audit opinion on financial statements, including consideration of whether a matter could cause a material misstatement. They are not designed to determine legal liability, adjudicate claims, calculate litigation damages, or create a complete record of a client's disputes.

Crowe states the following threshold, general, and specific objections under Federal Rules of Civil Procedure 26, 30, and 45, as incorporated by Federal Rules of Bankruptcy Procedure 7026, 7030, and 9016. Each objection applies independently and cumulatively to every document request and deposition topic. Specific objections do not limit the general objections, and the identification of one defect does not waive any other objection. These objections are asserted without conceding that any objection has been waived and in addition to Crowe's right to seek a protective order or to quash or modify the Subpoena.

## I. THRESHOLD AND GENERAL OBJECTIONS

1. **Procedural prerequisites; service; place, manner, and date of compliance.** The materials delivered to Crowe do not establish compliance with Rule 45(a)(4)'s prior-notice requirement, notice of the deposition to all parties under Rule 30(b)(1), valid service on an authorized recipient and proper tender under Rule 45(b), or a Rule 45(c)-compliant place of production. The production command directs electronic or mailed delivery to Plaintiffs in California and identifies no physical place satisfying Rule 45(c)(2)(A). Crowe has not stipulated to a remote deposition, the Subpoena identifies no order authorizing remote means under Rule 30(b)(4), and Crowe did not agree to the unilaterally selected date and time. In addition, Plaintiffs have not conferred with Crowe concerning the proposed Rule 30(b)(6) topics as Rule 30(b)(6) requires. Crowe

Crowe

**Crowe LLP**
Independent Member Crowe Global

One Mid America Plaza, Suite 600
Oakbrook Terrace, Illinois 60181-4705
Tel +1 630 574 7878
Fax +1 630 574 1608
www.crowe.com

preserves all objections based on these defects, as well as any defect in issuance, notice, service, tender, proof of service, jurisdiction, or enforcement.

2. **Nonparty burden, proportionality, and more appropriate sources.** Rule 45(d)(1) requires the issuing party to take reasonable steps to avoid imposing undue burden or expense on a nonparty, and Rules 26(b)(1), 26(b)(2)(C), and 45(d)(3) require discovery to be relevant, proportional, nonduplicative, and obtainable through the least burdensome source. The Subpoena instead seeks seven years of engagements, workpapers, correspondence, audit judgments, and personnel information through eight document requests and nine corporate deposition topics. The broadly defined "Wain Matters" include not only specified cases but "any other litigation, claim, or collection activity" involving CBT and the Wains. The relevant underlying facts, communications, pleadings, legal assessments, financial statements, and client-created records are available from CBT, CBT's present and former counsel, the parties to the identified proceedings, and public court dockets. Plaintiffs have not demonstrated that they first exhausted those more direct sources or identified any discrete evidentiary gap that only Crowe can fill. Crowe objects to duplicative merits discovery from a nonparty auditor and to any deposition unless and until Plaintiffs complete source discovery and identify a narrow, specific, nonduplicative factual need.

3. **No unique merits information; improper premise and use.** The Subpoena assumes, without foundation, that Crowe conducted matter-specific audit procedures, made independent legal assessments, or generated analyses concerning the Wain Matters over multiple audit years. Crowe's present understanding does not support that premise. Crowe objects to discovery that would invite an inaccurate or misleading characterization of the purpose, scope, or significance of its audit work.

4. **Confidential client information and proprietary audit materials.** Crowe's audit files contain confidential client and third-party information and Crowe's proprietary methodologies, risk assessments, materiality judgments, sampling approaches, quality-control information, and internal professional deliberations. KRS 325.420 provides that, subject to specified exceptions, an accountant's working papers and memoranda are the accountant's property. KRS 325.440 and ET section 1.700.001 of the AICPA Code of Professional Conduct restrict voluntary disclosure of confidential client information while recognizing compliance with a validly issued and enforceable subpoena. The requested materials also include confidential commercial information protectable under Rules 26(c) and 45(d)(3)(B)(i) and Bankruptcy Rule 9018. The Subpoena also directs delivery to Plaintiffs' personal Gmail account without any agreed secure-transfer, encryption, access-control, or data-destruction protocol. Crowe will not transmit confidential client information or proprietary audit materials through that channel or produce them absent a valid, narrowly tailored obligation and an appropriate court-entered protective order.

5. **Privilege, work product, and express restrictions on audit-response materials.** Crowe objects to any request or topic that seeks or would reveal attorney-client communications, attorney work product, common-interest or joint-defense material, legal advice to Crowe, or communications and materials created in anticipation of or in response to the Subpoena. Any outside-counsel audit response in Crowe's files was furnished for the limited purpose of the financial-statement audit, subject to express restrictions against third-party use or dissemination and express preservation of the client's and counsel's privilege and work-product positions. CBT and its counsel are the appropriate sources and privilege holders and must receive notice and a meaningful opportunity to assert their rights before any disclosure. Crowe does not waive, and cannot waive on behalf of others, any privilege or protection. If any production were later required, it would be conditioned on a Federal Rule of Evidence 502(d) nonwaiver order, a robust clawback protocol, and a privilege-log process proportionate to the narrowed scope. Crowe will not prepare a document-by-document log of communications with its counsel concerning the Subpoena; any log or categorical description must be

**Crowe LLP**
Independent Member Crowe Global
One Mid America Plaza, Suite 600
Oakbrook Terrace, Illinois 60181-4705
Tel +1 630 574 7878
Fax +1 630 574 1608
www.crowe.com

proportionate to a properly narrowed demand and must not reveal privileged content. Nothing in this letter discloses or waives the nature, scope, or results of counsel's privileged investigation or legal advice.

6. **Improper attempt to obtain unretained expert opinions and reconstruct professional judgments.** Topics 2 through 6, and related document requests, seek testimony about auditing standards, audit procedures, professional judgments, materiality, subsequent-events review, and Crowe's evaluation of financial-statement disclosures. To the extent Plaintiffs seek accounting opinions, after-the-fact analyses, critiques, or testimony beyond specific historical facts, the demands seek an unretained expert's opinions or information resulting from study not requested by Plaintiffs and are subject to Rule 45(d)(3)(B)(ii). Rule 30(b)(6) does not require Crowe to formulate new opinions, create analyses, reconstruct professional judgments years later, adopt Plaintiffs' characterizations, or educate Plaintiffs concerning generally accepted auditing standards. Crowe objects to testimony concerning legal conclusions, hypotheticals, the merits of the Wain Matters, or opinions on the adequacy of CBT's or Crowe's conduct.

7. **Electronically stored information, search burden, and form of production.** The Subpoena proposes no custodians, search terms, date limitations tied to a specific event, ESI protocol, deduplication method, or production format. A search for every internal and external communication over more than seven years would require identifying multiple engagement teams and custodians, searching active and archived systems, collecting and processing ESI, reviewing for privilege and confidentiality, and redacting unrelated client, bank-customer, personnel, and third-party information. Crowe objects to any enterprise-wide search; to collection from backup or disaster-recovery media, deleted data, system logs, personal devices, or sources not reasonably accessible; to production of duplicate copies, hidden data, or metadata not necessary to understand a document; and to any obligation to create a document, compilation, chronology, or analysis that does not already exist

8. **Costs and significant expense.** Crowe is a nonparty with no stake in the Proceeding. Rule 45(d)(2)(B)(ii) requires protection of a nonparty from significant expense resulting from compliance. Plaintiffs must bear and, upon request, advance Crowe's reasonable costs of any agreed or ordered collection, restoration, processing, hosting, review, redaction, privilege analysis, production, witness preparation, and deposition, including vendor and professional costs to the extent recoverable. Crowe objects to undertaking any such work without a written cost arrangement and advance funding.

9. **Overbreadth, vagueness, time period, and undefined scope.** The terms "concerning," "referring or relating to," "to the extent," "including," and "any other litigation, claim, or collection activity" do not provide objective boundaries and would require Crowe to speculate. The periods "fiscal years 2019 through 2025" and "January 1, 2019 through the present" are untethered to the allegations or any demonstrated need and improperly sweep in post-Subpoena legal-response communications.

10. **Personnel privacy, security, and no direct contact.** Requests for engagement-team identities, custodians, record locations, and retention practices implicate personnel privacy, proprietary records-management and information-security practices, and potential harassment of current or former personnel. Such information is not relevant to the merits absent a concrete discovery dispute. All communications concerning the Subpoena must be directed to undersigned counsel. Plaintiffs should not contact Crowe personnel directly. Crowe will not disclose personal contact information or internal system, security, preservation, collection, or legal-hold information.

## II. SPECIFIC OBJECTIONS TO DOCUMENT REQUESTS

Crowe incorporates each threshold and general objection into each response below. Crowe's specific objections are not exhaustive and do not indicate that responsive documents exist.

Crowe

**Crowe LLP**
Independent Member Crowe Global

One Mid America Plaza, Suite 600
Oakbrook Terrace, Illinois 60181-4705
Tel +1 630 574 7878
Fax +1 630 574 1608
www.crowe.com

**Document Request No. 1 - Engagement letters.** Crowe objects to the request for all engagement letters for fiscal years 2019 through 2025 because the agreements are not specific to the Wain Matters, contain confidential commercial terms, fees, scope limitations, risk allocations, and other proprietary information, and are available from CBT. The request is irrelevant, disproportionate, and broader than any asserted need. Crowe will not produce the engagement letters as requested.

**Document Request No. 2 - Audit workpapers concerning loss contingencies or the Wain Matters.** Crowe objects because the request seeks Crowe-owned, proprietary audit documentation and professional judgments; uses vague and expansive terms; assumes matter-specific work that Crowe has not identified; and would require review of multiple complete audit files for references to broad categories of litigation. Any limited Wain-related audit documentation is derivative of CBT or counsel information, may implicate privilege or work product, and does not supply unique merits evidence. The request also improperly seeks unretained expert information. Crowe will not produce audit workpapers as requested.

**Document Request No. 3 - Attorney audit-inquiry letters and responses.** Crowe objects because any such documents originated with CBT and its counsel, are more appropriately sought from those sources, were provided solely for audit purposes, and are subject to express use restrictions and asserted privilege and work-product protections. The request also names multiple law firms and seven audit years without a showing that each firm or year has any connection to the Proceeding. Crowe will not disclose counsel communications or audit responses absent consent of the privilege holders or an order resolving all privilege, work-product, confidentiality, use-restriction, and protective-order issues.

**Document Request No. 4 - Management representation letters.** The request is facially overbroad because, unlike the other requests, it seeks letters "to the extent they address litigation, claims, assessments, or loss contingencies" generally, not only the Wain Matters. It therefore reaches confidential information about unrelated disputes and third parties. The letters are CBT-created or CBT-signed documents available from CBT and are not unique Crowe evidence. Crowe will not produce them as requested.

**Document Request No. 5 - Subsequent-events workpapers.** Crowe objects because Crowe has not identified separate Wain-specific subsequent-events procedures beyond any ordinary-course audit documentation, and the request seeks proprietary audit methods, professional judgments, and unretained expert information. Any underlying event information is available from CBT, its counsel, and public records. Crowe will not produce subsequent-events workpapers as requested.

**Document Request No. 6 - Internal and external communications.** Crowe specifically objects to the demand for all communications among Crowe personnel or between Crowe and CBT, its officers, directors, employees, and counsel from January 1, 2019 "through the present." An all-custodian communications search over more than seven years is grossly disproportionate to the limited audit context identified above. External communications are equally or more readily available from CBT and its counsel. Internal Crowe communications would disclose proprietary audit methodologies, preliminary professional deliberations, quality-control information, personnel information, and material unrelated to the merits, while post-delivery communications concerning legal advice, preservation, collection, and response to the Subpoena are privileged and protected work product. Crowe will not conduct an enterprise-wide search or produce internal or external communications under this request.

**Document Request No. 7 - Financial-statement disclosures and supporting workpapers.** Final audited financial statements are available from CBT and, to the extent filed or published, from public sources. Drafts, comments, and supporting workpapers contain proprietary audit judgments, confidential information unrelated to the Wain Matters, and potential unretained expert material. The request is cumulative and disproportionate. Crowe will not produce drafts or supporting workpapers as requested.

Crowe

**Crowe LLP**
Independent Member Crowe Global

One Mid America Plaza, Suite 600
Oakbrook Terrace, Illinois 60181-4705
Tel +1 630 574 7878
Fax +1 630 574 1608
www.crowe.com

**Document Request No. 8 - Engagement-team identification.** Crowe objects because the request is not relevant to the merits, invades personnel privacy, creates a risk of direct contact or harassment, and is disproportionate absent a properly narrowed deposition need. The phrase "documents sufficient to identify" is also vague and could reach confidential staffing, scheduling, time, and human-resources records. Plaintiffs must direct all communications concerning Crowe or its personnel to undersigned counsel. Crowe will not produce personnel-identification documents as requested.

## III. SPECIFIC OBJECTIONS TO DEPOSITION TOPICS

Crowe incorporates each threshold, general, and document-specific objection into every proposed matter for examination. Crowe does not agree to the Subpoena's unilateral seven-day deadline for identifying designees and will not designate a witness unless the scope, conditions, and date of any deposition are resolved by written agreement or court order.

**Topic No. 1 - Engagements, scope, and teams for 2019 through 2025.** Crowe objects because the topic spans seven audits, is not limited to the Wain Matters, seeks confidential engagement and personnel information, and is disproportionate. Crowe does not concede the Subpoena's assumptions concerning engagement years or teams. No deposition is warranted regarding broad engagement history that can be established, if relevant at all, through CBT or limited documents.

**Topics Nos. 2 through 6 - Audit procedures, attorney inquiries, management representations, subsequent events, and disclosure evaluations.** Crowe objects because these topics seek proprietary audit methods and professional judgments, presume extensive Wain-specific procedures that Crowe has not identified, duplicate documents and information obtainable from CBT and counsel, and improperly attempt to conscript Crowe as an unpaid accounting expert. Crowe will not provide testimony interpreting AU-C sections, reconstructing audit judgments, offering hindsight critiques, or opining on legal merits, materiality outside the audit context, disclosure obligations, damages, or case outcomes.

**Topic No. 7 - Communications.** Crowe incorporates its objections to Document Request No. 6. The topic is unlimited as to custodians and sweeps in internal deliberations, unrelated confidential information, and post-Subpoena attorney-client and work-product communications. External communications are available from CBT or its counsel. Crowe will not prepare a corporate representative to testify regarding all internal and external communications over seven years.

**Topics Nos. 8 and 9 - Retention, workpaper locations, custodians, and personnel knowledge.** Crowe objects because these topics seek discovery about discovery, proprietary records-management and information-security practices, privileged preservation and collection activities, and personnel information without a predicate showing of spoliation, noncompliance, or unique relevant evidence. Crowe will not provide testimony concerning legal holds, counsel's instructions, search methodology, internal systems, custodian locations, or personal information. Nor will Crowe identify or offer individual employees for direct examination.

## IV. CONCLUSION

For the foregoing reasons, Crowe objects to the Subpoena in its entirety. Absent written agreement or a court order resolving these objections, Crowe will not produce documents or designate a witness under the Subpoena as drafted. Nothing in this letter concedes waiver; Crowe specifically preserves privilege, work product, and the protections of Rules 26(c), 45(c), 45(d)(1), and 45(d)(3).

Crowe remains willing to meet and confer without waiver. Any potential accommodation would require, at minimum: (a) completion of discovery from CBT, its counsel, and public sources, followed by identification of a