A No.
Q Okay. Again, my question is: Why did you wait until after the -- the foreclosure auction was February 6, 2021. Why did you wait two and a half years -- or two years?
A Again, because it was the responsibility of the senior lienholder to file that order of distribution. When Newrez took no action, the master commissioner informed the bank that he would allow us to file the order of distribution so he did not have to escheat the money to the State. And it -- it explains it in that document that you last showed me.
Q So do you think you needed the master commissioner's permission to file that motion for distribution?
A Oh, yes.
Q Did not need his permission?
A No, we did need his permission. We implored him -- our attorneys implored him several times to allow us to do that, and due to rules of order, we were not allowed to do that.
Q So you couldn't file the motion for distribution without the master commissioner's permission?

Q Did I ask you a question -- is it -- was it over a hundred --
A I don't -- I don't recall if it was 2,000 or 200,000. I do not recall.
Q Who would know that at Central Bank?
A I don't know.
Q But you would not be advised of the legal fees?
A Yes. But -- of course, I would. But I don't know how much was spent on the Wains. I may have known that at the time, but I do not recall.
Q Where would that be recorded at Central Bank?
A I don't know if the financial planning department would have -- they would know what we spent in legal fees yearly, monthly, or however they tracked it. But I'm not sure they could split it down to how much was spent on the Wains.
Q After the March 14, 2024, distribution, there was a letter from Mr. Wiseman regarding a debtors' exam.
Who authorized the letter to be sent by Tim Wiseman?
MR. WISEMAN: Objection as to privileged information.

BY MR. WAIN:
Q Who at Central Bank authorized the debtors' exam? I'll leave him out.
A That would have been me.
Q Again, and that would be through Paul Thornsberry or the loan watch committee -- watch loan committee?
A They would have been informed of that action.
Q So there was no disapproval?
A No.
Q That letter went out in March, and you retired at the end of April. So what do you remember about the process regarding the debtors' exam?
A I really don't recall anything.
Q Did you -- did you know who was to be present at the debtors' exam?
A I do not recall.
Q What can you recall about the debtors' exam?
A I know that we -- we, the bank, requested through the law firm to conduct a debtors' exam.
Q But you don't know who is going to attend and -- or who was going to be hired for the

debtors' exam?
A I may have known at one point. I do not recall.
Q Is that recorded somewhere at Central Bank?
A Not that I know of. I don't -- I do not know.
MR. WAIN: I just want to state something for the record, for you, Ms. Court Reporter -- I mean madam Court Reporter. I need to enter this into the record: I reserve the right to reopen if documents Central Bank has not yet produced come to light.
That is my statement.
BY MR. WAIN:
Q While you were at Central Bank, was there anyone who knew more about the Wain account than you did?
A I don't know how much other people knew, so I don't know how I could answer that question. I'm not in the minds of other people.
Q So it's possible, then, that other people knew as much as you did about the Wain account?
A I have no idea.
Q You don't know if it's possible?

A I have no idea.
Q Okay. Is there anything you told me today that you want to correct or add?
A No.
Q Have you answered all my questions truthfully and completely?
A Yes.
MR. WAIN: Mr. Wiseman, do you have some questions?
MR. WISEMAN: Can we go off the record for five minutes? I might have some, but might not.
MR. WAIN: Okay. Five minutes. We're going off record.
(A brief recess was taken.)
MR. WISEMAN: All right.
MR. WAIN: Let's go back on the record.
Go ahead.
MR. WISEMAN: Tim Wiseman here.
I have just a few questions, Mr. Hall.

DIRECT EXAMINATION

BY MR. WISEMAN:
Q Would the head of Central Bank's special assets department be the best source of information about accounts like the Wains'?
A Yes.

Q And that person was you when the bank obtained the proceeds of the foreclosure sale of the Wains' house, correct?
A Yes.
Q And there's been discussion about some higher-up people in the bank today like Luther Deaton. He would have no information firsthand about the Wains, correct?
A Correct.
MR. WISEMAN: That's all I have.
MR. WAIN: I think we're done, Madam Court Reporter.
THE COURT REPORTER: Okay.
MR. WISEMAN: Thank you.
MR. WAIN: Thank you.
(The deposition was concluded at 2:35 p.m.)

* * *

C E R T I F I C A T E

COMMONWEALTH OF KENTUCKY )
) SS:
COUNTY OF KENTON )

I, April L. Crites, RPR, RMR, CRR, CSR, CCR, and a Notary Public within and for the Commonwealth of Kentucky, duly commissioned and qualified, DO HEREBY CERTIFY:

That the above-named STEVEN DENNIS HALL was by me first duly sworn to testify the truth, the whole truth, and nothing but the truth;

That said testimony was reduced to writing by me stenographically in the presence of the witness and thereafter reduced to typewriting, and;

I FURTHER CERTIFY that I am not a relative or attorney of either party, in any manner interested in the event of this action, nor am I, or the court reporting firm with which I am affiliated, under a contract as defined in Civil Rule 28(D).

IN WITNESS WHEREOF, I hereunto set my hand and official seal of office at Covington, Kentucky, this 31st of August, 2026.

I, April L. Crites, a Kentucky Notary Public - State at Large - No. KYNP13794, for acts performed in or outside Kentucky for recordation in Kentucky; my commission expires: August 25, 2028.



__________________________________________

April L. Crites, RPR, RMR, CRR, CSR, CCR

* * *

# EXHIBIT Z

Reporter’s Transcript of Proceedings re Nonappearance of Crowe LLP, August 24, 2026, with Crowe Exs. 1–7

Reporter’s Transcript (12 pp.) with Crowe Exhibits 1–7 (subpoena and proof of service; Crowe objections 8/10/2026; Wain response 8/11/2026; Falkenberg emails 8/21–22/2026)

Wain v. Central Bank & Trust Co., Adv. Proc. No. 1:25-ap-01026-MB

Declaration of Douglas A. Wain ISO Opposition to Motion to Quash (Doc. 76)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SAN FERNANDO VALLEY DIVISION

- - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Civil Action No. 1:24-bk-11814-MB |
| DOUGLAS ALAN WAIN and ELISA WAIN, | : | Chapter 13 |
| | : | |
| Debtors. | : | |
| DOUGLAS ALAN WAIN and ELISA WAIN, | : | Adversary Proceeding No. |
| | : | 1:25-ap-01026-MB |
| Plaintiffs, | : | |
| v. | : | |
| CENTRAL BANK & TRUST CO., et al., | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - x

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RE: NONAPPEARANCE OF

CROWE LLP

4801 OLYMPIA PARK PLAZA

SUITE 4000

LOUISVILLE, KENTUCKY 40241-2098

Monday, August 24, 2026

9:40 a.m. PDT

Pages: 1 - 12

Reported By: April L. Crites, RMR, CRR, CSR, CCR

Notary Public, Commonwealth of Kentucky

* * *

Pursuant to subpoena, and pursuant to the
Federal Rules of Civil Procedure,
before April L. Crites, RMR, CRR, CSR, CCR,
and Notary Public in and for the
Commonwealth of Kentucky.

* * *

# I N D E X

## EXHIBITS

| MARKED | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Subpoena to Testify at a Deposition in a Bankruptcy Case (or Adversary Proceedings), with Attachment A, to Crowe LLP | 7 |
| Exhibit 2 | Crowe letter dated August 10, 2026, Re: Crowe LLP's Objections to Subpoena to Testify at a Deposition and to Produce Documents | 7 |
| Exhibit 3 | Wains' August 11, 2026, letter to John C. Doyle, Esq., Re: Crowe LLP's August 10, 2026, Objections to Plaintiffs' Rule 45 Subpoena | 7 |
| Exhibit 4 | August 21, 2026, e-mail from Tom Falkenberg, FW: Wain v. Central Bank Subpoena to Crowe, to douglaswain@gmail.com | 8 |
| Exhibit 5 | E-mail chain, Subject: FW: Wain v. Central Bank Subpoena to Crowe, dated August 21, 2026 | 8 |
| Exhibit 6 | E-mail chain, Subject: FW: Wain v. Central Bank Subpoena to Crowe, last dated August 22, 2026, from Tom Falkenberg to douglaswain@gmail.com | 8 |

| | | |
|---|---|---|
| Exhibit 7 | E-mail chain, Subject: FW: Wain v. Central Bank Subpoena to Crowe, last dated August 22, 2026, from douglaswain@gmail.com to Tom Falkenberg | 9 |

* * *

# APPEARANCES

ON BEHALF OF THE PLAINTIFFS, DOUGLAS A. WAIN and ELISA WAIN (pro per):

Douglas Alan Wain
Post Office Box 7473
Westlake Village, California 91359
859-494-3677
douglaswain@gmail.com

* * *

MR. WAIN: Good morning. Today is Monday, August 24, 2026. The time is 9:40 a.m. Pacific.

This is a properly noticed Rule 30(b)(6) deposition of Crowe LLP in *Wain v. Central Bank & Trust,* adversary proceeding number 1:25-ap-01026-MB in the United States Bankruptcy Court, Central District of California.

I am Douglas A. Wain, plaintiff, appearing pro per.

The court reporter, April L. Crites, a notary public authorized to administer oaths, is present.

The Zoom session opened at 9:00 a.m., as noticed, and has remained open and functional.

For the record, on July 9, 2026, plaintiffs issued a subpoena to Crowe LLP to testify at a Rule 30(b)(6) deposition, and to produce documents. The subpoena was delivered to Crowe's Louisville, Kentucky, office on July 15, 2026, with the statutory witness. It commanded production of documents by August 10, 2026, and designated today, August 24, 2026, at 9:00 a.m. Pacific, for the remote deposition.

I have marked as Exhibit 1 the subpoena with its Attachment A, which includes the proof of

service.

(Plaintiffs' Exhibit 1, Subpoena to Testify at a Deposition in a Bankruptcy Case (or Adversary Proceedings), with Attachment A, to Crowe LLP, was marked and presented for purposes of identification.)

MR. WAIN: On August 10, 2026, Crowe served written objections through counsel but sought no relief from any court.

I have seven exhibits total, which I will now detail:

Exhibit 1 is, again, the subpoena to Crowe with Attachment A and proof of service.

Exhibit 2 is Crowe's objections of August 10, 2026, to Wains' subpoena.

(Plaintiffs' Exhibit 2, Crowe letter dated August 10, 2026, Re: Crowe LLP's Objections to Subpoena to Testify at a Deposition and to Produce Documents, was marked and presented for purposes of identification.)

MR. WAIN: Exhibit 3 is plaintiffs' response to Crowe LLP objections to plaintiffs' Rule 45 subpoena. That was on August 11, 2026.

(Plaintiffs' Exhibit 3, Wains' August 11, 2026, letter to John C. Doyle, Esq., Re: Crowe

LLP's August 10, 2026, Objections to Plaintiffs' Rule 45 Subpoena, was marked and presented for purposes of identification.)

MR. WAIN: Exhibit 4 is Crowe/Falkenberg's e-mail to Wains on August 21, 2026.

(Plaintiffs' Exhibit 4, August 21, 2026, e-mail from Tom Falkenberg, FW: Wain v. Central Bank Subpoena to Crowe, to douglaswain@gmail.com, was marked and presented for purposes of identification.)

MR. WAIN: Exhibit 5 is the Wains' e-mails to Crowe/Falkenberg, also on August 21, 2026.

(Plaintiffs' Exhibit 5, E-mail chain, Subject: FW: Wain v. Central Bank Subpoena to Crowe, dated August 21, 2026, was marked and presented for purposes of identification.)

MR. WAIN: Exhibit 6 is Crowe's/ Falkengerg's e-mail to Wains on August 22, 2026.

(Plaintiffs' Exhibit 6, E-mail chain, Subject: FW: Wain v. Central Bank Subpoena to Crowe, last dated August 22, 2026, from Tom Falkenberg to douglaswain@gmail.com, was marked and presented for purposes of identification.)

MR. WAIN: And Exhibit 7, the final exhibit, is Wains' e-mail to Falkenberg/Crowe,

also on August 22, 2026.

(Plaintiffs' Exhibit 7, E-mail chain, Subject: FW: Wain v. Central Bank Subpoena to Crowe, last dated August 22, 2026, from douglaswain@gmail.com to Tom Falkenberg, was marked and presented for purposes of identification.)

MR. WAIN: So on August 11, 2026, plaintiffs responded in writing that the objections do not excuse attendance and that a deposition stands absent a court order or written agreement.

The parties met and conferred on August 19, 2026, without resolution.

On August 21, 2026, Attorney Thomas Falkenberg appeared as counsel for Crowe, stated in writing, quote, We will not be producing the witness, unquote.

The plaintiffs, same day, advised that the deposition would proceed as noticed.

As of 8:46 a.m. Pacific time, no witness, designee, or counsel for Crowe LLP has appeared. Crowe has filed no motion to quash or modify the subpoena and has sought no protective order and has obtained no order excusing its appearance from

any court.

The record will reflect Crowe LLP's failure to appear for its properly noticed deposition. Plaintiffs reserve all rights and remedies, including contempt under Rule 45(g), and/or cover the expenses of this session.

Madam Reporter, please prepare a certificate of nonappearance and attach Exhibits 1 through 7.

We are adjourned.

The time is 9:47 a.m. Pacific time., and we are going off the record.

(The deposition was concluded at 12:47 p.m.)

* * *

C E R T I F I C A T E OF R E P O R T E R

I, April L. Crites, a Notary Public in and for the Commonwealth of Kentucky, do hereby declare:

That pursuant to the notice of Douglas Alan Wain and Elisa Wain, appearing pro per, I did appear remotely by teleconference (Zoom), on the 24th day of August, 2026, for the purpose of placing under oath and reporting the deposition of Crowe LLP;

That there were present: Douglas Alan Wain;

That the above person, including the reporter, remained at the location indicated above until 9:47 a.m. Pacific time, by which time the aforementioned witness had not appeared for the purpose of having their deposition taken.

I do further certify that I am a disinterested person and am in no way interested in the outcome of this action or connected with or related to any of the parties in this action or to their respective counsel.

In witness whereof, I have subscribed my name on 24th day of August, 2026.

_________________________________________________

April L. Crites, RMR, CRR, CSR, CCR
Kentucky Notary Public No. KYNP13794
My commission expires: August 25, 2028

* * *

EXHIBIT
1
8/24/26 ALC

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Central District of California

In re Douglas Alan Wain and Elisa Wain
Debtor

Case No. 1:24-bk-11814-MB

*(Complete if issued in an adversary proceeding)*

Chapter 13

Douglas Alan Wain and Elisa Wain,
Plaintiff
v.
Central Bank and Trust, Co.
Defendant

Adv. Proc. No. 1:25-ap-01026-MB

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Crowe LLP, 4801 Olympia Park Plaza, Suite 4000, Louisville, Kentucky 40241-2098
*(Name of person to whom the subpoena is directed)*

☑ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE | DATE AND TIME |
|---|---|
| Remote deposition by videoconference (Zoom). Log-in credentials to be provided by Plaintiffs to the witness in advance of the deposition. | August 24, 2026, at 9:00 a.m. Pacific Time |

The deposition will be recorded by this method: Stenographic (by a certified court reporter).

☒ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See attached Attachment A (Matters for Examination and Documents).

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: July 9, 2026

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

OR

N/A
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Douglas Alan Wain and Elisa Wain, who issues or requests this subpoena, are:
N/A; Plaintiffs are self-represented.

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# ATTACHMENT A TO SUBPOENA TO TESTIFY AT A DEPOSITION AND TO PRODUCE DOCUMENTS

(Fed. R. Civ. P. 45 and 30(b)(6); Fed. R. Bankr. P. 9016)

Case: Wain v. Central Bank & Trust Co., et al., Adv. Proc. No. 1:25-ap-01026-MB
Court: United States Bankruptcy Court, Central District of California (San Fernando Valley Division)
Related Bankruptcy Case: In re Wain, No. 1:24-bk-11814-MB (Chapter 13)
Judge: Hon. Martin R. Barash

**Entity Commanded:** Crowe LLP, by and through its Louisville, Kentucky office or its registered agent for service of process in Kentucky.

**Definitions.** "CBT" means Central Bank & Trust Co. and its parent Central Bancshares, Inc. "The Wain Matters" means, collectively: (a) the foreclosure action styled Central Bank & Trust Co. v. Wain, et al., Fayette Circuit Court (Kentucky) Case No. 19-CI-00812; (b) the action styled Wain v. Central Bank & Trust Co. et al., Civil Action No. 5:23-cv-00139-REW-MAS (E.D. Ky.); (c) In re Wain, Bankruptcy Case No. 1:24-bk-11814-MB (Bankr. C.D. Cal.), including CBT's Proof of Claim No. 19 in the asserted amount of $357,990.91; (d) the above-captioned adversary proceeding; and (e) any other litigation, claim, or collection activity involving CBT and Douglas Wain or Elisa Wain. "Document" has the broadest meaning permitted under Fed. R. Civ. P. 34 and includes electronically stored information.

## I. DEPOSITION TESTIMONY (Fed. R. Civ. P. 30(b)(6))

**Date and Time:** Monday, August 24, 2026, commencing at 9:00 a.m. Pacific Time / 12:00 p.m. Eastern Time, and continuing until completed, subject to the seven-hour limit of Fed. R. Civ. P. 30(d)(1).

**Place:** By remote videoconference (Zoom or comparable platform) pursuant to Fed. R. Civ. P. 30(b)(4). The designee(s) may appear from any location convenient to the witness, including Crowe LLP's offices in or near Louisville, Kentucky. Connection information will be provided by the court reporter in advance. This arrangement complies with Fed. R. Civ. P. 45(c)(1), as no travel is required.

**Method of Recording:** Stenographic means before an officer authorized to administer oaths; the deposition may additionally be recorded by audio and audiovisual means pursuant to Fed. R. Civ. P. 30(b)(3).

**Designation:** Pursuant to Fed. R. Civ. P. 30(b)(6), Crowe LLP must designate one or more officers, partners, managing agents, or other persons who consent to testify on its behalf, and must prepare each designee to testify about information known or reasonably available to the organization concerning the following matters for examination. Plaintiffs request that Crowe LLP

identify each designee, and the matters on which each will testify, at least seven (7) days before the deposition, and Plaintiffs are prepared to confer in good faith regarding the matters for examination.

**Matters for Examination:**

**1.** Crowe LLP's engagements to audit the consolidated financial statements of Central Bancshares, Inc. and Central Bank & Trust Co. (collectively, "CBT") for fiscal years 2019 through 2025, including the scope of each engagement and the identity of engagement partners and managers.

**2.** Audit procedures performed in each such fiscal year with respect to loss contingencies, litigation, claims, and assessments concerning the Wain Matters (defined below), including procedures under AU-C Section 501 and related standards.

**3.** Attorney audit-inquiry letters (including letters requested under the American Bar Association Statement of Policy) sent in connection with each such audit, and the responses received from CBT's counsel, to the extent they concern the Wain Matters.

**4.** Management representation letters provided by CBT to Crowe LLP for fiscal years 2019 through 2025, to the extent they address litigation, claims, assessments, or loss contingencies concerning the Wain Matters.

**5.** Subsequent-events review procedures under AU-C Section 560 for each such fiscal year, to the extent they concern the Wain Matters.

**6.** The basis for, and Crowe LLP's evaluation of, the disclosure appearing in the notes to CBT's audited consolidated financial statements for fiscal years 2019 through 2025 concerning legal proceedings and loss contingencies, including any statement that pending or threatened litigation would have no material effect on CBT's financial statements, as that disclosure relates to the Wain Matters.

**7.** Communications between Crowe LLP and CBT (including CBT's officers, directors, employees, and counsel) concerning the Wain Matters during fiscal years 2019 through 2025.

**8.** Crowe LLP's workpaper retention policies applicable to the CBT engagements, and the existence, location, and custodians of workpapers responsive to the document requests below.

**9.** The identity of Crowe LLP personnel with knowledge of the foregoing subjects.

**II. DOCUMENTS TO BE PRODUCED (Fed. R. Civ. P. 45(a)(1)(A)(iii))**

**Production Date and Method:** On or before Monday, August 10, 2026, by electronic delivery (email or secure file-transfer link) to douglaswain@gmail.com, or by mail to Douglas Wain and Elisa Wain, P.O. Box 7473, Westlake Village, CA 91359. Electronic or mailed production is expressly permitted and requires no travel or personal appearance. Fed. R. Civ. P. 45(d)(2)(A).

**Documents Requested (limited in each instance to the CBT engagements and, where indicated, to the Wain Matters):**

**1.** Engagement letters between Crowe LLP and Central Bancshares, Inc. or Central Bank & Trust Co. for the audits of fiscal years 2019 through 2025.

**2.** Audit workpapers for fiscal years 2019 through 2025 concerning loss contingencies, litigation, claims, or assessments relating to the Wain Matters, including risk assessments, litigation summaries, and related analyses.

**3.** Attorney audit-inquiry letters and all responses thereto (including responses from Stoll Keenon Ogden PLLC, Fowler Bell PLLC, Dentons Bingham Greenebaum LLP, Frost Brown Todd LLC, Haight Brown & Bonesteel LLP, or any other counsel for CBT) for fiscal years 2019 through 2025, to the extent they refer or relate to the Wain Matters.

**4.** Management representation letters provided by CBT to Crowe LLP for fiscal years 2019 through 2025, to the extent they address litigation, claims, assessments, or loss contingencies.

**5.** Workpapers and memoranda reflecting subsequent-events review under AU-C Section 560 for fiscal years 2019 through 2025, to the extent they refer or relate to the Wain Matters.

**6.** Communications (including correspondence, email, and meeting notes) between Crowe LLP and CBT, or between Crowe LLP personnel internally, referring or relating to the Wain Matters, for the period January 1, 2019 through the present.

**7.** Drafts and final versions of the notes to CBT's audited consolidated financial statements for fiscal years 2019 through 2025 concerning commitments, contingencies, or legal proceedings, together with workpapers supporting those disclosures, to the extent they refer or relate to the Wain Matters.

**8.** Documents sufficient to identify the Crowe LLP engagement team (partners, managers, and staff) for each of the fiscal year 2019 through 2025 CBT audits.

## III. PRIVILEGE, CONFIDENTIALITY, AND SCOPE

If any responsive document is withheld under a claim of privilege or protection, Crowe LLP is requested to expressly make the claim and describe the nature of the withheld documents in a manner that will enable the parties to assess the claim, in accordance with Fed. R. Civ. P. 45(e)(2)(A).

This subpoena is limited to Crowe LLP's engagements for CBT and does not seek information concerning any other Crowe LLP client. Plaintiffs will cooperate in good faith regarding reasonable confidentiality protections, including a stipulated protective order if requested, and will take reasonable steps to avoid imposing undue burden or expense in accordance with Fed. R. Civ. P. 45(d)(1).

Witness Protections. The witness's attention is directed to Fed. R. Civ. P. 45(d) and (e), reproduced on the subpoena form, regarding protections available to persons subject to subpoenas and the duties in responding. The statutory witness fee and mileage allowance under 28 U.S.C. § 1821 are tendered with service of this subpoena.

Issued at the request of:
Douglas Wain and Elisa Wain, Plaintiffs, Pro Per
P.O. Box 7473, Westlake Village, CA 91359
Telephone: (859) 494-3677 | Email: douglaswain@gmail.com

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: Crowe LLP
on *(date)* 07/14/2026 .

☒ I served the subpoena by delivering a copy to the named person as follows: Reed Campana, Manager, authorized to accept, by delivery at 4801 Olympia Park Plaza, Suite 4000, Louisville, KY 40241
on *(date)* 07/15/2026 ; or

☐ I returned the subpoena unexecuted because: ______________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ ______________ .

My fees are $ ________ for travel and $________ for services, for a total of $________ .

I declare under penalty of perjury that this information is true and correct.

Date: 07/15/2026

*Server's signature*

Jonathan Hessig, Process Server
*Printed name and title*

17001 Epson Ct. #1, Louisville, KY 40245
*Server's address*

Additional information concerning attempted service, etc.:

Crowe

**Crowe LLP**
Independent Member Crowe Global

One Mid America Plaza, Suite 600
Oakbrook Terrace, Illinois 60181-4705
Tel +1 630 574 7878
Fax +1 630 574 1608
www.crowe.com

EXHIBIT
2
8/24/26 ALC

August 10, 2026

**BY E-MAIL**

Douglas Wain and Elisa Wain (douglaswain@gmail.com)
P.O. Box 7473
Westlake Village, CA 91359
859-494-3677

**Re:** ***Wain v. Central Bank & Trust Co., et al.,*** Adv. Proc. No. 1:25-ap-01026-MB
(U.S. Bankr. Ct., C.D. Cal.)
**Crowe LLP's Objections to Subpoena to Testify at a Deposition and to Produce Documents**

Dear Mr. Wain and Ms. Wain:

I represent Crowe LLP ("Crowe"). This letter states Crowe's objections to the Subpoena to Testify at a Deposition in a Bankruptcy Case (or Adversary Proceeding) issued on July 9, 2026 (the "Subpoena") in the above-referenced adversary proceeding (the "Proceeding"). A copy of the Subpoena was delivered to Crowe's Louisville, Kentucky office on July 15, 2026. Crowe does not concede that delivery constituted valid service, and Crowe does not waive any objection to service, jurisdiction, enforceability, place of compliance, or any other procedural requirement. The Subpoena commanded document production on August 10, 2026 and purports to require a remote Rule 30(b)(6) deposition on August 24, 2026 at 9:00 a.m. Pacific Time. These objections apply to both the document demands and every proposed matter for examination.

Crowe is a nonparty independent accounting firm. Its role for Central Bancshares, Inc. and Central Bank & Trust Co. (collectively, and solely for convenience, "CBT") was that of an independent financial-statement auditor. Crowe did not participate in the lending, foreclosure, collection, bankruptcy, or litigation events involving you; did not serve as a forensic accountant, litigation consultant, investigator, or expert concerning those events; and has no first-hand knowledge of their merits. Audit procedures concerning litigation and loss contingencies are performed for the limited purpose of supporting an audit opinion on financial statements, including consideration of whether a matter could cause a material misstatement. They are not designed to determine legal liability, adjudicate claims, calculate litigation damages, or create a complete record of a client's disputes.

Crowe states the following threshold, general, and specific objections under Federal Rules of Civil Procedure 26, 30, and 45, as incorporated by Federal Rules of Bankruptcy Procedure 7026, 7030, and 9016. Each objection applies independently and cumulatively to every document request and deposition topic. Specific objections do not limit the general objections, and the identification of one defect does not waive any other objection. These objections are asserted without conceding that any objection has been waived and in addition to Crowe's right to seek a protective order or to quash or modify the Subpoena.

## I. THRESHOLD AND GENERAL OBJECTIONS

1. **Procedural prerequisites; service; place, manner, and date of compliance.** The materials delivered to Crowe do not establish compliance with Rule 45(a)(4)'s prior-notice requirement, notice of the deposition to all parties under Rule 30(b)(1), valid service on an authorized recipient and proper tender under Rule 45(b), or a Rule 45(c)-compliant place of production. The production command directs electronic or mailed delivery to Plaintiffs in California and identifies no physical place satisfying Rule 45(c)(2)(A). Crowe has not stipulated to a remote deposition, the Subpoena identifies no order authorizing remote means under Rule 30(b)(4), and Crowe did not agree to the unilaterally selected date and time. In addition, Plaintiffs have not conferred with Crowe concerning the proposed Rule 30(b)(6) topics as Rule 30(b)(6) requires. Crowe

Crowe

**Crowe LLP**
Independent Member Crowe Global

One Mid America Plaza, Suite 600
Oakbrook Terrace, Illinois 60181-4705
Tel +1 630 574 7878
Fax +1 630 574 1608
www.crowe.com

preserves all objections based on these defects, as well as any defect in issuance, notice, service, tender, proof of service, jurisdiction, or enforcement.

2. **Nonparty burden, proportionality, and more appropriate sources.** Rule 45(d)(1) requires the issuing party to take reasonable steps to avoid imposing undue burden or expense on a nonparty, and Rules 26(b)(1), 26(b)(2)(C), and 45(d)(3) require discovery to be relevant, proportional, nonduplicative, and obtainable through the least burdensome source. The Subpoena instead seeks seven years of engagements, workpapers, correspondence, audit judgments, and personnel information through eight document requests and nine corporate deposition topics. The broadly defined "Wain Matters" include not only specified cases but "any other litigation, claim, or collection activity" involving CBT and the Wains. The relevant underlying facts, communications, pleadings, legal assessments, financial statements, and client-created records are available from CBT, CBT's present and former counsel, the parties to the identified proceedings, and public court dockets. Plaintiffs have not demonstrated that they first exhausted those more direct sources or identified any discrete evidentiary gap that only Crowe can fill. Crowe objects to duplicative merits discovery from a nonparty auditor and to any deposition unless and until Plaintiffs complete source discovery and identify a narrow, specific, nonduplicative factual need.

3. **No unique merits information; improper premise and use.** The Subpoena assumes, without foundation, that Crowe conducted matter-specific audit procedures, made independent legal assessments, or generated analyses concerning the Wain Matters over multiple audit years. Crowe's present understanding does not support that premise. Crowe objects to discovery that would invite an inaccurate or misleading characterization of the purpose, scope, or significance of its audit work.

4. **Confidential client information and proprietary audit materials.** Crowe's audit files contain confidential client and third-party information and Crowe's proprietary methodologies, risk assessments, materiality judgments, sampling approaches, quality-control information, and internal professional deliberations. KRS 325.420 provides that, subject to specified exceptions, an accountant's working papers and memoranda are the accountant's property. KRS 325.440 and ET section 1.700.001 of the AICPA Code of Professional Conduct restrict voluntary disclosure of confidential client information while recognizing compliance with a validly issued and enforceable subpoena. The requested materials also include confidential commercial information protectable under Rules 26(c) and 45(d)(3)(B)(i) and Bankruptcy Rule 9018. The Subpoena also directs delivery to Plaintiffs' personal Gmail account without any agreed secure-transfer, encryption, access-control, or data-destruction protocol. Crowe will not transmit confidential client information or proprietary audit materials through that channel or produce them absent a valid, narrowly tailored obligation and an appropriate court-entered protective order.

5. **Privilege, work product, and express restrictions on audit-response materials.** Crowe objects to any request or topic that seeks or would reveal attorney-client communications, attorney work product, common-interest or joint-defense material, legal advice to Crowe, or communications and materials created in anticipation of or in response to the Subpoena. Any outside-counsel audit response in Crowe's files was furnished for the limited purpose of the financial-statement audit, subject to express restrictions against third-party use or dissemination and express preservation of the client's and counsel's privilege and work-product positions. CBT and its counsel are the appropriate sources and privilege holders and must receive notice and a meaningful opportunity to assert their rights before any disclosure. Crowe does not waive, and cannot waive on behalf of others, any privilege or protection. If any production were later required, it would be conditioned on a Federal Rule of Evidence 502(d) nonwaiver order, a robust clawback protocol, and a privilege-log process proportionate to the narrowed scope. Crowe will not prepare a document-by-document log of communications with its counsel concerning the Subpoena; any log or categorical description must be

**Crowe LLP**
Independent Member Crowe Global
One Mid America Plaza, Suite 600
Oakbrook Terrace, Illinois 60181-4705
Tel +1 630 574 7878
Fax +1 630 574 1608
www.crowe.com

proportionate to a properly narrowed demand and must not reveal privileged content. Nothing in this letter discloses or waives the nature, scope, or results of counsel's privileged investigation or legal advice.

6. **Improper attempt to obtain unretained expert opinions and reconstruct professional judgments.** Topics 2 through 6, and related document requests, seek testimony about auditing standards, audit procedures, professional judgments, materiality, subsequent-events review, and Crowe's evaluation of financial-statement disclosures. To the extent Plaintiffs seek accounting opinions, after-the-fact analyses, critiques, or testimony beyond specific historical facts, the demands seek an unretained expert's opinions or information resulting from study not requested by Plaintiffs and are subject to Rule 45(d)(3)(B)(ii). Rule 30(b)(6) does not require Crowe to formulate new opinions, create analyses, reconstruct professional judgments years later, adopt Plaintiffs' characterizations, or educate Plaintiffs concerning generally accepted auditing standards. Crowe objects to testimony concerning legal conclusions, hypotheticals, the merits of the Wain Matters, or opinions on the adequacy of CBT's or Crowe's conduct.

7. **Electronically stored information, search burden, and form of production.** The Subpoena proposes no custodians, search terms, date limitations tied to a specific event, ESI protocol, deduplication method, or production format. A search for every internal and external communication over more than seven years would require identifying multiple engagement teams and custodians, searching active and archived systems, collecting and processing ESI, reviewing for privilege and confidentiality, and redacting unrelated client, bank-customer, personnel, and third-party information. Crowe objects to any enterprise-wide search; to collection from backup or disaster-recovery media, deleted data, system logs, personal devices, or sources not reasonably accessible; to production of duplicate copies, hidden data, or metadata not necessary to understand a document; and to any obligation to create a document, compilation, chronology, or analysis that does not already exist

8. **Costs and significant expense.** Crowe is a nonparty with no stake in the Proceeding. Rule 45(d)(2)(B)(ii) requires protection of a nonparty from significant expense resulting from compliance. Plaintiffs must bear and, upon request, advance Crowe's reasonable costs of any agreed or ordered collection, restoration, processing, hosting, review, redaction, privilege analysis, production, witness preparation, and deposition, including vendor and professional costs to the extent recoverable. Crowe objects to undertaking any such work without a written cost arrangement and advance funding.

9. **Overbreadth, vagueness, time period, and undefined scope.** The terms "concerning," "referring or relating to," "to the extent," "including," and "any other litigation, claim, or collection activity" do not provide objective boundaries and would require Crowe to speculate. The periods "fiscal years 2019 through 2025" and "January 1, 2019 through the present" are untethered to the allegations or any demonstrated need and improperly sweep in post-Subpoena legal-response communications.

10. **Personnel privacy, security, and no direct contact.** Requests for engagement-team identities, custodians, record locations, and retention practices implicate personnel privacy, proprietary records-management and information-security practices, and potential harassment of current or former personnel. Such information is not relevant to the merits absent a concrete discovery dispute. All communications concerning the Subpoena must be directed to undersigned counsel. Plaintiffs should not contact Crowe personnel directly. Crowe will not disclose personal contact information or internal system, security, preservation, collection, or legal-hold information.

**II. SPECIFIC OBJECTIONS TO DOCUMENT REQUESTS**

Crowe incorporates each threshold and general objection into each response below. Crowe's specific objections are not exhaustive and do not indicate that responsive documents exist.

**Crowe LLP**
Independent Member Crowe Global

One Mid America Plaza, Suite 600
Oakbrook Terrace, Illinois 60181-4705
Tel +1 630 574 7878
Fax +1 630 574 1608
www.crowe.com

**Document Request No. 1 - Engagement letters.** Crowe objects to the request for all engagement letters for fiscal years 2019 through 2025 because the agreements are not specific to the Wain Matters, contain confidential commercial terms, fees, scope limitations, risk allocations, and other proprietary information, and are available from CBT. The request is irrelevant, disproportionate, and broader than any asserted need. Crowe will not produce the engagement letters as requested.

**Document Request No. 2 - Audit workpapers concerning loss contingencies or the Wain Matters.** Crowe objects because the request seeks Crowe-owned, proprietary audit documentation and professional judgments; uses vague and expansive terms; assumes matter-specific work that Crowe has not identified; and would require review of multiple complete audit files for references to broad categories of litigation. Any limited Wain-related audit documentation is derivative of CBT or counsel information, may implicate privilege or work product, and does not supply unique merits evidence. The request also improperly seeks unretained expert information. Crowe will not produce audit workpapers as requested.

**Document Request No. 3 - Attorney audit-inquiry letters and responses.** Crowe objects because any such documents originated with CBT and its counsel, are more appropriately sought from those sources, were provided solely for audit purposes, and are subject to express use restrictions and asserted privilege and work-product protections. The request also names multiple law firms and seven audit years without a showing that each firm or year has any connection to the Proceeding. Crowe will not disclose counsel communications or audit responses absent consent of the privilege holders or an order resolving all privilege, work-product, confidentiality, use-restriction, and protective-order issues.

**Document Request No. 4 - Management representation letters.** The request is facially overbroad because, unlike the other requests, it seeks letters "to the extent they address litigation, claims, assessments, or loss contingencies" generally, not only the Wain Matters. It therefore reaches confidential information about unrelated disputes and third parties. The letters are CBT-created or CBT-signed documents available from CBT and are not unique Crowe evidence. Crowe will not produce them as requested.

**Document Request No. 5 - Subsequent-events workpapers.** Crowe objects because Crowe has not identified separate Wain-specific subsequent-events procedures beyond any ordinary-course audit documentation, and the request seeks proprietary audit methods, professional judgments, and unretained expert information. Any underlying event information is available from CBT, its counsel, and public records. Crowe will not produce subsequent-events workpapers as requested.

**Document Request No. 6 - Internal and external communications.** Crowe specifically objects to the demand for all communications among Crowe personnel or between Crowe and CBT, its officers, directors, employees, and counsel from January 1, 2019 "through the present." An all-custodian communications search over more than seven years is grossly disproportionate to the limited audit context identified above. External communications are equally or more readily available from CBT and its counsel. Internal Crowe communications would disclose proprietary audit methodologies, preliminary professional deliberations, quality-control information, personnel information, and material unrelated to the merits, while post-delivery communications concerning legal advice, preservation, collection, and response to the Subpoena are privileged and protected work product. Crowe will not conduct an enterprise-wide search or produce internal or external communications under this request.

**Document Request No. 7 - Financial-statement disclosures and supporting workpapers.** Final audited financial statements are available from CBT and, to the extent filed or published, from public sources. Drafts, comments, and supporting workpapers contain proprietary audit judgments, confidential information unrelated to the Wain Matters, and potential unretained expert material. The request is cumulative and disproportionate. Crowe will not produce drafts or supporting workpapers as requested.

**Crowe LLP**
Independent Member Crowe Global

One Mid America Plaza, Suite 600
Oakbrook Terrace, Illinois 60181-4705
Tel +1 630 574 7878
Fax +1 630 574 1608
www.crowe.com

**Document Request No. 8 - Engagement-team identification.** Crowe objects because the request is not relevant to the merits, invades personnel privacy, creates a risk of direct contact or harassment, and is disproportionate absent a properly narrowed deposition need. The phrase "documents sufficient to identify" is also vague and could reach confidential staffing, scheduling, time, and human-resources records. Plaintiffs must direct all communications concerning Crowe or its personnel to undersigned counsel. Crowe will not produce personnel-identification documents as requested.

## III. SPECIFIC OBJECTIONS TO DEPOSITION TOPICS

Crowe incorporates each threshold, general, and document-specific objection into every proposed matter for examination. Crowe does not agree to the Subpoena's unilateral seven-day deadline for identifying designees and will not designate a witness unless the scope, conditions, and date of any deposition are resolved by written agreement or court order.

**Topic No. 1 - Engagements, scope, and teams for 2019 through 2025.** Crowe objects because the topic spans seven audits, is not limited to the Wain Matters, seeks confidential engagement and personnel information, and is disproportionate. Crowe does not concede the Subpoena's assumptions concerning engagement years or teams. No deposition is warranted regarding broad engagement history that can be established, if relevant at all, through CBT or limited documents.

**Topics Nos. 2 through 6 - Audit procedures, attorney inquiries, management representations, subsequent events, and disclosure evaluations.** Crowe objects because these topics seek proprietary audit methods and professional judgments, presume extensive Wain-specific procedures that Crowe has not identified, duplicate documents and information obtainable from CBT and counsel, and improperly attempt to conscript Crowe as an unpaid accounting expert. Crowe will not provide testimony interpreting AU-C sections, reconstructing audit judgments, offering hindsight critiques, or opining on legal merits, materiality outside the audit context, disclosure obligations, damages, or case outcomes.

**Topic No. 7 - Communications.** Crowe incorporates its objections to Document Request No. 6. The topic is unlimited as to custodians and sweeps in internal deliberations, unrelated confidential information, and post-Subpoena attorney-client and work-product communications. External communications are available from CBT or its counsel. Crowe will not prepare a corporate representative to testify regarding all internal and external communications over seven years.

**Topics Nos. 8 and 9 - Retention, workpaper locations, custodians, and personnel knowledge.** Crowe objects because these topics seek discovery about discovery, proprietary records-management and information-security practices, privileged preservation and collection activities, and personnel information without a predicate showing of spoliation, noncompliance, or unique relevant evidence. Crowe will not provide testimony concerning legal holds, counsel's instructions, search methodology, internal systems, custodian locations, or personal information. Nor will Crowe identify or offer individual employees for direct examination.

## IV. CONCLUSION

For the foregoing reasons, Crowe objects to the Subpoena in its entirety. Absent written agreement or a court order resolving these objections, Crowe will not produce documents or designate a witness under the Subpoena as drafted. Nothing in this letter concedes waiver; Crowe specifically preserves privilege, work product, and the protections of Rules 26(c), 45(c), 45(d)(1), and 45(d)(3).

Crowe remains willing to meet and confer without waiver. Any potential accommodation would require, at minimum: (a) completion of discovery from CBT, its counsel, and public sources, followed by identification of a

Crowe

**Crowe LLP**
Independent Member Crowe Global

One Mid America Plaza, Suite 600
Oakbrook Terrace, Illinois 60181-4705
Tel +1 630 574 7878
Fax +1 630 574 1608
www.crowe.com

specific, nonduplicative evidentiary gap; (b) written narrowing to discrete, genuinely Wain-specific materials from a defined period, excluding internal Crowe communications, proprietary methodologies, unrelated matters, post-Subpoena materials, and privileged or protected information; (c) a court-entered protective order providing litigation-only use, restrictions on dissemination and public filing, return or destruction, notice to affected privilege holders, and protection under Federal Rule of Evidence 502(d); (d) a written agreement requiring Plaintiffs to advance and bear Crowe's reasonable compliance costs; and (e) if a deposition remains demonstrably necessary, one mutually agreeable designee, a mutually agreeable date and location, no more than three hours of on-the-record testimony, stenographic recording only absent a separate written agreement, and questioning limited to specifically identified nonprivileged historical facts.

Crowe will take reasonable steps to preserve potentially responsive materials while these objections are resolved. Preservation is not an agreement to search, collect, review, produce, or testify and does not waive any objection. Absent prompt agreement, Crowe reserves the right to seek a protective order and to move in the court for the district where compliance is required to quash or modify the Subpoena and recover its expenses and other appropriate relief under Rules 26 and 45. Crowe will comply with any final, enforceable order after a reasonable time to do so, subject to all rights of review.

Nothing in this letter is an admission of any statement, implication, assumption, relevance, discoverability, materiality, authenticity, admissibility, or use asserted by the Subpoena. Crowe expressly reserves all rights and objections, including the right to revise, amend, supplement, or clarify these objections as additional information becomes available or circumstances require. Please direct all further communications to me at john.doyle@crowe.com or (312) 632-6981.

Sincerely,

/s/ John C. Doyle

John C. Doyle
Crowe Advisory LLC - Assistant General Counsel

Cc: Lindsay Cutler (lindsay.cutler@crowe.com)

EXHIBIT
3
8/24/26 ALC

Douglas A. Wain and Elisa Wain
P.O. Box 7473, Westlake Village, CA 91359
(859) 494-3677 | douglaswain@gmail.com
Plaintiffs, Pro Per

August 11, 2026

**VIA EMAIL (john.doyle@crowe.com; cc: lindsay.cutler@crowe.com) AND U.S. MAIL**

John C. Doyle, Esq.
Assistant General Counsel, Crowe Advisory LLC
Crowe LLP
One Mid America Plaza, Suite 600
Oakbrook Terrace, IL 60181-4705

**Re: Wain v. Central Bank & Trust Co., Adv. Proc. No. 1:25-ap-01026-MB (Bankr. C.D. Cal.)**
**Crowe LLP's August 10, 2026 Objections to Plaintiffs' Rule 45 Subpoena**

Dear Mr. Doyle:

Thank you for your August 10, 2026 letter stating Crowe LLP's objections to Plaintiffs' subpoena. Per your instruction, all further communications concerning the subpoena will be directed to you. Plaintiffs respond as follows.

**1. Crowe's Objections to the Document Commands Are Untimely and Waived**

Your letter acknowledges that the subpoena was delivered to Crowe's Louisville, Kentucky office on July 15, 2026, commanding production on August 10, 2026. Rule 45(d)(2)(B) requires written objections to be served "before the earlier of the time specified for compliance or 14 days after the subpoena is served" — here, no later than July 29, 2026. Crowe's objections were served August 10, 2026, twelve days late. Untimely objections are waived, and Crowe — a national accounting firm acting through in-house counsel — is not the unsophisticated nonparty for which courts occasionally excuse untimeliness. Plaintiffs assert the waiver and reserve it fully; nothing in this letter, or in any conference or correspondence that follows, waives or compromises it.

**2. The Objections Letter Does Not Excuse the Rule 30(b)(6) Deposition**

Rule 45(d)(2)(B) written objections apply to commands to produce documents; they do not excuse attendance at a deposition. A nonparty seeking relief from a testimonial command must obtain an order — by motion to quash or modify under Rule 45(d)(3) or for a protective order — or the parties' agreement. Crowe's letter states only that it "reserves the right" to seek such relief. Accordingly, the deposition subpoena remains outstanding, and the Rule 30(b)(6) deposition

noticed for August 24, 2026 at 9:00 a.m. Pacific stands absent a court order or written agreement resetting it. Plaintiffs are willing to confer regarding the designee, the topics (as Rule 30(b)(6) contemplates), and the date and manner of examination — but a letter of objections is not an order, and non-appearance without one is at Crowe's risk.

**3. Meet and Confer — This Week**

Plaintiffs accept Crowe's offer to meet and confer, without waiver of any position stated above. Given the discovery schedule in the adversary proceeding, the conference must occur promptly: please provide Crowe's availability for a conference in writing or by telephone on August 12, 13, or 14, 2026. Without waiving the subpoena's full scope, or the waiver stated in Section 1, Plaintiffs are prepared to discuss at the conference reasonable narrowing of the document commands, appropriate protective conditions (including a protective order and Federal Rule of Evidence 502(d) non-waiver provisions), secure means of transmission, notice to privilege holders, and reasonable, documented duplication costs. The subpoena's scope remains as issued unless and until modified by written agreement or court order.

**4. Reservation**

If Crowe has not responded substantively by Friday, August 14, 2026, Plaintiffs will present the dispute — including the waiver of Crowe's objections and Crowe's obligations as to the noticed deposition — to the appropriate court, and will seek their expenses. Crowe's letter repeatedly identifies CBT and its counsel as the appropriate source and privilege holders for the requested materials. Plaintiffs are pursuing discovery from CBT through the ordinary party-discovery process; that pursuit does not diminish Crowe's independent obligations under the subpoena, and certain matters — what Crowe received, from whom, and when, and what Crowe's own audit documentation reflects — exist only in Crowe's files and are not obtainable from any other source. Plaintiffs appreciate Crowe's stated commitment to preserve potentially responsive materials and expect preservation to continue.

I look forward to hearing from you by Friday, August 14, 2026.

Respectfully,

Douglas A. Wain
On behalf of Plaintiffs Douglas A. Wain and Elisa Wain, Pro Per

EXHIBIT
4
8/24/26 ALC

**douglaswain@gmail.com**

**Subject:** FW: Wain v. Central Bank Subpoena to Crowe

**From:** Tom Falkenberg <tff@falkenbergives.com>
**Sent:** Friday, August 21, 2026 1:33 PM
**To:** douglaswain@gmail.com
**Cc:** Doyle, John <John.Doyle@crowe.com>; wireland@hbblaw.com
**Subject:** Wain v. Central Bank Subpoena to Crowe

Mr. Wain,

I have been retained to represent Crowe LLP in response to your subpoena for records and a deposition. Accordingly, please direct future communications on this matter to my attention.

As you know, Crowe has issued objections to the subpoena by letter of August 10. Without waiving those objections, Crowe is hereby producing documents bates labeled Crowe 00001-Crowe00077 and marked Confidential. We believe that this production satisfies the records portion of the subpoena. The documents have been redacted to protect confidential information relating to other matters. The documents are included in the link below.

As to the deposition notice, Crowe is standing on its objections. Based on the extremely limited involvement of Crowe in anything to do with the “Wain Matters”, as you define them in the subpoena, a deposition is not warranted, especially given your repeated statement to John Doyle that the deposition would be 7 hours. Additionally, you were not able to articulate what relevant information Crowe would have to your adversary proceeding. We also dispute there is jurisdiction under the subpoena. Therefore, we will not be producing a witness.

Tom

Links expire 2026-09-19

Crowe 000001 - Crowe 000077.zip

Thomas F. Falkenberg
FALKENBERG IVES LLP
230 W. Monroe St., Suite 2220
Chicago, IL 60606
Direct | 312.566.4801 Fax | 312.566.4810
tff@falkenbergives.com | www.falkenbergives.com

EXHIBIT
5
8/24/26 ALC

**douglaswain@gmail.com**

**Subject:** FW: Wain v. Central Bank Subpoena to Crowe

**From:** douglaswain@gmail.com <douglaswain@gmail.com>
**Sent:** Friday, August 21, 2026 2:28 PM
**To:** tff@falkenbergives.com
**Cc:** 'Doyle, John' <John.Doyle@crowe.com>; 'William E. Ireland' <wireland@hbblaw.com>
**Subject:** RE: Wain v. Central Bank Subpoena to Crowe

Mr. Falkenberg:

Thank you for identifying yourself as Crowe's counsel; Plaintiffs will direct future communications to you.

Documents. Plaintiffs do not access third-party file-transfer links. Please deliver the production (Crowe 000001–000077) as email attachments to this address, or by U.S. Mail. Until delivered by one of those means, the documents have not been received and will not be treated as produced. Plaintiffs further note that the subpoena required production by August 10, 2026; this production comes eleven days after that date, and one business day before the noticed deposition. Plaintiffs reserve all rights regarding the completeness of the production, the unexplained redactions, and the absence of any privilege log identifying what was withheld and on what ground, and do not agree that the production satisfies the subpoena.

Deposition. Objections under Rule 45(d)(2)(B) address document production; they do not excuse attendance for testimony. Plaintiffs stated this to Crowe in writing on August 11, 2026: the deposition "stands absent a court order or written agreement." In the ten days since, Crowe has filed no motion to quash and obtained no order from any court, and no agreement exists. Jurisdictional disputes are for a court to decide; they are not grounds for unilateral non-appearance. The deposition proceeds as noticed: Monday, August 24, 2026, at 9:00 a.m. Pacific, by Zoom. If no witness appears, Plaintiffs will make a record of non-appearance at the noticed time and will seek all available relief, including contempt under Rule 45(g) and the expenses of the session. Rule 30(d)(1)'s seven-hour limit is the presumptive maximum set by rule, not a demand; the examination will take the time it takes.

This email is sent without prejudice to all of Plaintiffs' rights and positions.

Douglas A. Wain
On behalf of Plaintiffs Douglas A. Wain and Elisa Wain, Pro Per

**From:** Tom Falkenberg <tff@falkenbergives.com>
**Sent:** Friday, August 21, 2026 1:33 PM
**To:** douglaswain@gmail.com
**Cc:** Doyle, John <John.Doyle@crowe.com>; wireland@hbblaw.com
**Subject:** Wain v. Central Bank Subpoena to Crowe

Mr. Wain,

I have been retained to represent Crowe LLP in response to your subpoena for records and a deposition. Accordingly, please direct future communications on this matter to my attention.

As you know, Crowe has issued objections to the subpoena by letter of August 10. Without waiving those objections, Crowe is hereby producing documents bates labeled Crowe 00001-Crowe00077 and marked Confidential. We believe

that this production satisfies the records portion of the subpoena. The documents have been redacted to protect confidential information relating to other matters. The documents are included in the link below.

As to the deposition notice, Crowe is standing on its objections. Based on the extremely limited involvement of Crowe in anything to do with the "Wain Matters", as you define them in the subpoena, a deposition is not warranted, especially given your repeated statement to John Doyle that the deposition would be 7 hours. Additionally, you were not able to articulate what relevant information Crowe would have to your adversary proceeding. We also dispute there is jurisdiction under the subpoena. Therefore, we will not be producing a witness.

Tom

Links expire 2026-09-19

Crowe 000001 - Crowe 000077.zip

Thomas F. Falkenberg

FALKENBERG IVES LLP
230 W. Monroe St., Suite 2220
Chicago, IL 60606
Direct | 312.566.4801 Fax | 312.566.4810
tff@falkenbergives.com | www.falkenbergives.com

EXHIBIT
6
8/24/26 ALC

**douglaswain@gmail.com**

**Subject:** FW: Wain v. Central Bank Subpoena to Crowe

**From:** Tom Falkenberg <tff@falkenbergives.com>
**Sent:** Saturday, August 22, 2026 7:50 AM
**To:** douglaswain@gmail.com
**Cc:** 'Doyle, John' <John.Doyle@crowe.com>; 'William E. Ireland' <wireland@hbblaw.com>
**Subject:** RE: Wain v. Central Bank Subpoena to Crowe

You have been provided the documents, and if you choose not to access them that is your decision. Redactions were made as to non-responsive issues, and do not require a log.

You have been advised that the deposition is not proceeding, so there is no reason to move forward and note a witness has not appeared. We have objected, and that is a viable response under the rules.

Thomas F. Falkenberg

FALKENBERG IVES LLP
230 W. Monroe St., Suite 2220
Chicago, IL 60606
Direct | 312.566.4801 Fax | 312.566.4810
tff@falkenbergives.com | www.falkenbergives.com

**From:** douglaswain@gmail.com <douglaswain@gmail.com>
**Sent:** Friday, August 21, 2026 4:28 PM
**To:** Tom Falkenberg <tff@falkenbergives.com>
**Cc:** 'Doyle, John' <John.Doyle@crowe.com>; 'William E. Ireland' <wireland@hbblaw.com>
**Subject:** RE: Wain v. Central Bank Subpoena to Crowe

Mr. Falkenberg:

Thank you for identifying yourself as Crowe's counsel; Plaintiffs will direct future communications to you.

Documents. Plaintiffs do not access third-party file-transfer links. Please deliver the production (Crowe 000001–000077) as email attachments to this address, or by U.S. Mail. Until delivered by one of those means, the documents have not been received and will not be treated as produced. Plaintiffs further note that the subpoena required production by August 10, 2026; this production comes eleven days after that date, and one business day before the noticed deposition. Plaintiffs reserve all rights regarding the completeness of the production, the unexplained redactions, and the absence of any privilege log identifying what was withheld and on what ground, and do not agree that the production satisfies the subpoena.

Deposition. Objections under Rule 45(d)(2)(B) address document production; they do not excuse attendance for testimony. Plaintiffs stated this to Crowe in writing on August 11, 2026: the deposition "stands absent a court order or written agreement." In the ten days since, Crowe has filed no motion to quash and obtained no order from any court, and no agreement exists. Jurisdictional disputes are for a court to decide; they are not grounds for unilateral non-appearance. The deposition proceeds as noticed: Monday, August 24, 2026, at 9:00 a.m. Pacific, by Zoom. If no witness appears, Plaintiffs will make a record of non-appearance at the noticed time and will seek all available relief, including contempt under Rule 45(g) and the expenses of the session. Rule 30(d)(1)'s seven-hour limit is the presumptive maximum set by rule, not a demand; the examination will take the time it takes.

This email is sent without prejudice to all of Plaintiffs' rights and positions.

Douglas A. Wain
On behalf of Plaintiffs Douglas A. Wain and Elisa Wain, Pro Per

---

**From:** Tom Falkenberg <tff@falkenbergives.com>
**Sent:** Friday, August 21, 2026 1:33 PM
**To:** douglaswain@gmail.com
**Cc:** Doyle, John <John.Doyle@crowe.com>; wireland@hbblaw.com
**Subject:** Wain v. Central Bank Subpoena to Crowe

Mr. Wain,

I have been retained to represent Crowe LLP in response to your subpoena for records and a deposition. Accordingly, please direct future communications on this matter to my attention.

As you know, Crowe has issued objections to the subpoena by letter of August 10. Without waiving those objections, Crowe is hereby producing documents bates labeled Crowe 00001-Crowe00077 and marked Confidential. We believe that this production satisfies the records portion of the subpoena. The documents have been redacted to protect confidential information relating to other matters. The documents are included in the link below.

As to the deposition notice, Crowe is standing on its objections. Based on the extremely limited involvement of Crowe in anything to do with the "Wain Matters", as you define them in the subpoena, a deposition is not warranted, especially given your repeated statement to John Doyle that the deposition would be 7 hours. Additionally, you were not able to articulate what relevant information Crowe would have to your adversary proceeding. We also dispute there is jurisdiction under the subpoena. Therefore, we will not be producing a witness.

Tom

Links expire 2026-09-19

Crowe 000001 - Crowe 000077.zip

Thomas F. Falkenberg

FALKENBERG IVES LLP
230 W. Monroe St., Suite 2220
Chicago, IL 60606
Direct | 312.566.4801 Fax | 312.566.4810
tff@falkenbergives.com | www.falkenbergives.com

EXHIBIT
7
8/24/26 ALC

**douglaswain@gmail.com**

**Subject:** FW: Wain v. Central Bank Subpoena to Crowe

---

**From:** douglaswain@gmail.com <douglaswain@gmail.com>
**Sent:** Saturday, August 22, 2026 11:51 AM
**To:** 'Tom Falkenberg' <tff@falkenbergives.com>
**Cc:** 'Doyle, John' <John.Doyle@crowe.com>; 'William E. Ireland' <wireland@hbblaw.com>
**Subject:** RE: Wain v. Central Bank Subpoena to Crowe

Mr. Falkenberg:

Plaintiffs' positions are stated in their email of August 21 and are unchanged: an objection letter is not an order quashing a subpoena, and the deposition will be convened as noticed on Monday, August 24, 2026, at 9:00 a.m. Pacific, with the record made accordingly. The offer to receive Crowe 000001–000077 by email attachment or U.S. Mail remains open. This email is sent without prejudice to all of Plaintiffs' rights and positions.

Douglas A. Wain
On behalf of Plaintiffs Douglas A. Wain and Elisa Wain, Pro Per

---

**From:** Tom Falkenberg <tff@falkenbergives.com>
**Sent:** Saturday, August 22, 2026 7:50 AM
**To:** douglaswain@gmail.com
**Cc:** 'Doyle, John' <John.Doyle@crowe.com>; 'William E. Ireland' <wireland@hbblaw.com>
**Subject:** RE: Wain v. Central Bank Subpoena to Crowe

You have been provided the documents, and if you choose not to access them that is your decision. Redactions were made as to non-responsive issues, and do not require a log.

You have been advised that the deposition is not proceeding, so there is no reason to move forward and note a witness has not appeared. We have objected, and that is a viable response under the rules.

Thomas F. Falkenberg

FALKENBERG IVES LLP
230 W. Monroe St., Suite 2220
Chicago, IL 60606
Direct | 312.566.4801 Fax | 312.566.4810
tff@falkenbergives.com | www.falkenbergives.com

---

**From:** douglaswain@gmail.com <douglaswain@gmail.com>
**Sent:** Friday, August 21, 2026 4:28 PM
**To:** Tom Falkenberg <tff@falkenbergives.com>
**Cc:** 'Doyle, John' <John.Doyle@crowe.com>; 'William E. Ireland' <wireland@hbblaw.com>
**Subject:** RE: Wain v. Central Bank Subpoena to Crowe

Mr. Falkenberg:

Thank you for identifying yourself as Crowe's counsel; Plaintiffs will direct future communications to you.

Documents. Plaintiffs do not access third-party file-transfer links. Please deliver the production (Crowe 000001–000077) as email attachments to this address, or by U.S. Mail. Until delivered by one of those means, the documents have not been received and will not be treated as produced. Plaintiffs further note that the subpoena required production by August 10, 2026; this production comes eleven days after that date, and one business day before the noticed deposition. Plaintiffs reserve all rights regarding the completeness of the production, the unexplained redactions, and the absence of any privilege log identifying what was withheld and on what ground, and do not agree that the production satisfies the subpoena.

Deposition. Objections under Rule 45(d)(2)(B) address document production; they do not excuse attendance for testimony. Plaintiffs stated this to Crowe in writing on August 11, 2026: the deposition "stands absent a court order or written agreement." In the ten days since, Crowe has filed no motion to quash and obtained no order from any court, and no agreement exists. Jurisdictional disputes are for a court to decide; they are not grounds for unilateral non-appearance. The deposition proceeds as noticed: Monday, August 24, 2026, at 9:00 a.m. Pacific, by Zoom. If no witness appears, Plaintiffs will make a record of non-appearance at the noticed time and will seek all available relief, including contempt under Rule 45(g) and the expenses of the session. Rule 30(d)(1)'s seven-hour limit is the presumptive maximum set by rule, not a demand; the examination will take the time it takes.

This email is sent without prejudice to all of Plaintiffs' rights and positions.

Douglas A. Wain
On behalf of Plaintiffs Douglas A. Wain and Elisa Wain, Pro Per

---

**From:** Tom Falkenberg <tff@falkenbergives.com>
**Sent:** Friday, August 21, 2026 1:33 PM
**To:** douglaswain@gmail.com
**Cc:** Doyle, John <John.Doyle@crowe.com>; wireland@hbblaw.com
**Subject:** Wain v. Central Bank Subpoena to Crowe

Mr. Wain,

I have been retained to represent Crowe LLP in response to your subpoena for records and a deposition. Accordingly, please direct future communications on this matter to my attention.

As you know, Crowe has issued objections to the subpoena by letter of August 10. Without waiving those objections, Crowe is hereby producing documents bates labeled Crowe 00001-Crowe00077 and marked Confidential. We believe that this production satisfies the records portion of the subpoena. The documents have been redacted to protect confidential information relating to other matters. The documents are included in the link below.

As to the deposition notice, Crowe is standing on its objections. Based on the extremely limited involvement of Crowe in anything to do with the "Wain Matters", as you define them in the subpoena, a deposition is not warranted, especially given your repeated statement to John Doyle that the deposition would be 7 hours. Additionally, you were not able to articulate what relevant information Crowe would have to your adversary proceeding. We also dispute there is jurisdiction under the subpoena. Therefore, we will not be producing a witness.

Tom

Links expire 2026-09-19

Crowe 000001 - Crowe 000077.zip

Thomas F. Falkenberg

FALKENBERG IVES LLP
230 W. Monroe St., Suite 2220
Chicago, IL 60606
Direct | 312.566.4801 Fax | 312.566.4810
tff@falkenbergives.com | www.falkenbergives.com

# EXHIBIT AA

Central Bancshares, Inc. Annual Reports — Fiscal Years 2020 through 2025 (excerpts)

For each year: report cover; letter to shareholders signed by Luther Deaton, Jr., Chairman, President & CEO;
Independent Auditor's Report signature page (Crowe LLP); and the "Loss Contingencies" note to the consolidated financial statements

2020 (pp. 1–4) · 2021 (pp. 5–8) · 2022 (pp. 9–12) · 2023 (pp. 13–16) · 2024 (pp. 17–20) · 2025 (pp. 21–24)

Wain v. Central Bank & Trust Co., Adv. Proc. No. 1:25-ap-01026-MB

Declaration of Douglas A. Wain ISO Opposition to Motion to Quash (Doc. 76)

# 75 YEARS OF STRENGTHENING EVERY COMMUNITY WE SERVE.

## 2020 ANNUAL REPORT




**Central Bancshares, Inc.**

CENTRAL BANK & TRUST CO. • CENTRAL INSURANCE SERVICES • CENTRAL INVESTMENT CENTER, INC.

While much of this letter focuses on the increasing number of our customers who chose to transact with the Bank online or with mobile banking, we recognize the importance of access to trusted local experts who are available at our brick-and-mortar locations. We continue to prioritize in-person service options, adding staff when needed to keep pace with our growing customer base and market footprint.

Efforts to serve more of our customers' growing needs continue to be led by our Mortgage, Wealth Management, Insurance and Investment staffs. As always, their level of commitment to their customers consistently exceeds expectations and allows us to advance our position as a full-service financial institution.

## LOOKING FORWARD

As we enter 2021, we look ahead with excitement to the celebration of Central Bank's 75th anniversary in April. While we have grown significantly from our beginnings at the corner of Short and Upper streets in downtown Lexington, we remain just as dedicated to the community-driven mission of our founder, Garvice D. Kincaid, as when we first opened our doors in 1946. Today, this commitment lives on through Mr. Kincaid's daughter, Joan D. Kincaid. As Vice Chairman of the Board, Joan ensures that while innovation continues, the bank stays true to her father's founding principles. Energized by our upcoming milestone and motivated by our many accomplishments in 2020, we look forward to the year ahead. With customer service that remains unmatched by any of our competitors, continued advances within online and mobile banking, renewed emphasis on our retail and small-business banking strategies and an unwavering focus on the communities we serve, we expect 2021 to be another successful year.



Joan D. Kincaid
Vice Chairman of the Board

## RETIREES

In the words of our founder, "No one person is responsible for our success. A leader is only as good as his followers, and – in this regard – I consider myself fortunate to be blessed with so many talented and hardworking associates. It has been a team effort." It is with this sentiment that we thank nine long-term employees who completed their service to reach well-earned retirements: Connie Skees (Consumer Lending, 41 years); Sharon Smith (Commercial Mortgage Lending, 38 years); Marie Young (Loan Review, 23 years); Mike Wynn (Retail Banking, 21 years); Karen Pugh (Loan Services, 17 years); Karen Butler (Retail Banking, 15 years); Brenda Graham (Retail Banking, 15 years); Glenn D. Leveridge (Winchester Market President, 12 years); and Malia Herzog (Retail Banking, six years). They were dedicated Central Bankers who served our Bank and their customers with distinction. We honor their service and congratulate them on their achievements.

## WITH APPRECIATION

As with each year, our directors offer support and leadership that remain key components of our success. During a time when it was more important than ever to remain connected to our local markets, their insight was invaluable to us.

After joining the Central Bank and Central Bancshares Boards of Directors in 2011, Nick Nicholson announced his retirement from both Boards in December 2020. Nick proved to be a great asset to the Bank with his business insight and experience. We wish Nick and his family the best as he now enjoys retirement.

Perhaps now more than ever, I am honored to say our Bank is in the hands of knowledgeable and caring staff. We call them Central Bankers, and they are the foundation of this Company. Their commitment to service and to our customers is unwavering. Thanks to their support, we were named one of Kentucky's Best Places to Work for the 14th year.

I also recognize that none of our success would be possible without our loyal customers. I would like to thank them for entrusting Central Bank with their financial needs and for their continued dedication to our Company. I am eternally grateful for their kind words and recognition of our tireless efforts to serve them. It is a privilege to have such a dedicated team of employees and loyal customers as we look forward to the year ahead.





Luther Deaton, Jr.
Chairman, President & CEO
March 11, 2021

# INDEPENDENT AUDITOR'S REPORT

Crowe

Crowe LLP
Independent Member Crowe Global

Board of Directors and Shareholders
Central Bancshares, Inc.
Lexington, Kentucky

## REPORT ON THE FINANCIAL STATEMENTS

We have audited the accompanying consolidated financial statements of Central Bancshares, Inc., which comprise the consolidated balance sheets as of December 31, 2020 and 2019, and the related consolidated statements of income, comprehensive income, changes in shareholders' equity, and cash flows for the years then ended, and the related notes to the financial statements.

### *MANAGEMENT'S RESPONSIBILITY FOR THE FINANCIAL STATEMENTS*

Management is responsible for the preparation and fair presentation of these consolidated financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of consolidated financial statements that are free from material misstatement, whether due to fraud or error.

### *AUDITOR'S RESPONSIBILITY*

Our responsibility is to express an opinion on these consolidated financial statements based on our audits. We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the consolidated financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the consolidated financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the consolidated financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the entity's preparation and fair presentation of the consolidated financial statements in order to design audit procedures that are appropriate in the circumstances. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the consolidated financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### *OPINION*

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Central Bancshares, Inc. as of December 31, 2020 and 2019, and the results of its operations and its cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.

## REPORT ON OTHER LEGAL AND REGULATORY REQUIREMENTS

We also have audited in accordance with auditing standards generally accepted in the United States of America, Central Bancshares, Inc.'s internal control over financial reporting as of December 31, 2020, based on criteria established in the *Internal Control – Integrated Framework* (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) relevant to reporting objectives for the express purpose of meeting the regulatory requirements of Section 112 of the Federal Deposit Insurance Corporation Improvement Act (FDICIA) and our report dated March 11, 2021 expressed an unmodified opinion.

Crowe LLP

Crowe LLP
Louisville, Kentucky
March 11, 2021

**Fair Value of Financial Instruments:** Fair values of financial instruments, as more fully disclosed in Note 9, are estimated using relevant market information and other assumptions. Fair value estimates involve uncertainties and matters of significant judgment regarding interest rates, credit risk, prepayments, and other factors, especially in the absence of broad markets for particular items. Changes in assumptions or in market conditions could significantly affect the estimates.

**Earnings Per Share:** Basic earnings per share is net income divided by the weighted average number of shares outstanding during the period. ESOP shares are considered outstanding for this calculation unless unearned. The Company has no shares outstanding which are potentially dilutive.

**Comprehensive Income:** Comprehensive income consists of net income and other comprehensive income (loss). Other comprehensive income (loss) includes unrealized gains and losses on debt securities available for sale, net of related income tax, and changes in the funded status of the defined benefit pension plans, net of related income tax. Accumulated other comprehensive income (loss) is recognized as a separate component of equity. Accumulated other comprehensive loss at December 31, 2020 of $(815) was comprised of $(1,642) related to the non-qualified pension plan and $827 related to unrealized gains and losses on available for sale debt securities. Accumulated other comprehensive loss at December 31, 2019 of $(8,704) was comprised of $(9,755) related to the defined benefit and non-qualified pension plans and $1,051 related to unrealized gains and losses on available for sale debt securities.

**Loss Contingencies:** Loss contingencies, including claims and legal actions arising in the ordinary course of business, are recorded as liabilities when the likelihood of loss is probable and an amount or range of loss can be reasonably estimated. Management does not believe that there now are such matters that will have a material effect on the consolidated financial statements.

**Dividend Restriction:** Banking regulations require maintaining certain capital levels and may limit the dividends paid by the Bank to the holding company or by the holding company to shareholders.

**Restrictions on Cash:** Cash on hand or on deposit with the Federal Reserve Bank was required to meet regulatory reserve and clearing requirements. The average balance requirement was $0 and $48,407 at December 31, 2020 and 2019, respectively.

**Reclassifications:** Certain amounts in the accompanying consolidated financial statements presented for prior years have been reclassified to conform to the current year presentation. Reclassifications had no effect on prior year net income or shareholders' equity.

**Common Shares:** During October 2018, the Company issued 34,444,278 shares of non-voting, no par value common stock through a share dividend to holders of its voting common shares as of the record date. Except with respect to voting rights, shares of the non-voting common stock have the same preferences, limitations, and relative rights as, and shall be identical in all respects to, the voting common shares.

BIG ENOUGH TO LEAD. SMALL ENOUGH TO CARE.




# 2021 ANNUAL REPORT

SERVING THE COMMUNITY SINCE 1946

# Central Bancshares, Inc.

CENTRAL BANK & TRUST CO. • CENTRAL INSURANCE SERVICES • CENTRAL INVESTMENT CENTER, INC.

It is important to note that while we are committed to offering the conveniences associated with online and mobile banking options, we remain dedicated to providing the same level of in-person service we have been long known for at our physical locations. We understand the importance of forming relationships with our clients and continue to prioritize service options that make those connections possible, adding staff when needed to keep pace with our growing customer base and market footprint.

## LOOKING FORWARD

As we enter this new year, we remain rooted in and united by our common goal to provide our customers with exceptional service and value that remain unmatched by any of our competitors. We also bring with us the motivation and energy that come from our proven ability to persevere in the face of the many and varied challenges we've overcome in recent years. All this, along with a continued focus on digital banking options, an emphasis on consumer and business lending, and an unwavering focus on the communities we serve, position us to make 2022 another successful year for our Company.

## RETIREES

In the words of Mr. Kincaid, "No one person is responsible for our success. A leader is only as good as his followers, and – in this regard – I consider myself fortunate to be blessed with so many talented and hardworking associates." It is with this sentiment that we thank 20 long-term employees who completed their service to reach well-earned retirements: Karen Crawley (Image Processing, 44 years); Robin Michul (Operations, 44 years); Beverly Smalley (Card Services, 44 years); Jane Tucker (Loan Services, 41 years); Cathy Combs (Client Services, 35 years); Richard Hartley (Commercial Lending, 35 years); Craig Daniels (Auditing, 30 years); Alice Hawks (Special Assets, 29 years); David Hardin (Enterprise Risk Management, 23 years); Glenda Kenton (Loan Processing, 23 years); Viki Gerkens (Client Services, 21 years); Julie Szymanski (Special Assets, 18 years); Phyllis Gant (Client Services, 17 years); Amy Manning (Human Resources, 16 years); Jennifer Roberts (Commercial Lending, 16 years); June Carpenter (Human Resources, 15 years); Sharon Sullivan (Commercial Lending, 15 years); Patricia Voigt (Retail Banking, 15 years); Allen Waugh (Image Processing, 13 years); and Anne Henry (Wealth Management, 11 years). They were dedicated Central Bankers who served our Bank and their customers with distinction. We honor their service and congratulate them on their achievements.

## WITH APPRECIATION

The contributions of our directors are key to our achievements. Their collective knowledge and expertise provide invaluable insight and help us stay connected to our local markets. Without the leadership of our directors, we would not be successful.

As with each year, I am honored to say our Bank is in the hands of knowledgeable and caring staff. We call them Central Bankers, and they are the foundation of this Company. Their tireless efforts to serve our customers do not go unnoticed. Thanks to their support, we were named a Best Place to Work in Kentucky for the 15th year.

Most of all, none of our success would be possible without our loyal customers. They allow us to be part of their financial lives, and we are grateful for the opportunity to serve them. Their dedication to this Company and their recognition of our diligent efforts to serve them remain a source of motivation for us all. It is a privilege to have such a dedicated team of employees and loyal customers as we look forward to the year ahead.





Luther Deaton, Jr. Chairman, President & CEO
March 10, 2022

In performing an audit in accordance with GAAS, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.
- Identify and assess the risks of material misstatement of the consolidated financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the consolidated financial statements.
- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances.
- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the consolidated financial statements.
- Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about Central Bancshares, Inc.'s ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control-related matters that we identified during the audit.

Crowe LLP

Crowe LLP
Louisville, Kentucky
March 10, 2022

**Benefit Plans:** Pension expense is the net of interest cost, return on plan assets, and amortization of gains and losses not immediately recognized. Employee stock ownership plan ("ESOP") and 401(k) plan expense is the amount contributed determined by Board decision. Deferred compensation plan expense is allocated over years of service. All ESOP shares are allocated to participants as of the end of each fiscal year. Compensation expense is based on the price paid for the shares acquired by the plan during the year. Since all ESOP shares are allocated to participants, all dividends reduce retained earnings.

**Fair Value of Financial Instruments:** Fair values of financial instruments, as more fully disclosed in Note 9, are estimated using relevant market information and other assumptions. Fair value estimates involve uncertainties and matters of significant judgment regarding interest rates, credit risk, prepayments, and other factors, especially in the absence of broad markets for particular items. Changes in assumptions or in market conditions could significantly affect the estimates.

**Earnings Per Share:** Basic earnings per share is net income divided by the weighted average number of shares outstanding during the period. ESOP shares are considered outstanding for this calculation unless unearned. The Company has no shares outstanding which are potentially dilutive.

**Comprehensive Income:** Comprehensive income consists of net income and other comprehensive income (loss). Other comprehensive income (loss) includes unrealized gains and losses on debt securities available for sale, net of related income tax, and changes in the funded status of the defined benefit pension plans, net of related income tax. Accumulated other comprehensive income (loss) is recognized as a separate component of equity. Accumulated other comprehensive loss at December 31, 2021 of $(3,736) was comprised of $(1,719) related to the non-qualified pension plan and $(2,017) related to unrealized gains and losses on available for sale debt securities. Accumulated other comprehensive loss at December 31, 2020 of $(815) was comprised of $(1,642) related to the non-qualified pension plan and $827 related to unrealized gains and losses on available for sale debt securities.

**Loss Contingencies:** Loss contingencies, including claims and legal actions arising in the ordinary course of business, are recorded as liabilities when the likelihood of loss is probable and an amount or range of loss can be reasonably estimated. Management does not believe that there now are such matters that will have a material effect on the consolidated financial statements.

**Dividend Restriction:** Banking regulations require maintaining certain capital levels and may limit the dividends paid by the Bank to the holding company or by the holding company to shareholders.

**Restrictions on Cash:** The Company is required to maintain a deposit balance with the Federal Reserve Bank to meet its clearing requirements. The Company was previously required to also maintain an average balance to meet statutory required reserves. That required average balance is no longer effective as of March 26, 2020.

**Reclassifications:** Certain amounts in the accompanying consolidated financial statements presented for prior years have been reclassified to conform to the current year presentation. Reclassifications had no effect on prior year net income or shareholders' equity.

ALWAYS LEADING. ALWAYS SERVING. ALWAYS HERE.




2022
ANNUAL
REPORT

SERVING THE COMMUNITY SINCE 1946

# Central Bancshares, Inc.

CENTRAL BANK & TRUST CO. • CENTRAL INSURANCE SERVICES • CENTRAL INVESTMENT CENTER, INC.

10 minutes. The system even allows the applicant to request multiple accounts and send requests for joint owners all in one application. The system was implemented in August, and in just the last five months of 2022, the increase in account openings using the new system helped produce a 29.2% increase in total online deposit accounts opened year over year.

It is important to note that while we are committed to offering the conveniences associated with online and mobile banking options and will continue working on projects to enhance these services, we remain dedicated to providing the same level of in-person service we have been long known for at our physical locations. We understand the importance of forming relationships with our clients and continue to prioritize service options that make those connections possible, adding staff when needed to keep pace with our growing customer base and market footprint. All our initiatives continue to be prioritized based on what we understand to be best for our customers and communities.

## LOOKING FORWARD

While we anticipate that 2023 will present all industries with the challenges that accompany the economic uncertainties that surround inflation, we remain optimistic about the future. Businesses need a solid foundation to withstand economic environments like the one we are currently facing, an underpinning we have established by prioritizing our team for almost 80 years. As a result of this continued emphasis on empowering our employees, we have been able to prove time and again that with their help, we can persevere in the face of adversity. As a community-based and full-service financial institution, we are also uniquely poised for success because we offer our clients a singular relationship for all their financial needs. And we do it locally.

This is important because while consumers are looking for more digital options, their appetites for relationship banking and face-to-face interaction are also growing. The convenience offered by digital tools and resources is attractive, but nothing can replace having a person to call or visit when you need help or professional advice. This is especially true when dealing with major life events. That is where we excel, as our customers have come to know that our experienced, local experts are here to provide guidance on their personal and business finances in this and any other economic climate. We are ready to meet the growing demand for this personal service by adding to and developing our team of Central Bankers. This emphasis on client relationships and the expertise of our team plus an unwavering focus on the communities we serve position us to make 2023 another successful year for our Company.

## RETIREES

In the words of our founder, Mr. Kincaid, "No one person is responsible for our success. A leader is only as good as his followers, and – in this regard – I consider myself fortunate to be blessed with so many talented and hardworking associates." It is with this sentiment that we thank 12 long-term employees who completed their service to reach well-earned retirements: Ranee Leland (Bank Administration, 47 years); Lisa Grant (Auditing, 41 years); Theresa Bandy (Retail Banking, 23 years); Barb Johnson (Retail Banking, 22 years); Rhonda Ritchie (Commercial Lending, 22 years); Jan Rexroat (Retail Banking, 21 years); Tim Duncan (Commercial Lending, 20 years); Lee Coleman (Consumer Mortgage Lending, 18 years); Bobby Jones (Financial Intelligence & Security Unit, 16 years); Lela Durman (Retail Banking, 9 years); John Finley (Private Banking, 8 years); and Karen Hartig (Private Banking, 8 years). They were dedicated Central Bankers who served our Company and their customers with distinction. We honor their service and congratulate them on their achievements.

## WITH APPRECIATION

Our directors continually offer us insight that helps us stay connected to our local markets. Their collective knowledge, expertise and support are deeply appreciated. Without their leadership, we would not be successful.

As I have described throughout this report, our Central Bankers are hardworking, knowledgeable and caring. I am honored to say that thanks to their support, we were named a Best Place to Work in Kentucky for the 16th year. I maintain deep gratitude for their tireless efforts to serve our customers and our Company.

Most important, I would like to thank our loyal customers. They have more options than ever when it comes to how they manage their financial lives, and we are eternally grateful for the opportunity to serve them. Their dedication to this Company and their recognition of our service to them are a source of motivation and pride for us all. It is with a strong team of employees and our loyal customers that I look to the year ahead with optimism and confidence.



Luther Deaton, Jr. Chairman, President & CEO
March 10, 2023

In performing an audit in accordance with GAAS, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.
- Identify and assess the risks of material misstatement of the consolidated financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the consolidated financial statements.
- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances.
- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the consolidated financial statements.
- Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about Central Bancshares, Inc.'s ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control-related matters that we identified during the audit.

Crowe LLP

Crowe LLP
Louisville, Kentucky
March 10, 2023

**Fair Value of Financial Instruments:** Fair values of financial instruments, as more fully disclosed in Note 9, are estimated using relevant market information and other assumptions. Fair value estimates involve uncertainties and matters of significant judgment regarding interest rates, credit risk, prepayments, and other factors, especially in the absence of broad markets for particular items. Changes in assumptions or in market conditions could significantly affect the estimates.

**Earnings Per Share:** Basic earnings per share is net income divided by the weighted average number of shares outstanding during the period. ESOP shares are considered outstanding for this calculation unless unearned. The Company has no shares outstanding which are potentially dilutive.

**Comprehensive Income:** Comprehensive income consists of net income and other comprehensive income. Other comprehensive income includes unrealized gains and losses on debt securities available for sale, net of related income tax, and changes in the funded status of its supplemental non-qualified pension and deferred compensation plans, net of related income tax. Accumulated other comprehensive income is recognized as a separate component of equity. Accumulated other comprehensive loss at December 31, 2022 of $32,368 was comprised of $808 related to the non-qualified pension plan and $31,560 related to an unrealized net loss on available for sale debt securities. Accumulated other comprehensive loss at December 31, 2021 of $3,736 was comprised of $1,719 related to the non-qualified pension plan and $2,017 related to an unrealized net loss on available for sale debt securities.

**Loss Contingencies:** Loss contingencies, including claims and legal actions arising in the ordinary course of business, are recorded as liabilities when the likelihood of loss is probable and an amount or range of loss can be reasonably estimated. Management does not believe that there now are such matters that will have a material effect on the consolidated financial statements.

**Dividend Restriction:** Banking regulations require maintaining certain capital levels and may limit the dividends paid by the Bank to the holding company or by the holding company to shareholders.

**Restrictions on Cash:** The Company is required to maintain a deposit balance with the Federal Reserve Bank to meet its clearing requirements. The Company was previously required to also maintain an average balance to meet statutory required reserves. The reserve requirement was at zero as of December 31, 2022.

**Reclassifications:** Certain amounts in the accompanying consolidated financial statements presented for prior years have been reclassified to conform to the current year presentation. Reclassifications had no effect on prior year net income or shareholders' equity.

**Adoption of New Accounting Standard:** The Company on January 1, 2022 adopted Accounting Standards Update ("ASU") No. 2016-02 "Leases (Topic 842)" and subsequent related amendments that require recognition of most operating leases on the balance sheet. The standard establishes a right-of-use model that requires a lessee to record a right-of-use asset and a lease liability for all leases with terms longer than 12 months. Leases are classified as either finance or operating at the lease commencement date, with classification affecting the pattern of expense recognition in the income statement. The standard was adopted under the modified retrospective approach as of the date of adoption and elected to apply several of the available practical expedients, including:

- Carry over of historical lease determination and lease classification conclusions.
- Carry over of historical initial direct cost balances for existing leases.
- Accounting for lease and non-lease components in contracts in which the Company is a lessee as a single lease component.

Adoption of the standard resulted in the recognition of operating right-of-use assets and operating lease liabilities of $88,479 as of January 1, 2022. These amounts were determined based on the present value of remaining lease payments, discounted using the Company's incremental borrowing rate as of the date of adoption. Subsequent to adoption, the incremental borrowing rate is determined as of the date of lease commencement or renewal. There was no material impact of the timing of expense or income recognition in the Company's Consolidated Income Statements. Prior periods were not restated and continue to be presented under legacy GAAP. Disclosures about the Company's leasing activities are presented in Note 6 – Premises and Equipment.

At lease inception, the Company determines the lease term by considering the minimum lease term and all optional renewal periods that the Company is reasonably certain to renew. The lease term is also used to calculate straight-line rent expense. The depreciable life of leasehold improvements is limited by the estimated lease term, including renewals if they are reasonably certain to be renewed. The Company's leases do not contain residual value guarantees or material variable lease payments that will impact its ability to pay dividends or cause it to incur additional expenses.

Operating lease expense consists of a single lease cost allocated over the remaining lease term on a straight-line basis, variable lease payments not included in the lease liability, and any impairment of the right-of-use asset. Rent expense and variable lease expense are included in occupancy and equipment expense on the Company's consolidated statements of income. The Company's variable lease expense includes rent escalators that are based on market conditions and include items such as common area maintenance, utilities, parking, property taxes, insurance, and other costs associated with the lease.



# BUILT ON RELATIONSHIPS.

ANNUAL REPORT 2023

## Central Bancshares, Inc.

Central Bank & Trust Co. • Central Insurance Services • Central Investment Center, Inc.

## LOOKING FORWARD

We once again anticipate the coming year will present challenges given the economic uncertainties. Still, we remain optimistic about our future. While these economic conditions will likely result in relatively high interest rates for a longer period and slower loan growth, we are committed to continuing our emphasis on exceptional customer service. We will remain focused on our philosophy of relationship banking to better understand our customers' specific needs and financial goals.

In addition, we will continue to empower our employees to persevere in the face of adversity. As a community-based and full-service financial institution, we are also uniquely poised for success because we offer our clients a singular relationship for all their financial needs. And we do it locally.

## RETIREES

At Central Bank & Trust Co., our people make us who we are. As a leader, I am extremely thankful and proud to have worked with so many associates who have tirelessly strived for the success of the Bank and the communities we serve. To that end, I would like to express my personal thanks to each of the 10 long-term colleagues who completed their service with us to begin new chapters in their lives – well-earned retirements:

LeeAnn Layne (Loan Review, 16 years); Sheila Carmack (Retail Banking, 17 years); Keith Preston (Consumer Lending, 19 years); Peggy Colburn (Image Processing, 23 years); Charlie Rush (Trust Services, 22 years); Joan Patterson (Corporate Services, 7 years); Tom Breathitt (Central Bank Mortgage, 16 years); Gayle Stokes (Client Services, 26 years); Debbie Banks (North Maple, 44 years); and Cathy Moberly (Richmond, 16 years). Each of these individuals served the Bank, their customers and their communities honorably. We congratulate them on their achievements and wish them all the very best.

## WITH APPRECIATION

Our success would not be possible without the valuable insight offered by our directors. They connect us with our local markets, provide constant leadership and serve as an invaluable source of support.

As I stated before, our Central Bankers work hard, care for our customers and fellow employees, and are remarkably knowledgeable about our service lines and our mission. It's no wonder why Central Bank & Trust Co. is consistently named a Best Place to Work in Kentucky. To all our employees, I am sincerely grateful for your efforts.

Of course, I want to thank the people who choose to work with us every day – our customers. With more options than ever, they still recognize the difference a real banking *partner* can make. Their dedication to this company and recognition of our service should make us proud to have helped them achieve their financial goals this year – and motivated to do the same in the years to come.





Luther Deaton, Jr.

Chairman,
President & CEO
March 15, 2024

***Auditor's Responsibilities for the Audit of the Financial Statements***

Our objectives are to obtain reasonable assurance about whether the consolidated financial statements as a whole are Free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance but is not absolute assurance and therefore is not a guarantee that an audit conducted in accordance with GAAS will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the consolidated financial statements.

In performing an audit in accordance with GAAS, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.
- Identify and assess the risks of material misstatement of the consolidated financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the consolidated financial statements.
- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances.
- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the consolidated financial statements.
- Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about Central Bancshares, Inc.'s ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control–related matters that we identified during the audit.

Crowe LLP

Crowe LLP
Louisville, Kentucky
March 15, 2024

**Fair Value of Financial Instruments:** Fair values of financial instruments, as more fully disclosed in Note 9, are estimated using relevant market information and other assumptions. Fair value estimates involve uncertainties and matters of significant judgment regarding interest rates, credit risk, prepayments, and other factors, especially in the absence of broad markets for particular items. Changes in assumptions or in market conditions could significantly affect the estimates.

**Earnings Per Share:** Basic earnings per share is net income divided by the weighted average number of shares outstanding during the period. ESOP shares are considered outstanding for this calculation unless unearned. The Company has no shares outstanding which are potentially dilutive.

**Comprehensive Income:** Comprehensive income consists of net income and other comprehensive income. Other comprehensive income includes unrealized gains and losses on debt securities available for sale, net of related income tax, and changes in the funded status of its supplemental non-qualified pension and deferred compensation plans, net of related income tax. Accumulated other comprehensive income is recognized as a separate component of equity. Accumulated other comprehensive loss at December 31, 2023 of $22,916 was comprised of $1,287 related to the non-qualified pension plan and $21,629 related to an unrealized net loss on available for sale debt securities. Accumulated other comprehensive loss at December 31, 2022 of $32,368 was comprised of $808 related to the non-qualified pension plan and $31,560 related to an unrealized net loss on available for sale debt securities.

**Loss Contingencies:** Loss contingencies, including claims and legal actions arising in the ordinary course of business, are recorded as liabilities when the likelihood of loss is probable and an amount or range of loss can be reasonably estimated. Management does not believe that there now are such matters that will have a material effect on the consolidated financial statements.

**Dividend Restriction:** Banking regulations require maintaining certain capital levels and may limit the dividends paid by the Bank to the holding company or by the holding company to shareholders.

**Restrictions on Cash:** The Company is required to maintain a deposit balance with the Federal Reserve Bank to meet its clearing requirements. The Company was previously required to also maintain an average balance to meet statutory required reserves. That required average balance was reduced to zero effective as of March 26, 2020 in response to the COVID-19 pandemic. The reserve requirement remained at zero as of December 31, 2023.

**Reclassifications:** Certain amounts in the accompanying consolidated financial statements presented for prior years have been reclassified to conform to the current year presentation. Reclassifications had no effect on prior year net income or shareholders' equity.

**Adoption of New Accounting Standards:** On January 1, 2023, the Company adopted Accounting Standards Update ("ASU") No. 2016-13 "Financial Instruments - Credit Losses (Topic 326): Measurement of Credit Losses on Financial Instruments," as amended, which replaces the incurred loss methodology with an expected loss methodology that is referred to as the current expected credit loss ("CECL") methodology. The measurement of expected credit losses under CECL is applicable to financial assets measured at amortized cost, including loan receivables and held to maturity debt securities. It also applies to off-balance sheet credit exposures not accounted for as insurance such as loan commitments, standby letters of credit, financial guarantees, and other similar instruments. In addition, ASC Topic 326 made changes to the accounting for available for sale debt securities. One such change is to require credit losses to be presented as an allowance rather than as a write-down on available for sale debt securities management does not intend to sell or believes that it is more likely than not they will be required to sell.

The Company adopted ASC Topic 326 using the modified retrospective method for all financial assets measured at amortized cost and off-balance sheet credit exposures. Results for reporting periods beginning after the date of adoption are presented under ASC Topic 326 while prior period amounts continue to be reported in accordance with previously applicable accounting standards. The Company recorded a decrease to retained earnings of $2,883 as of the adoption date for the cumulative effect of adopting ASC Topic 326, net of the applicable deferred tax asset of $958. The transition adjustment included an increase to the allowance for credit loss on loans of $559 and the establishment of a reserve for unfunded loan commitments of $3,282, which is recorded within other liabilities.

The Company adopted ASC Topic 326 using the prospective transition approach for debt securities for which other-than-temporary impairment had been recognized prior to the adoption date. As of December 31, 2022, the Company did not have any other-than-temporary impaired investment securities. Therefore, upon adoption of ASC Topic 326, the Company had no allowance for credit losses on available for sale debt securities.