

2024

# Central Bancshares, Inc.

ANNUAL REPORT

- The Company has naming rights to Eastern Kentucky University's courtside club, now known as the "Central Bank Courtside Club." This bolsters our relationship with this renowned institution located in the heart of one of our home communities.
- We are also now the "Official Banking Partner of Northern Kentucky University Athletics." In 2024, a new addition to this agreement includes our sponsorship of the Darrin Horn Show, offering the Company additional presence in communities throughout Northern Kentucky.

## LOOKING FORWARD

While we know the upcoming year will present its share of challenges, we remain optimistic about our future and pledge to never grow complacent – remaining dedicated in the support of our communities and our shareholders by always reinvesting. We will remain focused on our philosophy of exceptional customer service. We will continue to build relationships with both personal and business customers. And, as always, we will work to better understand every customer's specific needs and financial goals.

In addition, we will continue to empower our employees with a substantial investment in their training and development through continuing education. They are the engine that makes us run and have worked tirelessly to further our reputation as a leading community bank. Their community involvement shows the dedication they have to the communities we serve. We are proud to share that Central Bank employees logged over 4,000 hours of service to local nonprofits and organizations in 2024, and we hope to eclipse that number in 2025.

As a community-based and full-service financial institution, we are in an outstanding position for continued success because we truly value the relationships we've built with our clients. We strive to always meet our customers' financial needs and exceed their expectations. And we do it all locally.

## RETIREES

At Central Bank, our people make us who we are. As a leader, I'm honored to have worked with so many associates whose tireless efforts contribute to the success of Central Bank and the communities we serve. I want to express my personal thanks to each of the long-term colleagues who completed their service with us to begin new chapters in their lives: Paul Drake (Commercial Lending, 23 years); Deborah Fisher (Central Investment, 30 years); Tim Fyffe (Trust, 19 years); Steve Hall (Special Assets, 26 years); Trish Jarvis (Louisville Admin, 8 years); Sheila Parks (Trust, 47 years); Shelia Plymale (Training & Development, 38 years); Bob Slider (Private Banking, 17 years); Bobbi Jo Smith (Central Insurance, 21 years); Anita Wunderlin (Louisville Admin, 18 years).

## WITH APPRECIATION

Our success would not be possible without the time, insight and support provided by our directors. They are the vital connection between us and our local markets, and their constant leadership is both invaluable and appreciated.

To that end, I would like to note the countless contributions of Junior Bridgeman, a visionary businessman and legendary athlete who was elected to the Central Bancshares Board of Directors in 2020. Tragically, Mr. Bridgeman passed away unexpectedly on March 11, 2025. His enormous impact on his community and the many lives he touched will be forever remembered by his colleagues and friends. On behalf of the entire Central Bank community, I can say we were incredibly blessed to have known him and worked with him. He will be profoundly missed.

To all our employees, I am sincerely grateful for your efforts. You work hard, care for our customers and fellow employees, and are consistently knowledgeable about our service lines and our mission. You are the reason Central Bank is consistently named one of the Best Places to Work in Kentucky.

Of course, I also want to thank the people who choose to work with us every day – our valued customers. Even with more options available to them than ever before, they choose to work with a real banking partner. Their dedication to this company and its people make us wonderfully proud to have helped them achieve their financial goals this year. We sincerely hope to partner with them for many years to come.





Luther Deaton, Jr.

Chairman,
President & CEO
March 14, 2025

In performing an audit in accordance with GAAS, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.
- Identify and assess the risks of material misstatement of the consolidated financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the consolidated financial statements.
- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances.
- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the consolidated financial statements.
- Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about Central Bancshares, Inc.'s ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control–related matters that we identified during the audit.

Crowe LLP

Crowe LLP
Louisville, Kentucky
March 14, 2025

**Investment in Limited Partnerships:** The Company is a limited equity partner in nine low-income housing projects and five Community Reinvestment Act related funds with both low-income housing and Historic Rehabilitation tax credit generation. The investments are accounted for using the equity method and are included in other assets on the consolidated balance sheets. The investments had a balance of $12,858 and $14,454 at year-end 2024 and 2023, respectively. At year-end 2024, remaining funding commitments were $1,735.

The Company recognized amortization expense related to its limited partnerships of $2,149 and $2,130 for 2024 and 2023, respectively, which is included in other non-interest expense on the consolidated statements of income. Tax credits recognized were $2,472 and $2,426 . No impairment losses were incurred in either of the years presented.

**Benefit Plans:** Pension expense is the net of interest cost, return on plan assets, and amortization of gains and losses not immediately recognized. Employee stock ownership plan ("ESOP") and 401(k) plan expenses are the amount contributed determined by Board decision. Deferred compensation plan expense is allocated over years of service. All ESOP shares are allocated to participants as of the end of each fiscal year. Compensation expense is based on the price paid for the shares acquired by the plan during the year. Since all ESOP shares are allocated to participants, all dividends reduce retained earnings.

**Fair Value of Financial Instruments:** Fair values of financial instruments, as more fully disclosed in Note 9, are estimated using relevant market information and other assumptions. Fair value estimates involve uncertainties and matters of significant judgment regarding interest rates, credit risk, prepayments, and other factors, especially in the absence of broad markets for particular items. Changes in assumptions or in market conditions could significantly affect the estimates.

**Earnings Per Share:** Basic earnings per share is net income divided by the weighted average number of shares outstanding during the period. ESOP shares are considered outstanding for this calculation unless unearned. The Company has no shares outstanding which are potentially dilutive.

**Comprehensive Income:** Comprehensive income consists of net income and other comprehensive income. Other comprehensive income includes unrealized gains and losses on debt securities available for sale, net of related income tax, and changes in the funded status of its supplemental non-qualified pension and deferred compensation plans, net of related income tax. Accumulated other comprehensive income is recognized as a separate component of equity. Accumulated other comprehensive loss at December 31, 2024 of $15,666 was comprised of $1,469 related to the non-qualified pension plan and $14,197 related to an unrealized net loss on available for sale debt securities. Accumulated other comprehensive loss at December 31, 2023 of $22,916 was comprised of $1,287 related to the non-qualified pension plan and $21,629 related to an unrealized net loss on available for sale debt securities.

**Loss Contingencies:** Loss contingencies, including claims and legal actions arising in the ordinary course of business, are recorded as liabilities when the likelihood of loss is probable and an amount or range of loss can be reasonably estimated. Management does not believe that there now are such matters that will have a material effect on the consolidated financial statements.

**Dividend Restriction:** Banking regulations require maintaining certain capital levels and may limit the dividends paid by the Bank to the holding company or by the holding company to shareholders.

**Restrictions on Cash:** The Company is required to maintain a deposit balance with the Federal Reserve Bank to meet its clearing requirements.

**Common Share Redemption:** In early 2024, the Company's Board of Directors authorized the repurchase of a limited number of common shares held by former employees or their beneficiaries that had been issued in past years in connection with the ESOP. The Company redeemed 6,339 of voting and 628,351 of non-voting common shares in the amount of $6,505 during 2024. The redemption period for this authorization has expired.

**Reclassifications:** Certain amounts in the accompanying consolidated financial statements presented for prior years have been reclassified to conform to the current year presentation. Reclassifications had no effect on prior year net income or shareholders' equity.

2
0
2
5

ANNUAL REPORT

Central Bancshares, Inc.

- We made new, long-term commitments to Ronald McDonald House, God's Pantry and the Hope Center. These long-term partnerships reflect our commitment to our relationships and the people who make up the communities we hold dear.
- We continued to expand small business lending through the development of our SBA program, a key strategic focus in 2025 that will remain a priority moving forward.
- We provided Banzai, an online financial literacy program, to educators and students in our community for free, as well as to 21 local nonprofits and organizations. Through our sponsorship of 25 schools, we impacted over 6,000 students and 100 teachers.
- Central Bank employees logged over 4,300 community service hours in 2025, reinforcing our commitment to local impact and showing up for our people.

## LOOKING FORWARD

As we look to the future, we will remain focused on disciplined growth and meaningful reinvestment in the communities we know and love. Our commitment to exceptional service, strong relationships and a deep understanding of our customers' needs will continue to guide everything we do.

We are excited by the expansion of our physical presence with a new Spring House branch in Richmond that opened in March 2026. Planning is also underway for a new Oldham County branch targeted for 2027. These investments reflect our commitment to meeting customers where they are and supporting continued growth in our communities.

We are proud to mark 2026 as the 80th year of Central Bank, an important milestone in our history. Within our marketing plan for our 80th anniversary, we will celebrate the principles that have defined Central Bank for eight decades while demonstrating how we are evolving in the ways that matter most.

## RETIREES

At Central Bank, our people make us who we are. As a leader, I'm honored to have worked with so many associates whose tireless efforts contribute to the success of Central Bank and the communities we serve. I want to express my personal thanks to each of the long-term colleagues who completed their service with us to begin new chapters in their lives: Venita Garrard (Nicholasville Road, 41 years); Diane Gentry (Client Services, 40 years); Lisa Williamson (Financial Planning, 24 years); Elaine Fawbush (Taylorsville Road, 20 years); Charlotte Warren (Sir Barton, 18 years); David Ross (Lexington, 17 years); Jeff Fultz (Richmond, 17 years); Jenny Burns (Crestview Hills, 15 years); Mary Pat Landrum (Turfway, 9 years); Ed Cundiff (Outer Loop, 8 years); and Cathy Nordman (Ft. Mitchell, 8 years).

## WITH APPRECIATION

Our success would not be possible without the time, insight and support provided by our directors. They are the vital connection between us and our local markets, and their constant leadership is both invaluable and appreciated.

We want to extend our appreciation to Lee Ann Pope for joining our Board of Directors. Her commitment to community engagement strengthens our leadership and reflects the values Central Bank stands for every day.

We would also like to offer our sincere gratitude to Wayne Martin for long-standing service on our board following his retirement. His leadership, insight and commitment have made a meaningful impact on the Company and our community.

To all our employees, we are sincerely grateful for your efforts. You work hard, care for our customers and your fellow employees, and are knowledgeable about all we offer along with our mission. You are the reason Central Bank is consistently named one of the Best Places to Work in Kentucky.

In closing, but with great importance, we want to extend a heartfelt thanks to the people who choose to bank with us every day. In an ever-changing financial landscape with more options than ever, you've chosen a real banking partner made up of real people. It's been our privilege to help you achieve your financial goals this year, and we look forward to continuing that partnership for many years to come.



Luther Deaton, Jr.

Chairman,
President & CEO
March 13, 2026

In performing an audit in accordance with GAAS, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.
- Identify and assess the risks of material misstatement of the consolidated financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the consolidated financial statements.
- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances.
- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the consolidated financial statements.
- Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about Central Bancshares, Inc.'s ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control-related matters that we identified during the audit.

Crowe LLP

Crowe LLP
Louisville, Kentucky
March 13, 2026

**Fair Value of Financial Instruments:** Fair values of financial instruments, as more fully disclosed in Note 9, are estimated using relevant market information and other assumptions. Fair value estimates involve uncertainties and matters of significant judgment regarding interest rates, credit risk, prepayments, and other factors, especially in the absence of broad markets for particular items. Changes in assumptions or in market conditions could significantly affect the estimates.

**Earnings Per Share:** Basic earnings per share is net income divided by the weighted average number of shares outstanding during the period. ESOP shares are considered outstanding for this calculation unless unearned. The Company has no shares outstanding which are potentially dilutive.

**Comprehensive Income:** Comprehensive income consists of net income and other comprehensive income. Other comprehensive income includes unrealized gains and losses on debt securities available for sale, net of related income tax, and changes in the funded status of its supplemental non-qualified pension and deferred compensation plans, net of related income tax. Accumulated other comprehensive income is recognized as a separate component of equity. Accumulated other comprehensive loss at December 31, 2025 of $8,187 was comprised of $1,524 related to the non-qualified pension plan and $6,663 related to an unrealized net loss on available for sale debt securities. Accumulated other comprehensive loss at December 31, 2024 of $15,666 was comprised of $1,469 related to the non-qualified pension plan and $14,197 related to an unrealized net loss on available for sale debt securities.

**Loss Contingencies:** Loss contingencies, including claims and legal actions arising in the ordinary course of business, are recorded as liabilities when the likelihood of loss is probable and an amount or range of loss can be reasonably estimated. Management does not believe that there now are such matters that will have a material effect on the consolidated financial statements.

**Dividend Restriction:** Banking regulations require maintaining certain capital levels and may limit the dividends paid by the Bank to the holding company or by the holding company to shareholders.

**Restrictions on Cash:** The Company is required to maintain a deposit balance with the Federal Reserve Bank to meet its clearing requirements.

**Common Share Redemption:** In early 2024, the Company's Board of Directors authorized the repurchase of a limited number of common shares held by former employees or their beneficiaries that had been issued in past years in connection with the ESOP. The Company redeemed 6,339 of voting and 628,351 of non-voting common shares in the amount of $6,505 during 2024. The redemption period for this authorization has expired.

**Reclassifications:** Certain amounts in the accompanying consolidated financial statements presented for prior years have been reclassified to conform to the current year presentation. Reclassifications had no effect on prior year net income or shareholders' equity.

**Adoption of New Accounting Standard:** In March 2023, the Financial Accounting Standards Board issued Accounting Standards Update ("ASU") 2023–02, "Investments – Equity Method and Joint Ventures (Topic 323): Accounting for Investments in Tax Credit Structures Using the Proportional Amortization Method." The amendments in this update allow reporting entities to elect to account for equity investments made primarily for the purpose of receiving income tax credits by using the proportional amortization method if certain conditions are met, regardless of the tax credit program from which the related income tax credits are received. The amendments allow for making the election to apply the proportional amortization method on a tax-credit-program-by-tax-credit-program basis, as opposed to applying this method at the reporting entity level or to individual investments. The Company adopted the amendments of this ASU on January 1, 2025. The adoption did not have a material impact on the Company's consolidated financial statements since it did not elect the proportional amortization method to account for the investment in its low-income housing tax credit partnerships.

# EXHIBIT BB

Chapter 13 Trustee's Periodic Accounting Report as of August 31, 2026 (Case No. 1:24-bk-11814-MB, Doc. 81)

Wain v. Central Bank & Trust Co., Adv. Proc. No. 1:25-ap-01026-MB

Declaration of Douglas A. Wain ISO Opposition to Motion to Quash (Doc. 76)

**Elizabeth F. Rojas, Chapter 13 Trustee**
**15260 Ventura Blvd., Suite 830**
**Sherman Oaks, CA  91403**
**(818) 933-5700**
**www.ch13wla.com**

**STATUS REPORT FOR CASE # 1:24-bk-11814-MB AS OF 8/31/2026**

**Douglas Alan Wain**
**Elisa Wain**
**PO 7473**
**Westlake, CA  91359**

CURRENT CASE DISPOSITION:
ACTIVE

| | |
|---|---|
| FILING DATE: | 10/30/2024 |
| 1ST MEETING DATE: | 12/18/2024 |
| CONFIRMATION DATE: | N/A |
| TERM OF PLAN: | 0 MONTHS |
| PERCENT TO UNSECURED: | 0 % |
| MONTHLY PLAN PMT: | $0.00 |
| GROSS RECEIPTS: | $4,400.00 |
| REFUNDS FR CREDITORS: | $0.00 |
| NET PAID CREDITORS: | $0.00 |
| FEES PAID TO ATTY: | $0.00 |
| FEES PAID TO TRUSTEE: | $440.00 |
| REFUNDS TO DEBTORS: | $0.00 |
| BALANCE ON HAND: | $3,960.00 |

| LAST 12 RECEIPTS | |
|---|---|
| 08/20/2026 | $200.00 |
| 07/16/2026 | $200.00 |
| 06/18/2026 | $200.00 |
| 05/21/2026 | $200.00 |
| 04/16/2026 | $200.00 |
| 03/19/2026 | $200.00 |
| 02/11/2026 | $200.00 |
| 01/15/2026 | $200.00 |
| 12/18/2025 | $200.00 |
| 12/01/2025 | $200.00 |
| 10/17/2025 | $200.00 |
| 09/22/2025 | $200.00 |

| TRUSTEE CLAIM # | CREDITOR NAME / ACCOUNT # | CLASS | INT% | SCHEDULED AMOUNT | CLAIMED AMOUNT | PRINCIPAL PAID | INTEREST PAID | PRINCIPAL BAL OWED |
|---|---|---|---|---|---|---|---|---|
| ATTY | IN PRO PER | PRIOR ATTORNEY | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ATTY | KEVIN T. SIMON | PRIOR ATTORNEY | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ATTY | IN PRO PER | ATTORNEY FEE | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 0001 | CENTRAL BANK & TRUST CO.<br>ACCT# 1792 | UNSECURED | | $357,944.91 | $357,990.91 | $0.00 | $0.00 | $0.00 |
| 0002 | BANK OF AMERICA, N.A.<br>ACCT# 2078 | UNSECURED | | $0.00 | $12,434.37 | $0.00 | $0.00 | $0.00 |

**TOTAL PRINCIPAL BALANCE OWED: $0.00**

**Duplicate Claims:** You may believe that certain claims are listed twice, nevertheless, the Trustee is required to pay all claims until the Court directs otherwise. A letter to the Trustee will not stop payment on any claim, the debtors must instead secure an order from the Court. Please contact your attorney for assistance.
**Online Access:** The Trustee offers online access to your case in which you can view status reports, payment history, and much more. Please visit our website at www.ch13wla.com to sign up for an account.
**AutoPay:** The Trustee now offers an easy and convenient way to have your plan payments automatically debited from your checking account. Please visit our website at www.ch13wla.com for more information.

# EXHIBIT CC

Excerpts of Crowe LLP's Document Production (Crowe 000001–000077) in Response to Plaintiffs' Rule 45 Subpoena

Stoll Keenon Ogden PLLC audit-inquiry response to Crowe, FY2021 audit, February 18, 2022 (Crowe 000011–000015)

Stoll Keenon Ogden PLLC audit-inquiry response to Crowe, FY2025 audit, February 11, 2026 (Crowe 000035–000040)

Crowe LLP, Z030 Attorney Letter Evaluation, year-end 2019 audit (Crowe 000041–000044)

Crowe LLP, Z030 Attorney Letter Evaluation, year-end 2025 audit (Crowe 000073–000077)

Wain v. Central Bank & Trust Co., Adv. Proc. No. 1:25-ap-01026-MB

Declaration of Douglas A. Wain ISO Opposition to Motion to Quash (Doc. 76)

STOLL KEENON OGDEN PLLC

**GREGORY D. PAVEY**
DIRECT DIAL: (859) 231-3911
DIRECT FAX: (859) 246-3691
gregory.pavey@skofirm.com

300 WEST VINE STREET
SUITE 2100
LEXINGTON, KY 40507-1801
MAIN: (859) 231-3000
FAX: (859) 253-1093

February 18, 2022

Crowe Horwath LLP
Attn: CAST
P.O. Box 7
South Bend, IN 46699

Re: Audit of Central Bank & Trust Co.

Ladies and Gentlemen:

By letter received February 2, 2022, Central Bank & Trust Co. requested that we furnish you with certain information in connection with your examination of its financial statements (the "Client"). In the future, please send all correspondence directly to the attention of the undersigned. The "Effective Date" of this response is February 18, 2022.

There being no matters specifically identified in the Client's audit inquiry letter to us and upon which comment has been specifically requested, as contemplated by Clauses (b) and (c) of Paragraph 5 of the American Bar Association's Statement of Policy Regarding Lawyers' Responses to Auditors' Requests for Information ("ABA Statement of Policy"), we are not commenting to you with respect to any contractually assumed obligations or any unasserted possible claims or assessments.

The information set forth herein is as of the Effective Date of this response, and we disclaim any undertaking to advise you of changes which thereafter may be brought to our attention. References in this letter to "I," "me" and "my" mean only the specific attorney signing this letter for our firm and do not include this firm, any other lawyer practicing with this firm or any other person.

While this firm represents the Client on a regular basis, our engagement has been limited to specific matters as to which we were consulted by the Client.

Subject to the provisions of this letter and except as otherwise stated in this letter, please be advised that I am not aware our firm was engaged, during the period from December 31, 2020 until the Effective Date, to give substantive attention on behalf of the Client to, or represent the Client in connection with, material loss contingencies coming within the scope of Clause (a) of Paragraph 5 of the ABA Statement of Policy, to the extent such loss contingencies both (a) relate

to unresolved (on the Effective Date) pending or overtly threatened litigation known to me and (b) will, in my opinion, directly, materially and adversely affect the interests of the Client, except possibly the following:

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted] [redacted]

[redacted]

***Central Bank & Trust Co. v. Douglas and Elise Wain***
**Fayette Circuit Court, Civil Action No. 19-CI-812**

1. Name(s) of the plaintiffs:

   The Client, plaintiff and counterclaim defendant, and Douglas A. Wain and Elise Wain (the "Wains"), defendants and counterclaim plaintiffs.

2. Amount sued for:

   The Client seeks the amount owed under the home equity line agreement (plus interest) which was, as of July 8, 2020, $380,685.43 as well as cost and fees incurred in the litigation. The Wains have sought an undisclosed amount of damages on their counterclaims.

3. Nature of litigation:

   This case began as a straightforward foreclosure and debt collection case based on the Wains' default on payments on a home equity line of credit and mortgage. The Wains answered the complaint and alleged counterclaims for breach of the parties' account agreement, violation of the Truth in Lending Act, and fraud.

4. Expected result, including any probable loss:

   Since our last update on this case, the Fayette Circuit Court granted partial summary judgment, judgment on the pleadings and an order of sale (the "Judgment") against the Wains. The property was sold at a Master Commissioner Sale and we are awaiting distribution of the proceeds to the first mortgage holder and then the remainder to Central Bank as the second mortgage holder. After the Judgment was entered, on February 17, 2021, the Wains filed a notice of appeal of the Judgment. After filing the notice of appeal, the Wains failed to post a supersedeas bond to stay enforcement or execution of the Judgment. Therefore, on February 24, 2021, the Fayette Circuit Court confirmed the Master Commissioner sale of the property. In the appeal, all briefing has been submitted to the Kentucky Court of Appeals for decision. Since filing the notice of appeal, the Wains have not pursued the prosecution of their counterclaim against the Bank. In short, there is only limited exposure for Central Bank on the claims made by the Wains. We expect a decision on the appeal by the Kentucky Court of Appeals within the next 12 to 18 months.

**Miscellaneous Matters**

The Client is involved in commercial litigation, including foreclosure matters, in which it may be the Plaintiff or the Defendant seeking, among other remedies, the return of its collateral or the sale of its collateral through judicial

foreclosure. In none of these cases, except the Wain case, has a claim been asserted for money damages against the Client. However, in certain of these cases, the Client may incur a loss as a result of the lack of value of its collateral in relation to the amount owed by the Client's customer(s). We cannot and do not by this letter make a judgment or valuation of the potential loss to the Client in such situations.

For purposes of the foregoing no loss, contingency, claim or other matter is considered material unless the claim exceeds $100,000.00, exclusive of interest, litigation and other costs and expenses and attorneys' fees.

This response is limited by, and is in accordance with, the ABA Statement of Policy. Without limiting the generality of the foregoing, the limitations set forth in Paragraphs 2 and 7 of the ABA Statement of Policy on the scope and use of this response are specifically incorporated herein by reference, and any description herein of any "loss contingencies" is qualified in its entirety by Paragraph 5 of that ABA Statement of Policy and the accompanying Commentary (which is an integral part of that ABA Statement of Policy). Consistent with the last sentence of Paragraph 6 of the ABA Statement of Policy and pursuant to the Client's request, this will confirm as correct the Client's understanding, as set forth in its audit inquiry letter to us, that whenever, in the course of performing legal services for the Client with respect to a matter recognized to involve an unasserted possible claim or assessment that may call for financial statement disclosure, we form a professional conclusion that the Client must disclose or must consider disclosure concerning such possible claim or assessment, we, as a matter of professional responsibility to the Client, will so advise the Client and consult with it concerning the question of such disclosure and the applicable requirements of the Statement of Financial Accounting Standards No. 5.

This letter is solely for your information in connection with your examination of the Client's financial statements. It is not to be quoted in whole or in part or otherwise referred to in any financial statement of the Client or related document, nor is it to be filed with or furnished to any governmental agency or other person or entity, without our prior written consent.

The Client has advised us, or it is our assumption that, by making the request set forth in its letter to us, the Client does not intend to waive the attorney-client privilege with respect to any information which the Client has furnished to us, and this response should be construed accordingly. Moreover, please be advised that our response to you should not be construed in any way to constitute a waiver of the protection of the attorney work-product privilege with respect to any of our files involving the Client.

Finally, the unpaid fees as of December 31, 2021 are as follows:

| | |
|---|---|
| Billed/unpaid fees: | $ 0.00 |
| Billed/unpaid disbursements: | $ 0.00 |
| Unbilled fees: | $ 7,626.50 |
| Unbilled disbursements: | $ 1,540.21 |

Very truly yours,

STOLL KEENON OGDEN PLLC

Gregory D. Pavey

Gregory D. Pavey

GDP: abn
cc: Mr. Edward Barnes, CFO
Mr. Steve Hall, VP, Special Assets

STOLL KEENON OGDEN PLLC

**TIMOTHY R. WISEMAN**
TIM.WISEMANY@SKOFIRM.COM

300 WEST VINE STREET, SUITE 2100
LEXINGTON, KY 40507
MAIN: 859-231-3000
FAX: 859-253-1093
WWW.SKOFIRM.COM

February 11, 2026

Crowe LLP, ATTN: GDT
PO Box 7
South Bend, IN 46699

Re: Audit of Central Bank & Trust Co.

Ladies and Gentlemen:

By letter dated January 2, 2026, Central Bank & Trust Co. (the "Client" or "Central Bank") requested that we furnish you with certain information in connection with your examination of the financial statements of the Client. The "Effective Date" of this response is February 11, 2026.

There being no matters specifically identified in the Client's audit inquiry letter to us and upon which comment has been specifically requested, as contemplated by Clauses (b) and (c) of Paragraph 5 of the American Bar Association's Statement of Policy Regarding Lawyers' Responses to Auditors' Requests for Information ("ABA Statement of Policy"), we are not commenting to you with respect to any contractually assumed obligations or any unasserted possible claims or assessments.

The information set forth herein is as of the Effective Date of this response, and we disclaim any undertaking to advise you of changes which thereafter may be brought to our attention. References in this letter to "I", "me" and "my" mean only the specific attorney signing this letter for our Firm and do not include this Firm, any other lawyer practicing with this Firm or any other person.

While this Firm represents the Client on a regular basis, our engagement has been limited to specific matters as to which we were consulted by the Client.

Subject to the provisions of this letter and except as otherwise stated in this letter, please be advised that I am not aware our Firm was engaged, during the period from December 31, 2025 until the Effective Date, to give substantive attention on behalf of the Client to, or represent the Client in connection with, material (as defined below) loss contingencies coming within the scope of Clause (a) of Paragraph 5 of the ABA Statement of Policy, to the extent such loss contingencies both (a) relate to unresolved (on the Effective Date) pending or overtly threatened litigation known to me and (b) will, in my opinion, directly, materially and adversely affect the interests of the Client, except possibly the following:

***Douglas A. Wain and Elise Wain v. Central Bank & Trust Co. et al.***
**United States District Court for the Eastern District of Kentucky,**
**Case No. 5:23-cv-139-REW-MAS**

1. Name(s) of the parties:

Douglas A. and Elise Wain ("Wains," plaintiffs)

The Client (defendant and counterclaim plaintiff)

Equifax, TransUnion, and Experian (dismissed / settled defendants)

2. Nature of litigation:

This case arises from Client's foreclosure and debt collection case based on the Wains' default on payments on a home equity line of credit and mortgage. Client obtained a judgment and order of sale in that action. The Wains have brought this action asserting that the Client has violated the Fair Credit Reporting Act ("FCRA") by reporting false information related to that judgment.

3. How management is responding to the litigation:

Client has answered the Wains' complaint, denying all allegations that it violated that FCRA, and Client has asserted a counterclaim against the Wains for setoff or recoupment based on the judgment awarded to Central Bank against the Wains by the Fayette Circuit Court in the amount of $358,412.72, plus interest from March 6, 2019, until paid, plus costs expended and attorneys' fees ("Judgment"). The U.S. District Court has entered an initial scheduling order. In accordance with that order, Client submitted a timely motion for summary judgment. It is pending, as the U.S. District Court determines the impact of the Chapter 13 bankruptcy filed by the Wains.

Evaluation of likelihood of an unfavorable outcome and an estimate of the amount or range of potential loss:

An unfavorable outcome does not seem likely given the information provided by the Client to date. That information shows the Client complied with the FCRA and that its conduct would be unlikely to be considered a violation. The Wains have not provided an estimate of the damages they claim from their allegations about FCRA violations by the Client. Furthermore, the Chapter 13 bankruptcy filing may have robbed the Wains of standing to pursue their claim. Regardless, it is unlikely the Wains could be able to prove damages that exceed the Judgment awarded to Central Bank.

***Douglas A. Wain and Elise Wain v. Pavel Moskvich et al.***
**Jessamine Circuit Court,**
**Civil Action No. 23-CI-97**

1. Name(s) of the parties:

   Douglas A. and Elise Wain ("Wains," plaintiffs)

   Pavel Moskvich ("Moskvich," defendant)

   The Client (defendant)

   NewRez LLC d/b/a Shellpoint Mortgage Servicing ("NewRez," defendant)

   PMC Construction, LLC ("PMC," defendant)

2. Nature of litigation:

   This case also arises from Client's foreclosure and debt collection case based on the Wains' default on payments on a home equity line of credit and mortgage. Client obtained a judgment and order of sale in that action. The Wains' home, the collateral for the mortgage, was sold pursuant to the Fayette Circuit Court's orders. The Wains have brought this action asserting that, after the sale of their home, but before they were required to vacate, personal property was removed from their home. As a result, the Wains have brought claims against the Client, the other lienholder asserting an interesting in their home (NewRez), and the buyers of their home at the judicial sale (Moskvich and PMC).

3. How management is responding to the litigation:

   Client has answered the Wains' complaint, denying all allegations that it removed personal property from the Wains' home and denying that it has any liability to the Wains. Client thereafter successfully moved for summary judgment on all claims. The Wains have appealed, and that appeal is pending. However, the appeal is stayed due to Wains' Chapter 13 bankruptcy.

4. Evaluation of likelihood of an unfavorable outcome and an estimate of the amount or range of potential loss:

   An unfavorable outcome does not seem likely. The Client had no control over the Wains' property at any time and the Wains' own pleadings contain admissions that undercut their own allegations. The summary judgment entered in favor of the Client is unlikely to be overturned.

***Central Bank & Trust Co. v. Douglas and Elise Wain***
**Fayette Circuit Court, Civil Action No. 19-CI-812**

1. Name(s) of the parties:

The Client (plaintiff and counterclaim defendant)

Douglas A. and Elise Wain ("Wains," defendants and counterclaim plaintiffs)

NewRez LLC d/b/a Shellpoint Mortgage Servicing ("NewRez," defendant)

U.S. Bank Trust National Association, not in its individual capacity but solely as owner Trustee for RCF 2 Acquisition Trust ("USB" defendant")

2. Nature of litigation:

The Client sought the amount owed under the home equity line agreement (plus interest) which was, as of July 8, 2020, $380,685.43 as well as cost and fees incurred in the litigation. The Wains have sought an undisclosed amount of damages on their counterclaims. The case began as a straightforward foreclosure and debt collection case based on the Wains' default on payments on a home equity line of credit and mortgage. The Wains answered the complaint and alleged counterclaims for breach of the parties' account agreement, violation of the Truth in Lending Act, and fraud.

3. Expected result, including any probable loss:

The Fayette Circuit Court granted partial summary judgment, judgment on the pleadings and an order of sale (the "Judgment") against the Wains in favor of the Client. The property was sold at a Master Commissioner Sale and we are awaiting distribution of the proceeds to the first mortgage holder and then the remainder to the Client as the second mortgage holder. Since our last update, that Judgment has been affirmed on appeal, and the proceeds have now been distributed. Thereafter, the Wains have attempted to pursue their counterclaims against the Client as well frivolous and duplicative attempts to overturn the judgment. The court granted summary judgment and dismissed all counterclaims asserted against Central Bank. However, Mr. Wains appealed. That appeal is stayed as a result of their bankruptcy. Still, there is only limited exposure for Client on the claims made by the Wains.

**Miscellaneous Matters**

The Client is involved in commercial litigation, including foreclosure matters, in which it may be the Plaintiff or the Defendant seeking, among other remedies, the return of its collateral or the sale of its collateral through judicial foreclosure. In none of these cases, except the Wain case, has a claim

been asserted for money damages against the Client. However, in certain of these cases, the Client may incur a loss as a result of the lack of value of its collateral in relation to the amount owed by the Client's customer(s). We cannot and do not by this letter make a judgment or valuation of the potential loss to the Client in such situations.

For purposes of the foregoing no loss contingency, claim or other matter is considered material unless the claim exceeds, and we believe there is a reasonable possibility that there will be an adverse outcome to the Client in excess of, $100,000.00, exclusive of interest, litigation and other costs and expenses and attorneys' fees. Notwithstanding the foregoing, the routine handling of correspondence and notices by us, or by an entity affiliated with our Firm, as registered agent for the Client does not constitute substantive attention by us to a matter or representation of the Client by us in connection with a matter.

This response is limited by, and is in accordance with, the ABA Statement of Policy. Without limiting the generality of the foregoing, the limitations set forth in Paragraphs 2 and 7 of the ABA Statement of Policy on the scope and use of this response are specifically incorporated herein by reference, and any description herein of any "loss contingencies" is qualified in its entirety by Paragraph 5 of that ABA Statement of Policy and the accompanying Commentary (which is an integral part of that ABA Statement of Policy). Consistent with the last sentence of Paragraph 6 of the ABA Statement of Policy, you may properly assume that whenever, in the course of performing legal services for the Client with respect to a matter recognized to involve an unasserted possible claim or assessment that may call for financial statement disclosure, we form a professional conclusion that the Client must disclose or must consider disclosure concerning such possible claim or assessment, we, as a matter of professional responsibility to the Client, will so advise the Client and consult with it concerning the question of such disclosure and the applicable requirements of the FASB Accounting Standards Codification Subtopic 450.20 (originally issued as FASB Statement No. 5, Accounting for Contingencies).

This letter is solely for your information in connection with your examination of the Client's financial statements. It is not to be quoted in whole or in part or otherwise referred to in any financial statement of the Client or related document, nor is it to be filed with or furnished to any governmental agency or other person or entity, without our prior written consent.

The Client has advised us or it is our assumption that, by making the request set forth in its letter to us, the Client does not intend to waive the attorney-client privilege with respect to any information which we may have, and this response should be construed accordingly. Moreover, please be advised that our response to you should not be construed in any way to constitute a waiver of the protection of the attorney work-product privilege with respect to any of our files involving the Client.

Finally, the unpaid fees as of December 31,2025, are as follows:

| | |
|---|---|
| Billed/unpaid fees: | $ 236.80 |
| Billed/unpaid disbursements: | $ 0.00 |
| Unbilled fees: | $45,163.55 |
| Unbilled disbursements: | $ 724.80 |

Please let us know if you should desire any clarification or additional information. Also, please let us know if you require specific information regarding amounts due for fees or expenses.

Very truly yours,

Stoll Keenon Ogden PLLC

Timothy R. Wiseman

cc: Central Bank & Trust Co.
Mr. Edward Barnes, CFO
Ms. Melissa Shimfessel, Vice President/Corporate Secretary
Gregory D. Pavey

100443/163845:4904-2382-1709v1

***PURPOSE:*** *To evaluate attorney letter responses and to identify potential material misstatements in the financial statements and disclosures*
Ellen Sharp leads the special asset group. She is responsible for all loan litigation as she is also an attorney.

| Name of Attorney Contacted | Control Copy | Response | Comments | Effective Date of Letter |
|---|---|---|---|---|
| **1. Stoll Keenon Ogden** | Stoll Signed.pdf | RT-Stoll Keenon.pdf | [redacted]<br><br>**Central Bank vs Douglas/Elise Wain: Defendants of Home Equity Line collection and filed counterclaim against Central Bank. SKO notes counterclaim is without merit. No opinion expressed as to the outcome of the matter.**<br><br>**Outstanding and unpaid invoices of $18,400 (below DM)**<br><br>**Crowe inquired with Ellen Sharp on 3/5/20 and she noted there were no updates to this litigation. As there were no significant issues noted in the initial letter, Crowe has deemed following up with Ellen to be sufficient to address the risk.** | **1/31/20** |

© 2026 Crowe LLP. All rights reserved. This document and the information contained herein is proprietary and confidential and may not be duplicated, distributed, or displayed to any other person or entity without the express written consent of Crowe. No other person or entity may use or rely on this document or the information contained herein for any purpose.
CONFIDENTIAL

| | | | | |
|---|---|---|---|---|
| 2. Frost Brown Todd | Frost Brown Signed.pdf | RT-Frost Brown.pdf | [redacted] | 2/18/20 |
| 3. Fowler Bell | Fowler Signed.pdf | RT-Fowler Bell.pdf | [redacted] | 2/13/20 |

© 2026 Crowe LLP. All rights reserved. This document and the information contained herein is proprietary and confidential and may not be duplicated, distributed, or displayed to any other person or entity without the express written consent of Crowe. No other person or entity may use or rely on this document or the information contained herein for any purpose.
CONFIDENTIAL

| | | | | |
|---|---|---|---|---|
| **4. Morgan Pottinger McGarvey** | Morgan Pottinger Signed.pdf | RT-Morgan Pottinger.pdf | [redacted] | **3/3/20** |

* - If you need to send more than four letters, download another copy of this workpaper.

| Procedure | Attorney 1 | | Attorney 2 | | Attorney 3 | | Attorney 4 | |
|---|---|---|---|---|---|---|---|---|
| | Yes | No | Yes | No | Yes | No | Yes | No |
| **Part 1 – Overall Letter**<br>For responses with red shading, contact the attorney to understand the circumstance(s) surrounding the form of attorney letter provided. If the attorney letter can be revised so that a response with green shading can be achieved, consider obtaining an updated attorney letter based on associated risk. If the attorney letter cannot be revised, evaluate in accordance with applicable authoritative guidance. | | | | | | | | |
| 1. Is the attorney letter addressed to our firm? | x | | x | | X | | x | |
| 2. Does the attorney letter represent itself as the response of the law firm, if any, not that of only the signing attorney? | x | | x | | X | | x | |
| 3. Does the attorney letter cover matters existing at year end and arising through the effective date of the response? | x | | x | | X | | x | |
| 4. Does the effective date of the letter meet both criteria below?<br>• Later than the balance sheet date **and**<br>• As close to the report date as is practicable in the circumstances | x | | x | | X | | x | |
| 5. Does the attorney letter expressly cover all entities included in consolidated or combined financial statements or expressly cover all entities requested in the request letter? | x | | x | | X | | x | |
| 6. Does the attorney letter include scope limitations that could result in a qualified opinion or disclaimer of opinion? | | x | | x | | X | | x |
| 7. If the attorney letter is limited to material matters, is the materiality threshold stated in excess of the one in our request? | | x | | x | | X | | x |
| 8. If the attorney letter confirms liabilities, for example, unpaid and/or unbilled legal fees as of the balance sheet date (optional) and the amount is greater than TM, is the liability accounted for properly? | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

© 2026 Crowe LLP. All rights reserved. This document and the information contained herein is proprietary and confidential and may not be duplicated, distributed, or displayed to any other person or entity without the express written consent of Crowe. No other person or entity may use or rely on this document or the information contained herein for any purpose.
CONFIDENTIAL

| Procedure | Attorney 1 Yes | Attorney 1 No | Attorney 2 Yes | Attorney 2 No | Attorney 3 Yes | Attorney 3 No | Attorney 4 Yes | Attorney 4 No |
|---|---|---|---|---|---|---|---|---|
| 9. Does the attorney letter expressly confirm attorney's professional responsibility to advise the client if he/she (or the firm) has formed any professional conclusion that client should make or consider disclosure regarding an unasserted claim or assessment? (Applies regardless of whether the attorney was engaged to deal with such matters and may be omitted **only** if the attorney adequately discloses, or explicitly disclaims any knowledge of, unasserted claims and assessments.) | x | | x | | X | | x | |
| 10. Is the attorney letter prepared substantially in accordance with American Bar Association policy? | x | | x | | x | | x | |
| **Part 2 – Litigation, Claims, or Assessments**<br>If the attorney letter contains pending or threatened litigation, unasserted claims or assessments, evaluate its form by responding to the following questions. If the attorney letter does not contain pending or threatened litigation, unasserted claims and assessments, **STOP** and do not complete part 2 or part 3.<br><br>If any response is **<u>No</u>**, contact the attorney to understand the circumstances surrounding the pending or threatened litigation, unasserted claims or assessments further. If the attorney letter can be revised so that a **<u>Yes</u>** response can be achieved, consider obtaining an updated attorney letter based on associated risk. If the attorney letter cannot be revised, evaluate in accordance with applicable authoritative guidance. | | | | | | | | |
| 11. Does the attorney letter adequately describe the nature of pending or threatened litigation, unasserted claims and assessments and amounts or ranges of potential losses, if known? | X | | x | | X | | x | |
| 12. Does the attorney letter include a clearly stated opinion of the likelihood of the outcome of identified matter(s), if possible? | X | | X | | X | | x | |
| 13. Does the attorney letter express counsel's current position on pending matters that is consistent with prior opinions, or disclose the reasons for change? | x | | X | | X | | x | |
| **Part 3 – Accounting for and Disclosure of Litigation, Claims, or Assessments**<br>If the attorney letter contains pending or threatened litigation, unasserted claims or assessments, evaluate the financial statements and/or disclosures by responding to the following questions: | | | | | | | | |
| 14. Are the financial statements and/or disclosures in accordance with contingency guidance? | X | | x | | X | | x | |
| 15. Are the financial statements and/or disclosures consistent with the attorney letter? | X | | X | | x | | x | |

© 2026 Crowe LLP. All rights reserved. This document and the information contained herein is proprietary and confidential and may not be duplicated, distributed, or displayed to any other person or entity without the express written consent of Crowe. No other person or entity may use or rely on this document or the information contained herein for any purpose.

CONFIDENTIAL

***PURPOSE:*** *To evaluate attorney letter responses and to identify potential material misstatements in the financial statements and disclosures*

| Name of Attorney Contacted | Control Copy | Response | Comments | Effective Date of Letter |
|---|---|---|---|---|
| **1. Fowler Bell** | Fowler Bell.pdf | AT-Fowler 2026-02-16 Central Bank Audit Response - Letter to Crowe LLP.pdf | **There are no outstanding litigation matters that Fowler Bell is handling for Central. The amount of billed and unbilled time as of 12/31/2025 is $0.00.** | **2/16/2026**<br><br>**As no material probable loss is expected and unpaid fees are immaterial, we will pass on follow-up.** |
| **2. Morgan Pottinger McGarvey** | Morgan Pottinger McGarvey.pdf | AT-Morgan Pottinger Central Bank response.pdf | [redacted] | **2/4/2026**<br><br>**As no material probable loss is expected and unpaid fees are immaterial, we will pass on follow-up.** |
| **3. Stoll Keenon Ogden** | Stoll Keenon Ogden.pdf | AT-SKO Audit Letter (Central Bank 2026).pdf | **Wain vs Central: Unfavorable outcome does not seem likely; Plaintiffs still have not provided an estimate of damages – summary judgment in favor of Central not likely to be overturned. This is consistent w/ the PY.**<br><br>**Miscellaneous matters: No cases except the Wain case has a claim been asserted for money damages against Central**<br><br>**Unbilled expenses of $45K (below DM)** | **2/11/2026**<br><br>**As no material probable loss is expected and unpaid fees are immaterial, we will pass on follow-up.** |

© 2026 Crowe LLP. All rights reserved. This document and the information contained herein is proprietary and confidential and may not be duplicated, distributed, or displayed to any other person or entity without the express written consent of Crowe. No other person or entity may use or rely on this document or the information contained herein for any purpose.
CONFIDENTIAL

| | | | | |
|---|---|---|---|---|
| **4. Frost Brown Todd** | Frost Brown Todd.pdf | AT-FBT Central Bank & Trust Co. 2026-03-04.pdf | [redacted] | **3/4/2026** |

© 2026 Crowe LLP. All rights reserved. This document and the information contained herein is proprietary and confidential and may not be duplicated, distributed, or displayed to any other person or entity without the express written consent of Crowe. No other person or entity may use or rely on this document or the information contained herein for any purpose.
CONFIDENTIAL

| | | | | |
|---|---|---|---|---|
| | | | [redacted] | |

* - If you need to send more than four letters, download another copy of this workpaper.

| Procedure | Fowler Bell Yes | Fowler Bell No | Morgan Pottinger McGarvey Yes | Morgan Pottinger McGarvey No | Stoll Keenon Ogden Yes | Stoll Keenon Ogden No | Frost Brown Todd Yes | Frost Brown Todd No |
|---|---|---|---|---|---|---|---|---|
| **Part 1 – Overall Letter**<br>For responses with red shading, contact the attorney to understand the circumstance(s) surrounding the form of attorney letter provided. If the attorney letter can be revised so that a response with green shading can be achieved, consider obtaining an updated attorney letter based on associated risk. If the attorney letter cannot be revised, evaluate in accordance with applicable authoritative guidance. | | | | | | | | |
| 1. Is the attorney letter addressed to our firm? | X | | X | | X | | X | |
| 2. Does the attorney letter represent itself as the response of the law firm, if any, not that of only the signing attorney? | X | | X | | X | | X | |
| 3. Does the attorney letter cover matters existing at year end and arising through the effective date of the response? | X | | X | | X | | X | |
| 4. Does the effective date of the letter meet both criteria below?<br>• Later than the balance sheet date **and**<br>• As close to the report date as is practicable in the circumstances | See notes above | | See notes above | | See notes above | | X | |
| 5. Does the attorney letter expressly cover all entities included in consolidated or combined financial statements or expressly cover all entities requested in the request letter? | X | | X | | X | | X | |
| 6. Does the attorney letter include scope limitations that could result in a qualified opinion or disclaimer of opinion? | | X | | X | | X | | X |
| 7. If the attorney letter is limited to material matters, is the materiality threshold stated in excess of the one in our request? | | X | | X | | X | | X |
| 8. If the attorney letter confirms liabilities, for example, unpaid and/or unbilled legal fees as of the balance sheet date (optional) and the amount is greater than TM, is the liability accounted for properly? | X | | X | | X | | X | |

© 2026 Crowe LLP. All rights reserved. This document and the information contained herein is proprietary and confidential and may not be duplicated, distributed, or displayed to any other person or entity without the express written consent of Crowe. No other person or entity may use or rely on this document or the information contained herein for any purpose.
CONFIDENTIAL

| Procedure | Fowler Bell Yes | Fowler Bell No | Morgan Pottinger McGarvey Yes | Morgan Pottinger McGarvey No | Stoll Keenon Ogden Yes | Stoll Keenon Ogden No | Frost Brown Todd Yes | Frost Brown Todd No |
|---|---|---|---|---|---|---|---|---|
| 9. Does the attorney letter expressly confirm attorney's professional responsibility to advise the client if he/she (or the firm) has formed any professional conclusion that client should make or consider disclosure regarding an unasserted claim or assessment? (Applies regardless of whether the attorney was engaged to deal with such matters and may be omitted **only** if the attorney adequately discloses, or explicitly disclaims any knowledge of, unasserted claims and assessments.) | X | | X | | X | | X | |
| 10. Is the attorney letter prepared substantially in accordance with American Bar Association policy? | X | | X | | X | | X | |
| **Part 2 – Litigation, Claims, or Assessments**<br>If the attorney letter contains pending or threatened litigation, unasserted claims or assessments, evaluate its form by responding to the following questions. If the attorney letter does not contain pending or threatened litigation, unasserted claims and assessments, **STOP** and do not complete part 2 or part 3.<br><br>If any response is **No**, contact the attorney to understand the circumstances surrounding the pending or threatened litigation, unasserted claims or assessments further. If the attorney letter can be revised so that a **Yes** response can be achieved, consider obtaining an updated attorney letter based on associated risk. If the attorney letter cannot be revised, evaluate in accordance with applicable authoritative guidance. | | | | | | | | |
| 11. Does the attorney letter adequately describe the nature of pending or threatened litigation, unasserted claims and assessments and amounts or ranges of potential losses, if known? | N/A | | X | | X | | X | |
| 12. Does the attorney letter include a clearly stated opinion of the likelihood of the outcome of identified matter(s), if possible? | N/A | | X | | X | | X | |
| 13. Does the attorney letter express counsel's current position on pending matters that is consistent with prior opinions, or disclose the reasons for change? | N/A | | X | | X | | X | |
| **Part 3 – Accounting for and Disclosure of Litigation, Claims, or Assessments**<br>If the attorney letter contains pending or threatened litigation, unasserted claims or assessments, evaluate the financial statements and/or disclosures by responding to the following questions: | | | | | | | | |
| 14. Are the financial statements and/or disclosures in accordance with contingency guidance? | N/A | | X | | X | | X | |
| 15. Are the financial statements and/or disclosures consistent with the attorney letter? | N/A | | X | | X | | X | |

© 2026 Crowe LLP. All rights reserved. This document and the information contained herein is proprietary and confidential and may not be duplicated, distributed, or displayed to any other person or entity without the express written consent of Crowe. No other person or entity may use or rely on this document or the information contained herein for any purpose.

CONFIDENTIAL

© 2026 Crowe LLP. All rights reserved. This document and the information contained herein is proprietary and confidential and may not be duplicated, distributed, or displayed to any other person or entity without the express written consent of Crowe. No other person or entity may use or rely on this document or the information contained herein for any purpose.
CONFIDENTIAL