DOUGLAS A. WAIN
ELISA WAIN
P.O. Box 7473
Westlake Village, CA 91359
Telephone: (859) 494-3677
Email: douglaswain@gmail.com
Plaintiffs in Pro Per

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| **In re**<br><br>**Douglas Alan Wain, Elisa Wain,**<br><br>**Debtors,**<br>______________________________<br><br>**Douglas Alan Wain and Elisa Wain**<br><br>**Plaintiffs,**<br>**vs.**<br><br>**Central Bank & Trust Co.**<br><br>**Defendant.** | **Case No. 1:24-bk-11814-MB**<br><br>**Adv. Proc. No. 1:25-ap-01026-MB**<br><br>**Chapter 13**<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ORDERS COMPELLING DEPOSITIONS, FOR A PROTECTIVE ORDER, AND FOR RELATED RELIEF; SUPPLEMENTAL STATEMENT OF POST-MOTION FACTS**<br><br>**Hon. Martin R. Barash**<br><br>**Hearing:**<br>**Date: September 24, 2026**<br>**Time: 2:30 p.m.**<br>**Courtroom 303**<br>**21041 Burbank Blvd.**<br>**Woodland Hills, CA 91367** |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................3

II. POST-MOTION FACTS...............................................................................................4

A. The two depositions that went forward confirmed where CBT's knowledge lives — and that no witness supports the claim's arithmetic. .......... 4

B. CBT's remaining witnesses: repeated written refusals, then an eleventh-hour motion. 6

C. Mr. Wiseman's own reply confirms his active role in this proceeding. .......... 7

D. The written-discovery stipulation, and CBT's admitted-but-unamended claim error. 9

E. The auditor's file confirms that no one at CBT has ever reconciled the claim. .......... 10

III. REPLY TO THE OPPOSITION'S ARGUMENTS .......... 11

A. "Decide the merits first" is not a ground to refuse discovery — it is the reason discovery exists. .......... 11

B. The apex characterization arrived thirty-four days late — and the record refutes it. 12

C. The complaints about Mr. Wain's deposition do not support denial of anything — and events have overtaken them. .......... 14

D. Declining to respond "point by point" concedes the Motion's showings. .......... 15

E. The request for a pre-filing bar, made in an opposition, is procedurally improper and unsupported. .......... 15

IV. SUPPLEMENTAL RELIEF .......... 15

V. CONCLUSION .......... 16

## TABLE OF AUTHORITIES

**Cases**

4WEB, Inc. v. NuVasive, Inc., 2025 WL 2881581 (S.D. Cal. Oct. 9, 2025) .......... 14

De Long v. Hennessey, 912 F.2d 1144 (9th Cir. 1990) .......... 15

Gray v. First Winthrop Corp., 133 F.R.D. 39 (N.D. Cal. 1990) .......... 11

In re Apple iPhone Antitrust Litig., 2021 WL 485709 (N.D. Cal. Jan. 26, 2021) .......... 14

In re Koshkalda, 622 B.R. 749 (B.A.P. 9th Cir. 2020) .......... 15

Lew v. Kona Hosp., 754 F.2d 1420 (9th Cir. 1985)....................12

Molski v. Evergreen Dynasty Corp., 500 F.3d 1047 (9th Cir. 2007)....................15

Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206 (9th Cir. 2002)....................12

Pioche Mines Consol., Inc. v. Dolman, 333 F.2d 257 (9th Cir. 1964)....................7, 12

Rivera v. NIBCO, Inc., 364 F.3d 1057 (9th Cir. 2004)....................12

Tradebay, LLC v. eBay, Inc., 278 F.R.D. 597 (D. Nev. 2011)....................11

**Rules**

Fed. R. Civ. P. 26(c)....................12

Fed. R. Civ. P. 30(b)(1)....................7

Fed. R. Civ. P. 30(c)(2)....................8, 9, 16

Fed. R. Civ. P. 30(d)....................8, 16

Fed. R. Civ. P. 37(d)....................7, 12, 16

Fed. R. Civ. P. 45(d)(3)....................6, 7

LBR 7026-1(c)(3), (c)(4)....................9, 10

## I. INTRODUCTION

CBT's Opposition (Doc. 69) declines to engage. It announces that CBT "will not respond point by point because that serves no real purpose" (Opp. at 3), and it asks the Court to decide the merits first so that discovery into CBT's claim "would make this motion and indeed all the discovery sought by Plaintiffs moot" (Opp. ¶ 4). The Opposition cites no case, no discovery rule, and no authority of any kind — its only citation is a passing reference to 42 U.S.C. § 1983 in describing Plaintiffs' claims. The showings in the Motion and Joint Stipulation therefore stand unrebutted. What has changed since the Motion was filed is the record. In the intervening weeks, CBT's own conduct — in the depositions taken, in the depositions refused, in the auditor's documents produced, in its counsel's filings and correspondence, and in its own eleventh-hour motion practice — has

proven each premise of the Motion. Plaintiffs submit this Reply and supplemental statement so the Court has the complete, current record. Lettered exhibits cited below are the exhibits to the Declaration of Douglas A. Wain filed September 9, 2026 (Doc. 85) with Plaintiffs' Opposition (Doc. 84) to CBT's Motion to Quash (Doc. 76) (the "Wain Decl."), except Exhibits J and DD, which are attached to the concurrently filed Supplemental Declaration of Douglas A. Wain ("Supp. Decl."); the Joint Stipulation emails are Exhibit 12 to Plaintiffs' Motion to Compel Written Discovery (Doc. 80).

## II. POST-MOTION FACTS

### A. The two depositions that went forward confirmed where CBT's knowledge lives — and that no witness supports the claim's arithmetic.

On August 18, 2026, CBT produced Donna Craven, its Senior Vice President and Compliance Officer, pursuant to the parties' arrangements. Ms. Craven testified repeatedly that responsibility for the matters at issue rests with Becky Mullins, CBT's Senior Vice President, Special Assets and Loan Workout Manager. (Craven Tr. 67:4–8, 69:7–70:16, 71:4–74:21, 132:1–5 (Ex. W); certified transcript received August 26, 2026.) Mr. Timothy Wiseman appeared at that deposition as counsel for Ms. Craven; the representation, arranged through Ms. Mullins, had begun the preceding Friday. (Id. 4:11–18, 6:1–3, 9:5–9, 13:1–17.)

On August 21, 2026, Steven D. Hall — the Special Assets manager who handled Plaintiffs' account until his retirement on April 30, 2024 — appeared pursuant to Plaintiffs' Rule 45 subpoena and testified for approximately three hours; the certified transcript is Exhibit Y. (Hall Tr. 10:4–7, 22:7–8.) Among other things, Mr. Hall testified that: the Wain accounts were discussed "every month" at the bank's Watch Loan Committee, a body of twelve to fifteen executives and compliance, accounting, and loan-review personnel that kept minutes — minutes kept by Ms. Mullins, Ms. Craven, and Ms. Sharp (id. 43:18–48:8); "senior members of the bank leadership" were kept

informed of each step (id. 43:18–21, 92:2–11); he reported to the director of lending, Paul Thornsberry, who reported to "the president of the bank" (id. 39:25–40:10, 41:3–42:14); the collection decisions were made on legal advice from Stoll Keenon Ogden (id. 54:1–4); no one at CBT ever sought or discussed a deficiency judgment, because the bank "had already obtained judgment for the entire amount owed on the debt" (id. 31:1–3, 33:14–16, 34:5–8); CBT, as second lienholder, itself initiated the foreclosure and the order of sale, and received less for that reason (id. 64:13–15, 65:21–23, 67:17–19); the bank never treated the Wain loan as satisfied or extinguished (id. 76:5–8); and he was not consulted on the Proof of Claim, which was filed eight months after he left, and could say only that "card services" would have gathered the figures and special assets would have sent them to the bank's attorney (id. 22:2–18). Mr. Wiseman appeared at that deposition as personal counsel for Mr. Hall — a representation that began "today," the day of the deposition — and Mr. Hall testified that he "would assume Central Bank" is paying for it. (Id. 9:9–20.)

The significance for this Motion is direct: the two witnesses CBT's side has produced each pointed to the witnesses CBT refuses to produce. The declarant who verified the claim (Mr. Wiseman) swears he did not calculate it; the compliance officer points to Ms. Mullins; the retired manager who ran the account confirms the records and decisions rest with the bank's committee, its director of lending, its president, and Ms. Mullins. Asked whether anyone at Central Bank has sworn to the figures in the Proof of Claim, Ms. Craven answered "I don't know" — and named Ms. Mullins as the person who would know. (Craven Tr. 125:5–23 (Ex. W).) Mr. Wiseman then closed the deposition by establishing, through his own examination, that the witness CBT produced is "not involved with the collection of special assets or foreclosures at all" and knows "almost nothing about Mr. and Mrs. Wain and their distressed loan." (Id. 141:5–142:1.) And CBT's own supplemental interrogatory responses, verified August 24, 2026, state that "Central Bank's Becky Mullins and

Central Bank's counsel worked on the Proof of Claim." (Ex. N, Response No. 3.) CBT has declared that precisely those custodians of knowledge will not appear.

**B. CBT's remaining witnesses: repeated written refusals, then an eleventh-hour motion.**

Ms. Mullins. Plaintiffs noticed Ms. Mullins' deposition on August 19, 2026 for August 28, 2026, with a built-in invitation to confer on any conflict. (Ex. C.) CBT responded with a single alternative date — August 27, the date already occupied by Mr. Deaton's noticed deposition — and, on August 21, 2026, wrote: "Ms. Mullins will not be appearing for deposition in this matter. The choice was yours." (Exs. F-G.) In consideration of personal family issues counsel described, Plaintiffs voluntarily released the August 25 and 28 dates, continued the deposition to a date to be agreed, and offered to confer in good faith, expressly preserving the notice and all rights. (Exs. F-G.) CBT's position stands: its Senior Vice President — the person its own compliance officer identified under oath, whom its retired Special Assets manager identified as the keeper of the committee's minutes, and whom its own sworn responses identify as having "worked on the Proof of Claim" — "will not be appearing for deposition in this matter."

Mr. Deaton. CBT stated repeatedly and in writing, on August 20 and 21, 2026, that Mr. Deaton "will not be appearing" for his deposition, noticed July 21, 2026 — thirty-seven days' notice — for August 27, 2026. (Exs. D-E, F-G, H.) Then, on August 24, 2026 — thirty-four days after the notice and three days before the deposition — CBT filed a "Motion to Quash Deposition of an Apex Executive" under Rule 45(d)(3). (Doc. 76.) The Court set that motion for hearing concurrently with this Motion, on September 24, 2026. (Doc. 77.) Upon receiving Doc. 76, Plaintiffs promptly took the August 27 session off calendar in deference to the pending motion, notifying CBT's counsel and the court reporter the same day and reserving all rights. (Exs. A, B.) Plaintiffs' Opposition to Doc. 76, filed September 9, 2026 (Doc. 84), addresses that motion in full and is incorporated here by reference. Two points bear noting for this Motion. First, the written refusals came weeks before any

motion existed — for that entire period, CBT's officer was simply announced as a no-show, without any pending motion for protective order, the only circumstance Rule 37(d)(2) recognizes as an excuse. Second, Doc. 76 is brought under Rule 45(d)(3), which governs subpoenas — no subpoena to Mr. Deaton exists or was required, because a party's officer is deposed on notice alone under Rule 30(b)(1). A proposed deponent who objects must obtain relief from the Court — announcing non-appearance is not self-executing. The Ninth Circuit rejected precisely CBT's view — that a party need not appear so long as its objections are on file — sixty years ago: "Any such rule would be an intolerable clog upon the discovery process. Rule 30(b) places the burden on the proposed deponent to get an order, not just to make a motion." Pioche Mines Consol., Inc. v. Dolman, 333 F.2d 257, 269 (9th Cir. 1964); see Fed. R. Civ. P. 37(d)(1)(A)(i), (d)(2).

Crowe LLP. The same pattern reached CBT's outside auditor. Plaintiffs convened the noticed Rule 30(b)(6) deposition of Crowe LLP on August 24, 2026, pursuant to a subpoena served July 15, 2026. Crowe — having stated in writing that "We will not be producing the witness" — sent neither a witness nor counsel, and filed no motion to quash or modify. (Ex. Z; Doc. 80, Ex. 17.) Crowe did, however, produce documents: seventy-seven Bates-numbered pages, transmitted by link on August 21, 2026 with CBT's counsel copied, which Plaintiffs downloaded on September 9, 2026. (Wain Decl. ¶ 9A; Ex. CC.) Those documents are addressed in Part II.E below.

**C. Mr. Wiseman's own reply confirms his active role in this proceeding.**

Mr. Wiseman's reply in support of his motion to quash, filed August 21, 2026, states: "Since the date of his Motion, Wiseman has represented one Central Bank witness at a deposition taken remotely in Kentucky in this matter. It is expected that he will represent other witnesses…" (Doc. 74.) The non-party who asks this Court to shield him from examination as uninvolved Kentucky counsel is, by his own filing, appearing and representing witnesses in this adversary proceeding — including, the same day as that filing, a retired non-party witness, at CBT's expense according to the

witness's testimony. (Hall Tr. 9:9–20 (Ex. Y).) CBT's own Notice of Hearing filed August 21, 2026 confirms the arrangement in its signature block: Haight Brown & Bonesteel LLP appears as "Attorneys for Defendant Central Bank & Trust Co. and Non-Party Witness, Timothy Wiseman." (Doc. 73.) The Opposition's supporting declaration, executed August 18, 2026, swears that Mr. Wiseman "has not yet made an appearance in this lawsuit." (Doc. 69, Ireland Decl. ¶ 11.) August 18, 2026 is the day Mr. Wiseman appeared at Ms. Craven's deposition in this adversary proceeding as her counsel. The statement was contradicted by events the day it was sworn — and by Mr. Wiseman's own filing three days later. Ms. Craven's transcript supplies the details: she prepared for approximately thirty minutes, the Friday before, reviewing no documents, with Mr. Wiseman and a second attorney whose name and firm she could not recall — until Mr. Wiseman interjected that it was Mr. Ireland. (Craven Tr. 12:8–13:24, 15:1–7, 81:6–24 (Ex. W).) At Mr. Hall's deposition three days later, Mr. Wiseman removed any doubt about whom he was there for. Asked whether he represented anyone besides Mr. Hall, he answered: "We represent Central Bank, and Mr. Hall is a former employee of Central Bank," and then, "I represent Central Bank and its interests and Steve Hall as a former employee of Central Bank." (Hall Tr. 7:14–18, 8:9–13 (Supp. Decl. Ex. DD).)

How Mr. Wiseman defended those depositions bears on the orders Plaintiffs ask the Court to enter for the depositions still to come. Rule 30(c)(2) requires that objections be "stated concisely in a nonargumentative and nonsuggestive manner," and permits an instruction not to answer "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." The record shows the opposite. Mr. Wiseman instructed Mr. Hall not to answer why the bank retained Fowler Bell — "The decision to obtain legal counsel is privileged information. So I will instruct him not to answer. You can move on." (Hall Tr. 57:6–19.) He cut off the question whether Ellen Sharp attended the parties' mediation — "The mediation would have been confidential. Don't get into any of that" (id. 19:9–14) — though attendance is not a mediation

communication. He asserted work product against the question whether documentation exists for the bank's position that Plaintiffs still owed money after the March 2024 distribution. (Id. 30:3–9.) At the Craven deposition, when the witness twice said she did not know who else had prepared her, he supplied the answer himself — “We can represent that she spoke to Mr. Ireland and myself” — and the witness adopted it: “If Mr. Wiseman says so, yes.” (Craven Tr. 81:6–24.) When she was asked whether the loan was satisfied, he answered for her — “She says, I don't know” — and, over Plaintiffs' objection that “You said, ‘I don't know,’” the witness then repeated his words. (Id. 135:20–136:16.) And at the close of Mr. Hall's deposition, counsel asked to go off the record “for five minutes,” conferred privately with the witness, and returned with exactly three leading questions, the last of which asked the witness to agree that Mr. Deaton “would have no information firsthand about the Wains.” (Hall Tr. 94:8–95:9.) Plaintiffs do not ask the Court to sanction this conduct on this Motion. They ask that the order compelling the remaining depositions direct that they be conducted in conformity with Rule 30(c)(2), so that the examinations of Ms. Mullins and Mr. Deaton produce the witnesses' testimony rather than counsel's. (Supp. Decl. ¶ 8, Ex. DD.)

**D. The written-discovery stipulation, and CBT's admitted-but-unamended claim error.**

On August 21, 2026, Plaintiffs served their portion of a second Joint Stipulation under LBR 7026-1(c)(3), addressing the parties' written-discovery disputes, with CBT's insertions due within seven days, by August 28, 2026. (Doc. 80, Exs. 12, 14.) Within two hours, CBT's counsel responded that he would be out of the office August 24 through September 1 and would respond “when I have returned” — after the deadline. Advised that the deadline is set by rule and that another attorney at his firm could respond, counsel replied: “I am not available as was set out in my email below.” (Id., Ex. 12.) Counsel's unavailability proved selective: on August 24, 2026 — the first day of the stated absence — CBT filed Doc. 76 and served 21 pages of supplemental interrogatory responses. (Doc. 76; Ex. N.)

**CBT served nothing by the August 28, 2026 deadline. On September 3, 2026, Plaintiffs filed their Motion to Compel Written Discovery on the LBR 7026-1(c)(4) declaration of non-cooperation (Doc. 80), which the Court has set for hearing with this Motion and Doc. 76 on September 24, 2026 (Doc. 83). On September 4, 2026 — seven days after the deadline, and the day after Doc. 80 was filed — CBT's counsel emailed proposed insertions to the Joint Stipulation, unsigned. (Supp. Decl. ¶ 5.) Plaintiffs will address those insertions, to the extent CBT relies on them, in connection with Doc. 80.**

Finally, the Court is reminded that CBT's counsel wrote on August 13, 2026: "Due to a clerical error, the Proof of Claim filed in this case stated the amount as $357,990.91. CBT will amend its claim to correct the difference." (Ex. O at 2–3.) As of this Reply, no amended claim has been filed. (Supp. Decl. ¶ 7.) Eleven days after that letter quantified the Distribution Order's effect on the claim, CBT's sworn supplemental response to the same question stated that CBT "is reviewing any impact of the Distribution Order on the Proof of Claim and will supplement if necessary." (Ex. N, Response No. 5.) The corporation's sworn position is less definite than its counsel's letter of the week before — which is the state of the record the requested depositions exist to resolve.

**E. The auditor's file confirms that no one at CBT has ever reconciled the claim.**

Crowe's production consists of the audit-inquiry letters that CBT's Kentucky counsel, Stoll Keenon Ogden, sent to the auditor for each fiscal year from 2019 through 2025, one such letter from Fowler Bell PLLC, and Crowe's own "Attorney Letter Evaluation" workpapers for each year-end. (Wain Decl. ¶ 9A; Ex. CC.) Three features bear on this Motion. First, in both the fiscal-year 2021 and the fiscal-year 2025 letters, counsel told the auditor that the amount CBT sought was the balance "as of July 8, 2020, $380,685.43" — a figure that appears nowhere in the Proof of Claim ($357,990.91), in the Fayette Circuit judgment ($358,412.72), or in counsel's August 13, 2026 letter

(a $66,884.60 reduction). (Ex. CC, Crowe 000013, 000038.) Second, counsel told the auditor, in the same letters, that of all the bank's foreclosure matters, "[i]n none of these cases, except the Wain case, has a claim been asserted for money damages against the Client." (Id., Crowe 000014, 000038.) Third, the February 11, 2026 letter — written fourteen months after the Proof of Claim was filed and nine months into this adversary proceeding — mentions the Wains' Chapter 13 filing only in describing a different case, and does not identify the Proof of Claim, Plaintiffs' claim objection, or this adversary proceeding as a pending matter at all. (Id., Crowe 000035–000040.) The bank's auditor, in other words, has been given a third number, and has never been told of the proceeding in which the number is disputed. That is the state of CBT's own records on the calculation of its claim — and it is why the witnesses who "worked on the Proof of Claim" must be examined.

## III. REPLY TO THE OPPOSITION'S ARGUMENTS

### A. "Decide the merits first" is not a ground to refuse discovery — it is the reason discovery exists.

CBT's lead argument (Opp. ¶¶ 1–4) is that the Court should rule on the claim objection, the summary-judgment motion, and CBT's motion for judgment on the pleadings, rendering discovery "moot." That is backwards. CBT asks the Court to adjudicate the accuracy of a claim amount that CBT itself has admitted in writing is erroneous (Ex. O), on a record from which CBT has withheld every witness with knowledge of the calculation: its verifying declarant swears he did not calculate it; its officers refuse to appear; its committee's minutes have never been produced. A party may not predict victory on the merits as a substitute for a protective order. A pending dispositive motion does not stay discovery; a stay requires an order, and the party seeking one bears a heavy burden of showing why discovery should be denied. Gray v. First Winthrop Corp., 133 F.R.D. 39, 40 (N.D. Cal. 1990); accord Tradebay, LLC v. eBay, Inc., 278 F.R.D. 597, 603 (D. Nev. 2011) ("The fact

that a non-frivolous motion is pending is simply not enough to warrant a blanket stay of all discovery."). No stay of discovery exists; no motion for one was made; the depositions were noticed within the discovery period the Court set. The Court has now calendared the discovery motions and the merits motions together for September 24 — which answers the sequencing argument.

**B. The apex characterization arrived thirty-four days late — and the record refutes it.**

When CBT filed its Opposition to this Motion, no apex motion existed: CBT's position was simply that its officer "will not be appearing." Self-help of that kind is not a recognized substitute for a Rule 26(c) motion, and a party's officer who fails to appear exposes the party to sanctions under Rule 37(d). See Lew v. Kona Hosp., 754 F.2d 1420, 1426 (9th Cir. 1985) (affirming Rule 37(d) sanctions for a witness's nonappearance at deposition). Rule 26(c) relief, had CBT sought it, requires a certified conference and good cause: the party seeking protection "bears the burden of showing specific prejudice or harm will result" if no protective order is granted. Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1210–11 (9th Cir. 2002); accord Rivera v. NIBCO, Inc., 364 F.3d 1057, 1063 (9th Cir. 2004). For the entire period of the written refusals, CBT had made no motion of any kind — under Pioche Mines, each refusal was unexcused when made. CBT's eleventh-hour Motion to Quash (Doc. 76) does not cure that period of refusal; it confirms that CBT always knew a motion was the required vehicle, and chose written refusals first. The merits of Doc. 76 are addressed in Plaintiffs' Opposition filed September 9, 2026 (Doc. 84), incorporated here by reference; the governing authorities — the movant's burden under Blankenship, the unique-knowledge and exhaustion factors of Apple v. Samsung, and the sliding-scale approach of In re Uber Technologies — are set out there. In summary: the state regulator has addressed Central Bank's consumer-complaint transmittals to Mr. Deaton personally for at least eight years (Exs. K, L, T); Mr. Deaton personally routes such complaints — forwarding one from his iPhone to Ms. Craven within six minutes of the regulator's email (Ex. R); he has personally answered the regulator, over

his own signature, concerning a customer's home-equity dispute, a Fayette Circuit judgment, and the customer's Chapter 13 stay (Ex. T); CBT itself reported to the regulator in 2015 that Mr. Deaton personally telephoned a complaining customer (Ex. U), and again on September 10, 2025 that a customer "discussed" a $350 check dispute "with Central Bank's President, Chairman and CEO Luther Deaton on August 27, 2025" (Ex. V); his hand executes the bank's corporate instruments (Exs. M, P); he signs the shareholder letter in each annual report whose notes address the bank's litigation exposure (Ex. AA); and CBT's counsel has sworn to his dual role atop both the bank and its holding company (Doc. 69, Ireland Decl. ¶ 10; Ex. N, Response No. 23). Against this record, the Opposition's declaration swears that "Plaintiff has not identified any documents relating to this action that were signed by Deaton or 'touched' by Deaton in any way," and that Plaintiffs rely "only" on his name in public records. (Ireland Decl. ¶ 10.) The exhibits answer that sentence document by document. The declaration does not engage this record; it declares it nonexistent. The intervening depositions completed the bottom-up sequence the apex doctrine contemplates — and pointed upward. CBT's own counsel established that the witness CBT produced knows "almost nothing about Mr. and Mrs. Wain and their distressed loan" (Craven Tr. 141:5–142:1 (Ex. W)), while the witness herself testified to professional interactions with Mr. Deaton on an "as-needed basis" she could not cap below forty in the past twelve months (id. 128:17–131:16). Mr. Hall described a reporting structure that runs from special assets to the director of lending to the president, and a monthly committee whose minutes went to "senior members of the bank leadership" (Hall Tr. 39:25–40:10, 41:3–42:14, 43:18–21 (Ex. Y)) — and he himself, CBT's "best source" on the account (id. 94:22–25), left the bank eight months before the Proof of Claim was filed and was never consulted on it (id. 22:7–10). The doctrine does not demand that Plaintiffs prove in advance exactly what Mr. Deaton knows: courts in this circuit decline to read the unique-knowledge factor so literally that "soothsaying would be a condition precedent to any apex deposition." They hold

instead that "where a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed." 4WEB, Inc. v. NuVasive, Inc., 2025 WL 2881581 (S.D. Cal. Oct. 9, 2025); see In re Apple iPhone Antitrust Litig., 2021 WL 485709, at *4 (N.D. Cal. Jan. 26, 2021) ("When a lawsuit concerns important aspects of a company's business model that are plainly the result of high-level executive decisions, we should expect that high-level executives will be deposed, and their testimony will be relevant and proportional, and the depositions will not be abusive or harassing.").

**C. The complaints about Mr. Wain's deposition do not support denial of anything — and events have overtaken them.**

The Opposition asserts that Mr. Wain "refuses to appear" for deposition (Opp. ¶¶ 5–6). The record is otherwise. CBT's July 24, 2026 notice was directed to an individual under Rule "30(B)(6)"; purported to set an in-person deposition at CBT's counsel's office for August 24, 2026; and was accompanied by document demands to which Plaintiffs timely served written responses and a Bates-numbered document production on August 24, 2026. (Supp. Decl. ¶ 4, Ex. J.) August 24 came and went: CBT's counsel — who had written on August 21 that he would be out of the office beginning August 24 — did not appear for, confirm, or re-notice his own setting, and instead spent the day filing Doc. 76 and serving supplemental interrogatory responses. Plaintiffs' Motion (item 4) does not ask to avoid deposition — it asks the Court to direct that Mr. Wain's deposition proceed remotely on a date certain. Plaintiffs reaffirm that position here: Mr. Wain will appear, by remote videoconference, on any date the Court sets. Two features of the supporting declaration bear noting. First, it concedes that Mr. Wain's deposition "was and is the only discovery requested by Defendant" (Ireland Decl. ¶ 4) — CBT seeks nothing else, so ordering the deposition to proceed remotely on a date certain resolves CBT's entire discovery program while its own refusals remain before the Court.

Second, the declaration is not directed to this motion at all: it recites that it is submitted "in support of CENTRAL BANK'S MOTION FOR JUDGMENT." (Ireland Decl. ¶ 1.)

**D. Declining to respond "point by point" concedes the Motion's showings.**

An opposition that expressly declines to address the moving papers leaves those showings unrebutted. The chronology of counsel's conduct set out in the Joint Stipulation (Issue No. 5), the defects in CBT's notices, the refusals to produce witnesses, and the expense showings all stand without response. The Court can and should treat them as established for purposes of this Motion.

**E. The request for a pre-filing bar, made in an opposition, is procedurally improper and unsupported.**

The Opposition's conclusion asks the Court to bar Plaintiffs "from filing additional pleadings without prior permission." No motion seeks that relief; no notice was given; no findings are proposed; and no filing of Plaintiffs has been identified as improper. The docket reflects that Plaintiffs' filings have been responsive — oppositions, ordered notices, and discovery papers occasioned by CBT's own motions and refusals. A pre-filing order against parties litigating in this posture would be extraordinary. Before entering one, a court must give notice and an opportunity to be heard, develop an adequate record, make substantive findings of frivolousness or harassment, and tailor the order narrowly. De Long v. Hennessey, 912 F.2d 1144, 1147–48 (9th Cir. 1990); Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057–58 (9th Cir. 2007). The same framework governs in the bankruptcy courts, where such orders are reserved for persistent frivolous filings that lesser sanctions have failed to curb. In re Koshkalda, 622 B.R. 749 (B.A.P. 9th Cir. 2020). The Opposition attempts none of the four.

## IV. SUPPLEMENTAL RELIEF

Plaintiffs renew each request in the Motion (items (1) through (8)) and, on the supplemental record, respectfully ask that the Court also: (a) order CBT to produce Mr. Deaton and Ms. Mullins

for remote deposition on dates certain set by the Court; (b) award Plaintiffs their expenses occasioned by preparing for the August 27, 2026 session that CBT's written refusals and eleventh-hour motion practice forced off calendar, as Rule 37(d)(3) requires absent substantial justification; (c) extend the discovery cutoff as necessary to complete the compelled depositions, consistent with Motion item (5); and (d) order CBT to produce the Watch Loan Committee minutes, agendas, and related records concerning Plaintiffs' account identified in sworn testimony (Hall Tr. 43:18–48:8, 92:2–11 (Ex. Y)), the existence of which CBT had never previously disclosed; and (e) direct that the compelled depositions be conducted in conformity with Fed. R. Civ. P. 30(c)(2) — objections stated concisely and non-suggestively, no instruction not to answer except to preserve a privilege or present a Rule 30(d)(3) motion, and no conference between counsel and the witness while a question is pending — with the Court retaining jurisdiction under Rule 30(d)(2) over any impediment to the examinations.

## V. CONCLUSION

CBT's opposition rests on a prediction that the merits will make discovery unnecessary — while CBT withholds the witnesses and records that the merits require, while its own correspondence admits the claim's stated amount is wrong, while its sworn responses say the claim is still under "review," and while its auditor has been carrying a third number for six years. Every witness examined points to a witness withheld. The Motion should be granted in full, with the supplemental relief set out above.

DATED: September 10, 2026

Douglas A. Wain
On behalf of Plaintiffs Douglas A. Wain
and Elisa Wain, Pro Per

DOUGLAS A. WAIN
ELISA WAIN
P.O. Box 7473
Westlake Village, CA 91359
Telephone: (859) 494-3677
Email: douglaswain@gmail.com
Plaintiffs in Pro Per

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| **In re**<br><br>**Douglas Alan Wain, Elisa Wain,**<br><br>**Debtors,**<br>______________________________<br><br>**Douglas Alan Wain and Elisa Wain**<br><br>**Plaintiffs,**<br>**vs.**<br><br>**Central Bank & Trust Co.**<br><br>**Defendant.** | **Case No. 1:24-bk-11814-MB**<br><br>**Adv. Proc. No. 1:25-ap-01026-MB**<br><br>**Chapter 13**<br><br>**PROOF OF SERVICE**<br><br>**Hon. Martin R. Barash**<br><br>**Hearing on Doc. 47 (Doc. 67):**<br>**September 24, 2026, 2:30 p.m.**<br>**Courtroom 303**<br>**21041 Burbank Blvd.**<br>**Woodland Hills, CA 91367** |

**PROOF OF SERVICE**

I am a plaintiff in this adversary proceeding and a party to this action; service by a party is permitted for the service described below, which is made by agreed electronic means and by United States Mail. My address is P.O. Box 7473, Westlake Village, CA 91359.

On September 10, 2026, I served true and correct copies of the following documents:

1. PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ORDERS COMPELLING DEPOSITIONS, FOR A PROTECTIVE ORDER, AND FOR RELATED RELIEF (DOC. 47); SUPPLEMENTAL STATEMENT OF POST-MOTION FACTS;

2. SUPPLEMENTAL DECLARATION OF DOUGLAS A. WAIN IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ORDERS COMPELLING DEPOSITIONS (DOC. 47); INDEX OF EXHIBITS J AND DD; and

3. EXHIBITS J AND DD TO THE SUPPLEMENTAL DECLARATION OF DOUGLAS A. WAIN

on the following counsel of record for Defendant Central Bank & Trust Co.:

William E. Ireland, Esq.
Jennifer Soto
Haight Brown & Bonesteel LLP
555 South Flower Street, Forty-Fifth Floor
Los Angeles, CA 90071
wireland@hbblaw.com; jsoto@hbblaw.com

Service was made BY EMAIL to the email addresses stated above, and BY UNITED STATES MAIL, first class, postage prepaid, in a sealed envelope addressed as stated above and deposited with the United States Postal Service at Bradenton, Florida.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 10, 2026, at Bradenton, Florida.

Douglas A. Wain

Plaintiff, Pro Per