DOUGLAS A. WAIN
ELISA WAIN
P.O. Box 7473
Westlake Village, CA 91359
Telephone: (859) 494-3677
Email: douglaswain@gmail.com
Plaintiffs in Pro Per

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| **In re**<br><br>**Douglas Alan Wain, Elisa Wain,**<br><br>**Debtors,**<br>______________________________<br><br>**Douglas Alan Wain and Elisa Wain**<br><br>**Plaintiffs,**<br>**vs.**<br><br>**Central Bank & Trust Co.**<br><br>**Defendant.** | **Case No. 1:24-bk-11814-MB**<br><br>**Adv. Proc. No. 1:25-ap-01026-MB**<br><br>**Chapter 13**<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ORDERS COMPELLING FURTHER RESPONSES TO WRITTEN DISCOVERY, COMPELLING PRODUCTION OF DOCUMENTS, DETERMINING THE SUFFICIENCY OF ANSWERS TO REQUESTS FOR ADMISSION, AND FOR EXPENSES UNDER RULE 37(a)(5) (DOC. 80)**<br><br>**Hon. Martin R. Barash**<br><br><br>**Hearing on Doc. 80 (Doc. 83):**<br>**September 24, 2026, 2:30 p.m.**<br>**Courtroom 303**<br>**21041 Burbank Blvd.**<br>**Woodland Hills, CA 91367** |

## TABLE OF CONTENTS

I. INTRODUCTION 4

II. WHAT THE OPPOSITION CONCEDES 5

III. THE OPPOSITION'S ACCOUNT OF THE STIPULATION IS INCORRECT 6

IV. REPLY ON THE ISSUES 7

A. The burden, and what the Opposition does not carry. 7

B. Rule 33(d) (Interrogatories Nos. 1, 2, 6, 7, 10, 11). 7

C. The contention interrogatories (Nos. 5, 6, 25; RFP No. 22). 8

D. The Requests for Admission (Nos. 2, 3, 4, 10, 11, 14, 15, 18–20). 9

E. The privilege log (Issue No. 6). 10

F. The audited financial statements (Issue No. 7). 12

G. Credit reporting and subordination (Issue No. 9). 12

H. "Zero documents" and Rule 34 (Issue No. 8). 13

I. The complete Hall transcript (Exhibit EE). 14

J. Expenses (Issue No. 10). 15

V. RELIEF REQUESTED 15

VI. CONCLUSION 16

## TABLE OF AUTHORITIES

**Cases**

A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186 (C.D. Cal. 2006) 7

Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242 (9th Cir. 1981) 9

Blankenship v. Hearst Corp., 519 F.2d 418 (9th Cir. 1975) 7

Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court, 408 F.3d 1142 (9th Cir. 2005) 10

Conlon v. United States, 474 F.3d 616 (9th Cir. 2007) 10

Doe v. Trump, 329 F.R.D. 262 (W.D. Wash. 2018) 7

Friends of Hope Valley v. Frederick Co., 268 F.R.D. 643 (E.D. Cal. 2010) 12

Hancock v. Aetna Life Ins. Co., 321 F.R.D. 383 (W.D. Wash. 2017) 4, 7

MarketLinx, Inc. v. Indus. Access, Inc., 2013 WL 12133884 (C.D. Cal. Jan. 2, 2013) 7

Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp., 711 F.2d 902 (9th Cir. 1983) 8

Stern v. Marshall, 564 U.S. 462 (2011) 4

Superior Commc'ns v. Earhugger, Inc., 257 F.R.D. 215 (C.D. Cal. 2009) 7

U.S. ex rel. Englund v. Los Angeles County, 235 F.R.D. 675 (E.D. Cal. 2006) 9

U.S. ex rel. O'Connell v. Chapman Univ., 245 F.R.D. 646 (C.D. Cal. 2007) 8

**Rules**

Fed. R. Civ. P. 26(a)(1) 4, 11

Fed. R. Civ. P. 26(b)(1) 13

Fed. R. Civ. P. 26(b)(5)(A) 4, 10, 11, 15

Fed. R. Civ. P. 26(e) 5, 8

Fed. R. Civ. P. 33(a)(2) 8, 15

Fed. R. Civ. P. 33(b)(3), (b)(5) 5

Fed. R. Civ. P. 33(d) 4, 5, 7, 8, 15

Fed. R. Civ. P. 34(b)(2) 4, 5, 13, 15

Fed. R. Civ. P. 36(a)(4) 4, 9

Fed. R. Civ. P. 36(a)(6) 10

Fed. R. Civ. P. 37(a)(5)(A) 5, 15, 16

LBR 7026-1(c)(3), (c)(4) 6, 15

LBR 9013-1(d)(2), (i) 4, 6

LBR 9013-2(b)(3) 4

## I. INTRODUCTION

Central Bank & Trust Co.'s Opposition (Doc. 91, the “Opposition” or “Opp.”) was filed at 5:45 p.m. on the last day permitted. It is fourteen pages of argument by counsel, unaccompanied by any declaration or exhibit, resting on two cases — one of which (Stern v. Marshall) concerns the constitutional authority of bankruptcy judges and has nothing to do with discovery, and the other of which (Hancock v. Aetna Life Ins. Co.) states the moving party's threshold burden that Plaintiffs' Motion (Doc. 80, the “Motion”) discharged request by request. The Opposition does not discuss a single interrogatory, request for production, or request for admission by number and content. It does not respond to any of the authorities in the Motion on Rule 33(d), Rule 34(b)(2), Rule 36(a)(4) and (a)(6), or Rule 26(b)(5)(A). It offers no evidence for any of its factual assertions — the FedEx shipment, the “multiple rounds of correspondence,” the burden of production — although LBR 9013-1(i) requires that factual contentions be supported by declaration. At fourteen pages it exceeds the length at which LBR 9013-2(b)(3) requires a table of contents and a table of authorities, and it has neither. The absence of evidence matters more than it otherwise would, because the Court, ruling from the bench at the March 5, 2026 hearing, relieved the parties of initial disclosures under Rule 26(a)(1) and directed CBT's counsel to lodge an order memorializing its rulings, which was never done; written discovery is therefore the only mechanism by which Plaintiffs can obtain the documents and witnesses behind CBT's claim, and CBT's responses to it are the only account CBT has ever been required to give. And it concedes, in terms, the four things that matter most: that the verification was missing; that the calculation of CBT's own claim is still “being evaluated” and that a date certain for supplementation is acceptable; that CBT has never stated whether its production is complete; and that the discovery cutoff may be extended. The Motion should be granted.

## II. WHAT THE OPPOSITION CONCEDES

First, the verification. CBT admits that its August 5, 2026 interrogatory responses were unverified and that a verification was supplied only on August 24, 2026 — after Plaintiffs' August 10 letter identified the defect and set a compliance deadline. (Opp. at 3, 6; Doc. 80, Exs. 8, 10, 13.) An unverified interrogatory response is no response at all, and the belated cure does not undo the necessity of the Motion. Fed. R. Civ. P. 33(b)(3), (b)(5); 37(a)(5)(A).

Second, the calculation of the claim. On the contention interrogatories (Nos. 5, 6, and 25) and Request for Production No. 22, CBT states that "the calculation of any remaining indebtedness involve[s] mixed questions of law and fact that continue to be evaluated," and that CBT "does not object to a date certain being set for supplementation." (Opp. at 7.) That is a concession that twenty months after filing a Proof of Claim for $357,990.91 — a claim Plaintiffs listed as "[d]isputed in its entirety" in the schedules filed with their petition on October 30, 2024 (Case No. 1:24-bk-11814-MB, Doc. 1 at 12) — and eleven months after this adversary proceeding was commenced to test it, CBT cannot say under oath how the number was computed or what the March 7, 2024 Distribution Order did to it. Plaintiffs accept the invitation: the Court should set the date certain at fourteen days from the hearing, without further reliance on Rule 33(d) or Rule 26(e) as grounds for deferral.

Third, completeness of production. CBT states that, "[t]o the extent necessary, Central Bank can further amend its responses to clarify whether its production is complete." (Opp. at 11.) Rule 34(b)(2)(C) has required that statement, for every objection, since 2015. CBT's twenty-two responses omit it; the Opposition acknowledges the omission and offers to fix it later. The Court should order it now, request by request, together with the production of the seven categories of post-2019 documents whose existence CBT's own witnesses have established. (Motion at 16–17.)

Fourth, the cutoff. CBT "does not oppose a limited extension of the August 31, 2026 discovery cutoff" for supplementation ordered by the Court. (Opp. at 12.) Plaintiffs asked for exactly that. (Motion at 22–23, item (6).)

## III. THE OPPOSITION'S ACCOUNT OF THE STIPULATION IS INCORRECT

The Opposition states that the parties "conferred in writing between August 10 and August 19, 2026," that "Central Bank provided its responses on September 10, 2026," and that "the Wains refused to accept the Joint Stipulation" and "[i]nstead . . . filed this Motion on shortened notice." (Opp. at 4.) Each element is wrong. Plaintiffs served their portion of the Joint Stipulation on August 21, 2026; under LBR 7026-1(c)(3), CBT's insertions were due within seven days, by August 28. (Doc. 80, Exs. 12, 14; Wain Decl. ¶¶ 7, 10.) CBT served nothing by that date. Its counsel had announced that he would be out of the office from August 24 through September 1 and would respond "when I have returned," and, when reminded that the deadline was set by rule and that another attorney at his firm could respond, wrote: "I am not available as was set out in my email below." (Doc. 80, Ex. 12.) He was available, that week, to file CBT's Motion to Quash (Doc. 76) and to serve twenty-one pages of supplemental interrogatory responses. Plaintiffs then proceeded, as the rule directs, on the LBR 7026-1(c)(4) declaration of non-cooperation, filing the Motion on September 3, 2026 for hearing on September 24 — twenty-one days' notice, the regular period under LBR 9013-1(d)(2), not "shortened notice." CBT's first insertions arrived by email on September 4, unsigned, seven days after the deadline and the day after the Motion was filed. (Suppl. Wain Decl., Doc. 90, ¶ 5.) Plaintiffs received nothing from CBT on September 10, 2026 other than the Opposition itself. (Second Suppl. Wain Decl. ¶ 3.) If the Opposition is what CBT means by its "responses," they came thirteen days after the stipulation deadline and one week after the Motion was on file. There was nothing for Plaintiffs to "refuse to accept." The sequence is documented in Exhibits 12 and 14 to the Motion; the Opposition's contrary narrative is supported by no declaration.

## IV. REPLY ON THE ISSUES

### A. The burden, and what the Opposition does not carry.

The Opposition's only discovery authority holds that the moving party must show relevance and that the responding party's objections lack merit. Hancock v. Aetna Life Ins. Co., 321 F.R.D. 383, 390 (W.D. Wash. 2017). The same court explained what that showing consists of: the movant must identify the requests at issue and, "for each disputed response," explain why the information sought is relevant. Id. The Motion does that for nine numbered issues across twenty-two pages, request by request, with the responses and the meet-and-confer correspondence attached. The burden then shifts. The party resisting discovery must clarify, explain, and support its objections, Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975); Superior Commc'ns v. Earhugger, Inc., 257 F.R.D. 215, 217 (C.D. Cal. 2009), and may not rely on boilerplate assertions of burden, breadth, or irrelevance, A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006). The Opposition asserts that "[t]he burden and confidentiality concerns associated with production substantially outweigh any speculative relevance" (Opp. at 5) without identifying a single document, custodian, hour, or dollar of burden, and without a declaration. A burden objection supported by nothing more than counsel's recital that responding would be burdensome cannot be sustained. Doe v. Trump, 329 F.R.D. 262 (W.D. Wash. 2018). Nor does the Opposition attempt to defend most of the objections actually asserted in the responses; an objection asserted in a response and abandoned in the briefing is waived. MarketLinx, Inc. v. Indus. Access, Inc., 2013 WL 12133884, at *2 (C.D. Cal. Jan. 2, 2013).

### B. Rule 33(d) (Interrogatories Nos. 1, 2, 6, 7, 10, 11).

The Opposition confirms the premise of the Motion's Rule 33(d) argument: the records to which CBT refers are the records "previously produced to Plaintiffs during the Kentucky litigation." (Opp. at 6.) By CBT's own August 13, 2026 index, that production — CB0001 through CB0738 —

consists of statements and case documents from 2012 through 2019. (Doc. 80, Ex. 9.) The Proof of Claim was calculated "through December 19, 2024." Records that end in 2019 cannot be the source from which a 2024 balance "may be determined," which is what Rule 33(d) requires. Fed. R. Civ. P. 33(d)(1); Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Inv. Corp., 711 F.2d 902, 906 (9th Cir. 1983). The Opposition's assertion that CBT "directed Plaintiffs to specific Bates number ranges" (Opp. at 6–7) is not accompanied by any citation to where those ranges appear, because the responses contain none; they refer to the production as a whole. (Doc. 80, Exs. 5, 13.) And the argument that Plaintiffs may not require CBT "to create new narrative summaries, calculations, or analyses" (Opp. at 7) is answered by CBT's own declarant, who swore on August 24, 2026 that the calculation already exists — "See calculations attached as Exhibit C" — in a declaration filed with no Exhibit C. (Doc. 76 at 12–13.) Producing a document that a party's officer has sworn exists is not creating one. Ms. Craven's testimony that CBT maintains a transaction ledger showing how payments and credits are applied (Doc. 80, Ex. 15, 67:10–13) identifies the other place the answer lives. Neither is in CB0001–0738.

**C. The contention interrogatories (Nos. 5, 6, 25; RFP No. 22).**

The Opposition invokes "the continuing obligation to supplement under Rule 26(e)" as the reason CBT need not answer now. (Opp. at 7.) Rule 26(e) imposes a duty to correct answers already given; it is not a license to withhold an answer. The rule that governs deferral of contention interrogatories is Rule 33(a)(2), which permits deferral only when "the court may order" it. No order exists and none was sought. U.S. ex rel. O'Connell v. Chapman Univ., 245 F.R.D. 646, 649 (C.D. Cal. 2007). The Opposition's characterization of the question as a "mixed question of law and fact that continue[s] to be evaluated" is difficult to square with the fact that CBT's counsel answered it in a letter on August 13, 2026: the Distribution Order "reduce[d] the amount owed" by $66,884.60, and the Proof of Claim "stated the amount" incorrectly "[d]ue to a clerical error." (Doc. 80, Ex. 9.)

A party whose counsel can state its position in correspondence can state it under oath. As to Interrogatory No. 6, the contention that a deficiency exists has been answered by CBT's own Special Assets manager: no deficiency judgment was sought, discussed, or advised. (Doc. 80, Ex. 16, 31:1–3, 33:14–24, 34:5–8.) CBT's offer of a date certain should be accepted and the date set.

**D. The Requests for Admission (Nos. 2, 3, 4, 10, 11, 14, 15, 18–20).**

The Opposition defends the responses to Requests Nos. 10 and 11 — whether a deficiency judgment was entered against Plaintiffs — on the ground that "[a] bare admission or denial risks adopting the Wains' (incorrect) framing of the legal issues." (Opp. at 8.) Rule 36 does not recognize that ground. An answer must admit, specifically deny, or "state in detail why the answering party cannot truthfully admit or deny it"; a denial "must fairly respond to the substance of the matter." Fed. R. Civ. P. 36(a)(4). Whether a judgment was entered is a fact of public record, and the officer who would have sought one has testified that none was. (Doc. 80, Ex. 16, 31:1–3, 33:14–24, 34:5–8.) CBT's response, which "denies any implication regarding the existence, validity, or enforceability of any indebtedness," answers a question that was not asked and does not answer the one that was. U.S. ex rel. Englund v. Los Angeles County, 235 F.R.D. 675, 684–85 (E.D. Cal. 2006). The Opposition's defense of the "denied as phrased" responses — that the requests "embed inaccurate characterizations" (Opp. at 8) — is the reason Rule 36(a)(4) requires a responding party to "specify the part admitted and qualify or deny the rest." CBT specified nothing. The Opposition does not address Request No. 3 (whether $630,003 exceeds $358,412.72), Request No. 9 (whether the Distribution Order governs the distribution, which CBT's own Interrogatory Answer No. 4 calls "the most complete and accurate statement of the distribution"), or Requests Nos. 18 through 20, at all; nor does it cite Asea, Inc. v. Southern Pac. Transp. Co., 669 F.2d 1242 (9th Cir. 1981), or any other authority. Plaintiffs renew their request, framed as Asea contemplates: amended answers

within fourteen days, and deemed admission under Rule 36(a)(6) as to any request not compliantly answered by that date. Conlon v. United States, 474 F.3d 616, 621 (9th Cir. 2007).

**E. The privilege log (Issue No. 6).**

The Opposition's position is that no log is required because the categories at issue are, in CBT's view, irrelevant, so that "[t]he Court does not need to reach the question of privilege until the Plaintiffs first establish relevance." (Opp. at 9.) That reverses the rule. Rule 26(b)(5)(A) attaches the logging obligation to the act of withholding "information otherwise discoverable by claiming that the information is privileged"; it contains no exception for materials the withholding party considers irrelevant, and a party that wished to stand on relevance alone was free to object on that ground and say so. CBT instead asserted attorney-client privilege, work product, a "joint defense" privilege, and auditor confidentiality across its responses, refused in writing to log anything ("there is no need to create a privilege log at all"), and, three weeks later, was still "evaluating whether a privilege log is warranted." (Doc. 80, Ex. 9.) Under Burlington Northern & Santa Fe Railway Co. v. U.S. District Court, 408 F.3d 1142, 1149 (9th Cir. 2005), a boilerplate privilege assertion unaccompanied by a timely log is insufficient and may work a waiver.

The Opposition's alternative argument — that the audit and insurer communications are "independently protected" and that "[d]isclosure of material to an outside auditor in ordinary course of an audit does not serve as a waiver" (Opp. at 9) — is overtaken by the record. Crowe LLP has already produced the audit-inquiry letters that CBT's Kentucky counsel, Stoll Keenon Ogden, sent to the auditor for every fiscal year from 2019 through 2025, together with Crowe's evaluation workpapers; CBT's counsel was copied on that production on August 21, 2026 and raised no objection and no claim of privilege. (Doc. 85, Wain Decl. ¶ 9A & Ex. CC.) Letters that counsel wrote to a third-party auditor, that the auditor has produced in this proceeding without objection from CBT, are not privileged in CBT's hands. The insurer correspondence stands no better: the Rules

treat insurance agreements as presumptively discoverable, see Fed. R. Civ. P. 26(a)(1)(A)(iv), CBT's own supplemental response acknowledges as much (Doc. 80, Ex. 13, Response No. 21), and a reservation-of-rights letter from an insurer to its insured is not a communication with counsel. And the Opposition says nothing about the two matters that make a log indispensable: Ms. Craven's testimony that Frost Brown Todd wrote the letter she signed (Doc. 80, Ex. 15, 79:14–80:11, 82:14–15), an engagement CBT's sworn answer to Interrogatory No. 12 omits and Request for Production No. 11 refuses on a blanket claim of privilege; and Mr. Hall's testimony that no attorney attended the Watch Loan Committee whose minutes CBT has neither produced nor logged (Doc. 80, Ex. 16, 49:3–8). Two further points. Crowe itself, in its written objections to Plaintiffs' subpoena, took the position that the audit-inquiry letters and management representation letters "originated with CBT and its counsel, are more appropriately sought from those sources," that "CBT and its counsel are the appropriate sources and privilege holders," and that the representation letters are "CBT-created or CBT-signed documents available from CBT." (Doc. 80, Ex. 17, Crowe Objections at Requests Nos. 3–4.) The auditor says the documents must come from CBT; CBT says they are irrelevant and privileged; between the two, nothing is produced and nothing is logged. That is the situation Rule 26(b)(5)(A) exists to prevent. And the way privilege was invoked at the depositions shows what a log would reveal: at Mr. Hall's deposition CBT's Kentucky counsel asserted work product against the question whether any documentation exists for the bank's position that Plaintiffs still owed money after the March 2024 distribution, and instructed the witness not to answer why the bank retained a second law firm. (Hall Tr. 30:3–9, 57:6–19 (Doc. 90, Ex. DD).) The existence of a document and the fact of an engagement are not privileged; a log identifying them is precisely what the rule requires. The same is true of Interrogatory No. 19, refused outright on privilege grounds: the amount of legal fees CBT has incurred and seeks to include in its claim — the Proof of Claim asserts "interest, costs, and fees," and CBT's counsel reports its billed and unpaid fees to the auditor

every year (Doc. 85, Ex. CC, Crowe 000015, 000039–000040) — is a number, not a communication. The Court should order a compliant log within seven days or a verified statement that nothing is withheld on privilege grounds, and should hold that continued refusal waives the objections. Friends of Hope Valley v. Frederick Co., 268 F.R.D. 643, 650–51 (E.D. Cal. 2010).

**F. The audited financial statements (Issue No. 7).**

The Opposition objects that the audited consolidated statements "reflect the position of non-party, Central Bancshares, Inc." (Opp. at 10.) Three answers. The statements are public; Plaintiffs obtained the fiscal-year 2020 through 2025 annual reports from Central Bank's own website, and they are on file as Exhibit AA to Doc. 85. CBT's own Interrogatory Answer No. 18 promised to produce them before the sworn supplement withdrew the promise. (Doc. 80, Exs. 5, 13.) And the reason the request matters is now concrete: the audit file is where CBT's claim is actually quantified. In the audit-inquiry letters produced by Crowe, CBT's counsel told the auditor in both the fiscal-year 2021 and fiscal-year 2025 letters that the amount owed was "$380,685.43" "as of July 8, 2020" — a figure that appears nowhere in the Proof of Claim ($357,990.91), the Fayette Circuit judgment ($358,412.72), or counsel's August 13 letter — and, in a letter written fourteen months after the Proof of Claim was filed, did not identify the Proof of Claim or this adversary proceeding as a pending matter at all. (Doc. 85, Ex. CC, Crowe 000013, 000035–000040.) Discovery into the support for the "Loss Contingencies" note over which Mr. Deaton signs each year is discovery into the calculation of the claim.

**G. Credit reporting and subordination (Issue No. 9).**

The Opposition asserts that subordination and lien-priority matters "fall outside the operative claims and defenses." (Opp. at 5, 11.) CBT's own prior filing says otherwise: its Opposition to Doc. 47, signed by the same counsel, lists "subordination" among the claims Plaintiffs plead. (Doc. 69 ¶ 3.) Lien priority is the reason CBT, as second lienholder, received what it received from the sale, as

its own witness explained. (Doc. 80, Ex. 16, 64:13–15, 66:10–13.) On credit reporting, the Opposition repeats that no stand-alone statutory claim is pleaded. The Motion answered that point: the Complaint pleads unlawful collection activity, CBT has admitted furnishing information about Plaintiffs to consumer reporting agencies and receiving disputes (Doc. 80, Ex. 7, Nos. 16–17), CBT's own production index labels CB0332–0337 as "documents evidencing compliance with Fair Credit Reporting Act" (Doc. 80, Ex. 9), and CBT's Compliance Officer identified the department and custodian who hold the records (Doc. 80, Ex. 15, 109:13–23, 120:6–16). Relevance under Rule 26(b)(1) is measured against claims and defenses, not against the presence of a matching statute; a party cannot index documents as responsive to a subject and simultaneously contend the subject is outside the case. The Opposition does not engage with any of this.

**H. "Zero documents" and Rule 34 (Issue No. 8).**

The Opposition calls Plaintiffs' statement that CBT has produced no documents in this proceeding "misleading," because CBT produced 738 pages in the Kentucky litigation and re-sent them in August 2026. (Opp. at 2, 10.) Plaintiffs agree that CBT need not duplicate a prior production, and the Motion does not ask it to. The Motion asks for what has never been produced: the categories of documents, all post-dating 2019, whose existence is established by CBT's own witnesses and filings — the claim calculation CBT's declarant swore to; the ledger showing application of the $66,884.60 and $4,185.00; the Watch Loan Committee minutes kept by Ms. Mullins, Ms. Craven, and Ms. Sharp; the credit-reporting and dispute records CBT itself indexed; the communications with the Master Commissioner; the insurance policies CBT concedes it must disclose; and the audited statements CBT promised. (Motion at 16–17.) The Opposition identifies no document in the 2019 production that answers to any of these categories, because none does. Its concession that CBT "can further amend its responses to clarify whether its production is complete" (Opp. at 11) is the point: Rule 34(b)(2)(C) required that statement in August.

**I. The complete Hall transcript (Exhibit EE).**

Exhibit 16 to the Motion consists of excerpts from the deposition of Steven D. Hall, CBT's former Vice President and Manager of Special Assets, taken August 21, 2026 and defended by CBT's Kentucky counsel. The complete certified transcript, with the word index and the seven exhibits marked at the deposition, is submitted with this Reply as Exhibit EE so that the Court has the full context of the passages cited. (Second Suppl. Wain Decl. ¶ 5.) Four passages bear directly on the requests at issue. First, Mr. Hall testified that Stoll Keenon Ogden — the firm that defended his deposition — was involved in the decision that Plaintiffs still owed money after the March 2024 distribution, and when asked whether that decision is documented, CBT's counsel instructed him not to answer on work-product grounds. (Hall Tr. 29:16–30:9.) Whether a document exists is not privileged; it is the entry a privilege log would contain. Second, asked whether CBT ever regarded the loan as satisfied or extinguished, Mr. Hall answered that "[t]here was still money due on the loan," based not on any committee determination, judgment, or calculation but on "the fact that the bank had not received what was owed on the loan." (Id. 76:1–15.) That is CBT's contention, stated by the officer who held it; Interrogatories Nos. 5, 6, and 25 ask CBT to state it under oath and identify its basis, and nothing about it remains "to be evaluated." Third, the Watch Loan Committee met monthly, discussed the Wain loan at every meeting once it became delinquent, kept minutes — through Ms. Mullins, Ms. Craven, and Ms. Sharp — and had no attorneys present. (Id. 47:1–49:7.) The minutes exist, their custodians are identified, and no privilege can attach to them; they are responsive to Request for Production No. 9 and have been neither produced nor logged. Fourth, Mr. Hall testified that CBT initiated the foreclosure and the order of sale knowing it was the second lienholder, because "the only way we were going to get any of the money that was due us was to file for foreclosure" (Id. 64:13–66:13.) Lien priority is, on CBT's own account, the reason it received what it received; the subordination and lien-priority discovery (Interrogatory No. 15; Request No.

13) is discovery into that reason. And Mr. Hall does "not remember an appeal of the distribution of funds" (id. 34:9–19) — the Distribution Order that CBT's Interrogatory Answer No. 4 calls the most complete and accurate statement of the distribution, and that its counsel now says remains under "review."

**J. Expenses (Issue No. 10).**

Rule 37(a)(5)(A) makes an award of expenses mandatory when a motion to compel is granted, or when the discovery is provided after the motion is filed, unless the opposing position was substantially justified. The Opposition offers no justification for the failure to serve stipulation insertions by August 28; for the categorical refusal to log; for the deferral of contention answers without the order Rule 33(a)(2) requires; or for the deficiency-judgment responses that CBT's own manager has contradicted under oath. Its statement that CBT "participated extensively in the meet-and-confer process" (Opp. at 11) is unsworn and is contradicted by the correspondence in the record. Plaintiffs renew their request for their out-of-pocket expenses of the Motion. LBR 7026-1(c)(4).

## V. RELIEF REQUESTED

Plaintiffs respectfully request that the Court grant the Motion and enter the orders set out in Part IV of the Motion (Doc. 80 at 22–23), with the following dates: (1) further verified answers to Interrogatories Nos. 1, 2, 5, 6, 7, 8, 9, 10, 11, 15, and 25, without reliance on Rule 33(d) or deferral, within fourteen days; (2) production of the categories identified in Part III.C of the Motion, together with request-by-request statements under Rule 34(b)(2)(B)–(C), within fourteen days; (3) amended answers to Requests for Admission Nos. 2, 3, 4, 10, 11, 14, 15, 18, 19, and 20 within fourteen days, failing which the matters are deemed admitted; (4) a privilege log complying with Rule 26(b)(5)(A), or a verified statement that nothing is withheld on privilege grounds, within seven days, with continued refusal deemed a waiver; (5) an extension of the August 31, 2026 discovery cutoff, which CBT does not oppose, through a date forty-five days after service of the compelled responses, log,

and production, for the limited purpose of completing them and any deposition or follow-up discovery they necessitate, including the depositions that are the subject of Doc. 47; and (6) Plaintiffs' reasonable expenses under Rule 37(a)(5)(A).

## VI. CONCLUSION

The Opposition does not defend CBT's responses; it describes them, concedes their gaps, and asks the Court to end the case before they are cured. On a Proof of Claim that CBT's counsel has called erroneous, that CBT's sworn answer says is under "review," and that CBT's auditor has been carrying at a third figure for six years, the discovery sought is the discovery the merits require. The Motion should be granted.

DATED: September 17, 2026

Douglas A. Wain
Plaintiff, Pro Per

Elisa Wain
Plaintiff, Pro Per